UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

AUDRICK PAYNE )
2845 DENVER STREET, SE #102 )
WASHINGTON, DC 20020 )
  )
          PLAINTIFF )
   v. ) Civil Action No.
  ) Jury Trial Demand
DISTRICT OF COLUMBIA GOVERNMENT )
441 Fourth Street, NW )
Washington, DC 20001 )
  )
          And )
  )
LINDA ARGO, Individually and as the Director )
of the D.C. Consumer and Regulatory Affairs )
941 North Capitol Street, N.E. Suite 9500 )
Washington, DC 20002 )
  )
          And )
  )
PATRICK CANAVAN, Individually and as the )
Former Director of the D.C. Consumer and )
Regulatory Affairs )
941 North Capitol Street, N.E. Suite 9500 )
Washington, DC 20002 )
  )
          And )
  )
LISA MORGAN, Individually and as the )
Former Director of the D.C. Consumer and )
Regulatory Affairs )
941 North Capitol Street, N.E. Suite 9500 )
Washington, DC 20002 )
  )
          And )

```
                                              )
NICHOLAS MAJETT, Individually and as the      )
Supervisor of the D.C. Consumer and Regulatory)
 Affairs                                      )
941 North Capitol Street, N.E. Suite 9500     )
Washington, DC 20002                          )
                                              )
       DEFENDANTS                             )
                                              )
```

## COMPLAINT

Comes now the Plaintiff Audrick Payne ("Plaintiff" or "Payne"), by and through his attorneys, and files this Complaint against the Defendants, District of Columbia Government, Linda Argo, Patrick Canavan, Lisa Morgan and Nicholas Majett, and for his Complaint states as follows.

## INTRODUCTION

This is an individual action seeking declaratory and injunctive relief, back pay, front pay, and compensatory and punitive damages for violations of the plaintiff's rights to equal employment opportunity under the D.C. Government Comprehensive Merit Personnel Act of 1978, as amended by the Whistleblower Reinforcement Act of 1998, Sec. 1-615.51 et seq., and the First and Fifth Amendments of the U.S. Constitution; for defaming plaintiff's character and employment reputation' for tortuous interference with prospective advantage; for hostile work environment and violation of civil rights under 42 U.S.C. Sec. 1983; for interference with prospective advantage; for breach of contract; and for civil conspiracy.

## JURISDICTION and VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to the D.C. Whistleblower Reinforcement Act and pursuant to D.C. Code Ann. Section 11-921 and the First and Fifth Amendments of the U.S. Constitution and 42 U.S.C. Sec 1983.

2. Venue is proper in this court pursuant to 28 U.S.C. Sec 1391 in that the events giving rise to Payne's claims occurred here in the District of Columbia, and Defendants may be found here.

## PARTIES

3. Audrick Payne is an African American male citizen of the United States and a resident of the District of Columbia who was employed as an elevator inspector with the D.C. Department of Consumer and Regulatory Affairs (DCRA) from 2001 through September 2007.

4. The District of Columbia Department of Consumer and Regulatory Affairs (DCRA) is a department of the District of Columbia government. Defendants Argo, Morgan, Canavan, and Majette and current and/or former employees of DCRA.

## Background Facts

5. Mr. Payne was employed as a DS-12 certified elevator inspector with the DCRA. Mr. Payne has been a certified elevator inspector for eight years. Throughout his employment at DCRA, Mr. Payne performed his job in an exemplary manner. Mr. Payne began employment in 2001 and was removed from his position on September 18, 2007.

6. In his position as a certified elevator inspector with DCRA, Mr. Payne was responsible for inspecting elevators in the District of Columbia and issuing citations to building owners who were not in compliance with the D.C. Code. Mr. Payne also owns a

3

company which performs consulting work in Maryland and Virginia. DCRA regulations permit employees to engage in outside work such as consulting as long as it is disclosed and does not present a conflict with an employee's work at the DCRA. In 2002, Mr. Payne informed the DCRA director that he was starting a consulting firm, and requested that the Director of the DCRA inform him if the DCRA had an issue with his doing so. The DCRA did not respond in any manner. Mr. Payne organized a consulting firm and began offering his services in Maryland and Virginia.

7. Shortly after he began employment with DCRA, Mr. Payne observed that many companies regulated by DCRA were not in compliance with the D.C. Code and District of Columbia Municipal Regulations as it relates to elevator safety and inspections. At DCRA, Mr. Payne witnessed lax enforcement of applicable regulations by DCRA authorities, which posed a risk to the health and welfare of District of Columbia citizens and others who used elevators and counted on the District of Columbia to ensure the safety of the elevators. As a result of DCRA's failure to enforce applicable regulations, several individuals suffered serious bodily injury and death in elevator accidents. On occasion, Mr. Payne issued citations and shut down elevators where violations were egregious, life threatening, and of a continuing nature, only to have those decisions reversed by his supervisors. These infractions included elevators operating without D.C. permits, standing water in high voltage electrical wiring areas, and no master electrician as required by D.C. Construction Code 126.5, or where work was progressing in violation of DC Construction Code. As a result of performing his job, many building owners organized an effort to cause Mr. Payne's termination and began to make complainants about Mr. Payne to officials at DCRA.

4

8.  Between 2001 and 2005, there was a series of deadly accidents in the District of Columbia due to malfunctioning elevators and/or elevator safety equipment, which likely could have been avoided if DCRA enforced the applicable regulations.

9.  Mr. Payne documented several instances of permits being issued without proof of the required licensed master electrician. DCRA managers and supervisors frequently signed off on work performed and completed without appropriate permits and accepted inspections done by contractors whose reports were several months old without follow through. In some cases, the contractor reports went unopened at DCRA. Other problems included DCRA's practice of acceptance of company statements that elevator work was in compliance with District of Columbia laws when inspections by licensed inspectors documented otherwise. On occasion, Mr. Payne was ordered by his supervisor, including Defendant Majett, to "pass" an elevator project that was not in compliance with DC laws. When Mr. Payne refused, the supervisor authorized the elevator project to continue, even though it was not in compliance with DC laws. While District of Columbia law permits third party inspectors, there is a requirement that third party inspectors must be trained for 180 days. Defendants Canavan, Morgan, and Argo refused to enforce this law. Mr. Payne observed that building owners set up third party companies which they controlled to conduct inspections of buildings and reported this to DCRA managers. Mr. Payne protested this violation of the law. For example, building owner and real estate company Charles E. Smith owns Consolidated Engineering Services (CES), which has the same initials as the Charles E. Smith Company and conducts inspections at its buildings. Mr. Payne raised this conflict with DCRA officials, including Defendant Majett, and he was told it was permissible for this practice to

continue. Because of his aggressive enforcement of regulations governing inspections of elevators, the Agency targeted Mr. Payne for termination.

10.     In February 2005 and March 2006, Mr. Payne testified before the District of Columbia City Council and a subcommittee headed by Councilmember Jim Graham and provided information on company violations and lack of oversight at DCRA. This testimony was outside the scope of his employment. In March 2006, Mr. Payne appeared before the D.C. Council at an oversight hearing for the DCRA and provided testimony that approximately one-half of the elevators in the District of Columbia lacked proper certification and building owners were hiring third party elevator inspectors, some with ties to the building owners, to conduct inspections in violation of the letter of District of Columbia laws. Mr. Payne also disclosed that there were only two inspectors for the entire city. This testimony, as well, was outside the scope of his employment.

11.     Following his testimony, Mr. Payne was contacted by several news outlets for interviews in the District of Columbia, including WTOP radio and Channels 7 and 9, and these stations produced widely published stories on the lack of regulatory oversight for elevators and related safety issues in the District of Columbia. Mr. Payne was threatened with his employment by his superiors at DCRA for speaking with the media.

12.     Shortly after his testimony before the D.C. City Council and after speaking to the media, Mr. Payne was issued a notice of termination in November 2006 by Defendant Patrick Canavan, the Director of DCRA, based on information Defendant Canavan knew was false. Mr. Payne was accused of using his public office for private gain. The termination proceeded to an independent hearing examiner, Theresa Cusick. Ms. Cusick considered all of the evidence and heard all of the arguments by Mr. Payne and the

Agency and issued a decision reversing the removal of Mr. Payne and ordered that Mr. Payne be reinstated with back pay in February 2007. Acting DCRA Director Linda Argo reversed the removal and ordered Mr. Payne returned to work with back pay in July 2007. Defendant Argo has failed to ensure that DCRA pays Mr. Payne any back pay, and to date, Mr. Payne has not been returned to work, nor has he received any back pay and other lost benefits.

13.    On June 27, 2007, DCRA Director Linda Argo issued Mr. Payne a ten-day suspension for failure to follow instructions. After reversal of the 2006 removal of Mr. Payne, Defendants Argo and Majett solicited individuals from businesses that Mr. Payne had issued citations to provide false information about Mr. Payne. On July 12, 2007, Mr. Payne received a second Notice of Proposed Removal where he was charged with the same charges previously dismissed. Mr. Payne was accused of solicitation of elevator inspection and consulting work for his private commercial business while he was conducting business for DCRA as an elevator inspector; (2) acceptance of something of value from persons regulated by DCRA who had a specific interest in his decision whether or not to shut down elevators; and (3) use of government time for activities other than official business, including the promotion of his private business and the training of employees of that business during working hours.  Defendant Argo knew the reasons were false because the reasons had been previously rejected by an independent hearing examiner. DCRA solicited a different hearing examiner to hear the second notice of termination. The new hearing examiner failed to provide Mr. Payne with due process and upheld the termination. On September 18, 2007, Mr. Payne was issued another notice of

removal from his position and was summarily removed from his position with the D.C. government.

14. Mr. Payne has never solicited elevator inspection and consulting work for his private business while conducting business for DCRA as an elevator inspector, nor has he accepted anything of value from an individual with a specific interest in DCRA work; neither has he used government time for something other than official business. All of the charges against Mr. Payne are false and manufactured to bring about his termination from employment because of his prior Whistleblower activity.

## COUNT I

### Violation of D.C. Whistleblower's Reinforcement Act

Payne adopts by reference each of the allegations in the paragraphs above.

15. At all pertinent times, DCRA was an employer subject to provisions of the D.C. Whistleblowers Reinforcement Act, 1-615.53 et seq., of the District of Columbia Code. Defendants Argo, Canavan, Morgan, and Majett are agents of DCRA and are personally liable for their actions.

16. At all pertinent times, Plaintiff Payne was an employee entitled to protection under the D.C. Whistleblower's Reinforcement Act.

17. The D.C. Whistleblower's Reinforcement Act prohibits personnel action being taken against an employee because he refuses to comply with an illegal order or because he has made a protected disclosure. The D.C. Whistleblower's Protection Act guarantees that a D.C. employee is free to disclose information that is illegal or unethical or that threatens public funds and public health and safety without fear of retaliation. Mr. Payne

made protected disclosures when he protested lax enforcement of elevator inspection regulations, and when he testified before the City Council and gave interviews to the news media about illegal activity at DCRA, including but not limited to lack of regulatory oversight of elevator inspections and related safety issues. Mr. Payne's exercise of his whistleblower rights was a substantial or motivating factor in the adverse actions taken against him by DCRA and individual Defendants. The Defendants would not have taken these adverse actions if Mr. Payne had not engaged in activity protected under the D.C. Whistleblower's Reinforcement Act.

18.     As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

## Count II

### Violation of the First Amendment of the U.S. Constitution

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 18 above.

19.     When Mr. Payne spoke about the lack of oversight for elevator inspections and related safety issues, Mr. Payne was speaking out on matters of public concern. Mr. Payne's interest as a citizen in speaking out on such matters of public concern outweighed the interest, if any, of stifling public speech under the pretense that doing so allegedly promotes the efficiency of the public service. Mr. Payne spoke out on violations of the D.C. Code by Defendants and companies responsible for inspection of elevators. Mr. Payne's exercise of his First Amendment rights was a substantial or motivating factor in the adverse actions taken against him by D.C. DCRA and individual

Defendants. Defendants would not have taken these adverse actions if Mr. Payne had not engaged in activity protected under the First Amendment of the Constitution.

20. As a direct and proximate cause of Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

21. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's Constitutional rights.

## COUNT III

### Violation of Due Process Clause of the Fifth Amendment

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 21 above.

22. At the time of his termination, Payne was a career civil service employee with a constitutionally protected property and liberty interest in his employment. Even though there was not lawful cause to dismiss Payne, his job termination was summary and without procedural and substantive process due him. The manner in which Mr. Payne was terminated and defamed stigmatized him and damaged his reputation and foreclosed him from taking advantage of future employment opportunities. Defendants used their government power to oppress Payne for seeking to comply with the D.C. Code and abused their government power in a manner that shocks the conscience. Defendants' action are legally irrational because they are not keyed to any legitimate state or government interest; to the contrary, Defendants acted in a manner contrary to the legitimate government interest of the District of Columbia and its citizens and patrons

who use elevators in the District of Columbia. There is no rational connection between defendants' actions and the interests of the District of Columbia.

23. As a direct and proximate cause of the defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

24. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's Constitutional rights.

### COUNT IV

### Deprivation of a Liberty Interest Without a Name Clearing Hearing

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 24 above.

25. The individual Defendants, acting on behalf of DCRA, made false, stigmatizing public statements about Payne that call into question Payne's good name, reputation, honor, and integrity. Defendants made statements that denigrated Payne's competence as a professional and impugned Payne's professional reputation in such a fashion as to effectively put a significant roadblock in Payne's continued ability to practice his profession as an elevator inspector. Defendants defamed Payne in the course of the termination of his employment in a manner that foreclosed him from taking advantage of other employment opportunities. Defendants deprived Payne of due process and a name-clearing hearing to which he was entitled under the Due Process Clause.

26. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

11

27.	Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's Constitutional rights.

## COUNT V

### Hostile Work Environment and Violation of Civil Rights Under 42 U.S.C. Sec. 1983

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 27 above.

28.	As a result of Defendants' actions, Defendants violated Mr. Payne's civil rights, including his right to free speech, and created a hostile work environment, entitling Mr. Payne to equitable and legal relief including compensatory and punitive damages.

29.	As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

30.	Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT VI

### Breach of Contract

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 30 above.

31.	Plaintiff Payne was employed with DCRA pursuant to an express or implied contract. Defendants breached Mr. Payne's express or implied contract with DCRA and interfered with Mr. Payne's employment contract by forcing him off the DCRA payroll, terminating his employment, refusing to pay Mr. Payne wages due through termination and for annual leave and compensatory time, and refusing to provide Mr. Payne with the

required statutory notice of his right to obtain other health insurance following the termination of his employment with DCRA.

32. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

33. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT VII

### Civil Conspiracy to Interfere with Mr. Payne's Employment Relations

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 33 above.

34. Defendants, by their actions, entered into an agreement or understanding to attempt to force Mr. Payne to quit employment with DCRA or to fire him and/or to damage his professional and personal reputation, including by attempting to manufacture false information against Mr. Payne or to spread false or malicious information regarding Mr. Payne.

35. The actions were done by unlawful or tortious means, namely by defaming Mr. Payne and/or by interfering with his prospective employment opportunities and/or any of the previous civil counts above.

36. These actions have resulted in actual loss to Mr. Payne, including his loss of employment with DCRA, lost wages, and the loss of prospective employment.

37. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

38. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT VIII

### Defamation and Tortious Interference with Prospective Advantage

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 38 above.

39. Defendants repeatedly, and with actual malice, made false statements to Mr. Payne's co-workers, acquaintances, customers of DCRA, businesses and potential employers that Mr. Payne was incompetent. Acting with malice, Defendants intended and sought to ruin Mr. Payne's reputation among his co-workers, business,s and potential employers, to prevent him from gaining employment, and to use him as a scapegoat for Defendants' deliberate and reckless mismanagement within DCRA.

40. In addition, Defendants solicited members of the public to provide false information about Mr. Payne to cause his termination.

41. As a direct result of Defendants' actions, Mr. Payne has been unable to find comparable employment and remains underemployed.

42. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

43. Individual defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT IX

### Wrongful Discharge

Payne adopts by reference each of the allegations in the paragraphs above.

44. At all pertinent times, DCRA was an employer subject to labor statutes and D.C. elevator regulations. Defendants Argo, Canavan, Morgan, and Majett are agents of DCRA and are personally liable for their actions.

45. At all pertinent times, Plaintiff Payne was an employee entitled to protection from wrongful termination based on reporting violations of the D.C. Code and elevator regulations.

46. D.C. common law prohibits personnel action being taken against an employee because he refuses to comply with an illegal order or because he reports illegal conduct or because he testifies before the City Council. Mr. Payne engaged in protected activity when he protested lax enforcement of elevator inspection regulations and when he testified before the City Council and gave interviews to the news media about illegal activity at DCRA, including but not limited to lack of regulatory oversight of elevator inspections and related safety issues. Mr. Payne's exercise of his rights was a substantial or motivating factor in the adverse actions taken against him by DCRA and individual Defendants. Defendants would not have taken these adverse actions if Mr. Payne had not engaged in activity protected.

47. As a direct and proximate cause of Defendants' actions, Mr. Payne lost wages

and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

**RELIEF REQUESTED**

A.  Declare that the Defendants' policies and practices and actions, as described above, violate the First Amendment of the Constitution of the United States, the Due Process Clause of the Fifth Amendment of the Constitution of the United States, and the D.C. Whistleblower's Reinforcement Act.

B.  Enjoin DCRA from engaging in employment practices and procedures that operate to violate Mr. Payne's rights under the First Amendment of the Constitution of the United States, the Due Process Clause of the Fifth Amendment of the Constitution of the United States, and the D.C. Whistleblower's Reinforcement Act.

C.  Order DCRA to reinstate Mr. Payne to the position of elevator inspector at DCRA.

D.  Award Mr. Payne compensatory damages in the amount of $5 million for emotional distress, embarrassment, humiliation, anxiety, mental anguish, and loss of reputation within his work community; for hostile work environment and violation of his civil rights under 42 U.S.C. Section 1983; and for interference with prospective advantage and for civil conspiracy;

F.  Award Mr. Payne punitive damages in the amount of $1 million against the individual Defendants for violations of the First Amendment of the Constitution of the United States, the D.C. Whistleblower's Reinforcement Act, and for defamation of his character and reputation and tortious interference with his prospective advantage and for civil conspiracy;

G.      Award Mr. Payne back pay, lost wages, work related benefits, medical expenses, health insurance, and front pay;

H.      Award Mr. Payne his costs, expenses, and reasonable attorney's fees; and

I.      Grant Mr. Payne such other and further relief as the Court may consider just and proper.

                                Respectfully submitted,

                                /s/ David Branch
                                David A. Branch #437864
                                1825 Connecticut Avenue, NW
                                Suite 690
                                Washington, D.C. 20009
                                (202) 785-2805

### Jury Trial Demand

Plaintiff demands a jury trial on all counts.

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Audrick Payne

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David A. Branch
Law Offices of David A. Branch, PC
1825 Connecticut Avenue NW, Suite 690
Washington, D.C. 20009
(202) 785-2805

## DEFENDANTS

District of Columbia Government, Linda Argo, Patrick Canavan, Lisa Morgan, Nicholas Majett

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ⦿ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DC Whistleblower's Reinforcement Act, 42 U.S.C. Sec. 1983. Defendants retaliated against Plaintiff and violated his rights under the U.S. Constitution.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 01/25/2008    SIGNATURE OF ATTORNEY OF RECORD  /s/

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.