UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| AUDRICK PAYNE            PLAINTIFF v. DISTRICT OF COLUMBIA GOVERNMENT Et al.            DEFENDANTS | ) ) ) ) ) ) Civil Action No. 08-0163 (CKK) ) Jury Trial Demand ) ) ) ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes now the Plaintiff Audrick Payne ("Plaintiff" or "Payne"), by and through his attorneys, and files this First Amended Complaint against the Defendants, District of Columbia Government, Linda Argo, Patrick Canavan, Lisa Morgan and Nicholas Majett, and for his First Amended Complaint states as follows.

### INTRODUCTION

This is an individual action seeking declaratory and injunctive relief, back pay, front pay, and compensatory and punitive damages for violations of the plaintiff's rights to equal employment opportunity under the D.C. Government Comprehensive Merit Personnel Act of 1978, as amended by the Whistleblower Reinforcement Act of 1998, Sec. 1-615.51 et seq., and the First and Fifth Amendments of the U.S. Constitution; for defaming plaintiff's character and employment reputation' for tortuous interference with prospective advantage; for hostile work environment and retaliation and violation of civil rights under 42 U.S.C. Sec. 1983; for interference with prospective advantage; for breach of contract; and for civil conspiracy.

Plaintiff Audrick Payne contends that defendants have systematically and continuously violated his constitutional, statutory and common law rights by retaliating against him for the exercise of his First Amendment rights and rights under the Whistleblower's Protection Act.

## JURISDICTION and VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to the First and Fifth Amendments of the U.S. Constitution and 42 U.S.C. Sec 1983. This court has pendent jurisdiction over Plaintiff's claim under the D.C. Whistleblower Reinforcement Act and pursuant to D.C. Code Ann. Section 11-921.

2. Venue is proper in this court pursuant to 28 U.S.C. Sec 1391 in that the events giving rise to Payne's claims occurred here in the District of Columbia, and Defendants may be found here.

## PARTIES

3. Audrick Payne is an African American male citizen of the United States and a resident of the District of Columbia who was employed as an elevator inspector with the D.C. Department of Consumer and Regulatory Affairs (DCRA) from 2001 through September 2007.

4. The District of Columbia Department of Consumer and Regulatory Affairs (DCRA) is a department of the District of Columbia government. Defendants Argo, Morgan, Canavan, are the current and former Directors of DCRA, and Defendant Majett is the supervisor of elevator inspectors at DCRA. All are current and/or former employees of DCRA. Defendants Argo, Morgan, Canavan, and Majett were final

policymakers for the District of Columbia at DCRA because they were delegated such authority and exercised such authority.

## Background Facts

5. Mr. Payne was employed as a DS-12 certified elevator inspector with the DCRA from 2001 through September 2007. Mr. Payne has been a certified elevator inspector for eight years. Throughout his employment at DCRA, Mr. Payne performed his job in an exemplary manner. Mr. Payne began employment in 2001 and was removed from his position on September 18, 2007.

6. In his position as a certified elevator inspector with DCRA, Mr. Payne was responsible for inspecting elevators in the District of Columbia and issuing citations to building owners who were not in compliance with the D.C. Code. Mr. Payne also owns a company which performs consulting work outside of the District of Columbia. DCRA regulations permit employees to engage in outside work such as consulting as long as it is disclosed and does not present a conflict with an employee's work at the DCRA. In 2005, Mr. Payne informed the DCRA Director Canavan that he was engaging in consulting activities, and requested that the Director of the DCRA advise him of any applicable restrictions and inform him if the DCRA had an issue with his doing so. Neither Canavan nor DCRA responded with any objection to Mr. Payne's business, nor provided any guidance to Mr. Payne in response to his inquiries. Mr. Payne continued offering his consulting services outside of the District of Columbia, in Maryland, Virginia and elsewhere.

7. Between 2001 and 2005, there was a series of deadly accidents in the District of Columbia due to malfunctioning elevators and/or elevator safety equipment, which likely

3

could have been avoided if DCRA enforced the applicable regulations. These accidents generated interest from the public and the D.C. Council.

8. Shortly after he began employment with DCRA, Mr. Payne observed that many companies regulated by DCRA were not in compliance with the D.C. Code and District of Columbia Municipal Regulations as it relates to elevator safety and inspections. In October 2002, the District of Columbia permitted third parties to conduct inspections of elevators. Third party companies, however, were required to obtain training from the D.C. government before conducting inspections of elevators. The District of Columbia did not provide training to the third party inspection companies. While District of Columbia law permits third party inspectors, there is a requirement that third party inspectors must be trained for 180 days. Defendants Canavan, Morgan, and Argo consistently refused to enforce this law.

9. Mr. Payne observed that building owners set up third party companies which they controlled to conduct inspections of buildings. Mr. Payne protested this violation of the law to Defendants Canavan, Morgan, Argo and Majett. For example, building owner and real estate company Charles E. Smith owns Consolidated Engineering Services (CES), which has the same initials as the Charles E. Smith Company and conducts inspections at its buildings. Mr. Payne raised this conflict with DCRA officials, and he was told it was permissible for this practice to continue.

10. At DCRA, Mr. Payne witnessed lax enforcement of applicable regulations by DCRA authorities, which posed a risk to the health and welfare of District of Columbia citizens and others who used elevators and counted on the District of Columbia to ensure the safety of the elevators. As a result of DCRA's failure to enforce applicable

regulations, several individuals suffered serious bodily injury and death in elevator accidents. On occasion, Mr. Payne issued citations and shut down elevators where violations were egregious, life threatening, and of a continuing nature, only to have those decisions reversed by his supervisors. These infractions included elevators operating without D.C. permits, standing water in high voltage electrical wiring areas, and no master electrician as required by D.C. Construction Code 126.5, or where work was progressing in violation of DC Construction Code. As a result of performing his job, many building owners organized an effort to cause Mr. Payne's termination and began to make complaints about Mr. Payne to officials at DCRA.

11.     Mr. Payne documented several instances of permits being issued without proof of the required licensed master electrician. DCRA managers and supervisors, including Canavan, Majett, Morgan and Argo frequently signed off on work performed and completed without appropriate permits and accepted inspections done by contractors whose reports were several months old without follow through. In some cases, the contractor reports went unopened at DCRA. Other problems included DCRA's practice of acceptance of company statements that elevator work was in compliance with District of Columbia laws when inspections by licensed inspectors documented otherwise.

12.     In late January 2005, Mr. Payne was requested to meet with Councilmember Jim Graham to provide information on elevator inspections and safety at DCRA. This testimony was outside the scope of his employment. Mr. Payne attended this meeting with a Union representative as a witness and Defendant Canavan was present as well. At this meeting, Mr. Payne advised Councilmember Graham that several building owners owned the inspection companies that inspected their buildings; that third party inspection

companies should be trained by DCRA and DCRA had not provided any training; that there were elevators in the District of Columbia which had not been inspected for as long as 30 to 45 years; and top managers at DCRA did not provide oversight of elevator inspections, and lacked any training or knowledge on elevator inspections.

13.     In February 2005, Mr. Payne testified before a subcommittee of the City Council led by Councilmember Graham. At this hearing, Mr. Payne testified that at least half of the elevators in the District of Columbia had not been properly inspected.

14.     Again, in March 2006, Mr. Payne testified before the District of Columbia City Council and a subcommittee headed by Councilmember Jim Graham and provided information on third party company violations and lack of oversight at DCRA. At this oversight hearing for the DCRA, Mr. Payne provided testimony that approximately one-half of the elevators in the District of Columbia lacked proper certification and building owners were hiring third party elevator inspectors, some with ties to the building owners, to conduct inspections in violation of the letter of District of Columbia laws. Mr. Payne also disclosed that there were only two inspectors for the entire city. This testimony, as well, was outside the scope of his employment.

15.     Following his testimony, Mr. Payne was interviewed by the Washington Post, and reporters from Channel 5 News and WTOP radio station. He was later interviewed by Channels 7 and 9, and these stations produced widely published stories on the lack of regulatory oversight for elevators and related safety issues in the District of Columbia based on information provided by Mr. Payne.

16.     In August 2006, Mr. Payne was ordered by Defendant Majett to inspect elevators at 51 M Street, Northwest Washington, D.C. Upon arriving at the building, Mr. Payne

learned that the building owners had modified the existing fire alarm and safety systems without obtaining the necessary permits. Majett ordered Mr. Payne to conduct the inspection and worry about the permits later. Mr. Payne refused to conduct the inspection without the necessary permits in place. As a result of his refusal to conduct the inspection without the required permits, Mr. Payne was reassigned to desk duty in August 2006.

17. After his reassignment to desk duty, Mr. Payne filed a workers' compensation claim with the District of Columbia due to a back injury. The District of Columbia refused to process his claim for worker's compensation.

18. In September 2006, Mr. Payne went to two buildings in the 4000 block of Connecticut Avenue Northwest to conduct inspections. Days before his arrival, a third party inspector had conducted an inspection of the elevators in the buildings and approved the elevators and safety systems. At the buildings, Mr. Payne identified at least 50 safety hazards which compromised public safety. Mr. Payne immediately shut the elevators down. As a result of shutting the elevators down, Mr. Payne was reprimanded and placed on desk duty and suspended for ten days.

19. Mr. Payne was issued a notice of termination in November 2006 by Defendant Patrick Canavan, the Director of DCRA, based on information Defendant Canavan knew was false. Mr. Payne was accused of using his public office for private gain. The termination proceeded to an independent hearing examiner, Theresa Cusick. Ms. Cusick considered all of the evidence and heard all of the arguments by Mr. Payne and the Agency and issued a decision reversing the removal of Mr. Payne and ordered that Mr. Payne be reinstated with back pay in February 2007. Acting DCRA Director Linda Argo

reversed the removal and ordered Mr. Payne returned to work with back pay in July 2007. Defendant Argo has failed to ensure that DCRA pays Mr. Payne any back pay, and to date, Mr. Payne has not been returned to work, nor has he received any back pay and other lost benefits.

20.     On June 27, 2007, DCRA Director Linda Argo issued Mr. Payne a ten-day suspension for failure to follow instructions. After reversal of the 2006 removal of Mr. Payne, Defendants Argo and Majett solicited individuals from businesses that Mr. Payne had issued citations to provide false information about Mr. Payne. On July 12, 2007, Mr. Payne received a second Notice of Proposed Removal where he was charged with the same charges previously dismissed. Mr. Payne was accused of solicitation of elevator inspection and consulting work for his private commercial business while he was conducting business for DCRA as an elevator inspector; (2) acceptance of something of value from persons regulated by DCRA who had a specific interest in his decision whether or not to shut down elevators; and (3) use of government time for activities other than official business, including the promotion of his private business and the training of employees of that business during working hours.

21.     Defendant Argo knew the reasons were false because the reasons had been previously rejected by an independent hearing examiner. DCRA identified a different hearing examiner to hear the second notice of termination. The new hearing examiner failed to provide Mr. Payne with due process and upheld the termination. On September 18, 2007, Mr. Payne was issued another notice of removal from his position and was summarily removed from his position with the D.C. government.

22.     Mr. Payne has never solicited elevator inspection and consulting work for his

private business while conducting business for DCRA as an elevator inspector, nor has he accepted anything of value from an individual with a specific interest in DCRA work; neither has he used government time for something other than official business. All of the charges against Mr. Payne are false and manufactured to bring about his termination from employment because of his prior Whistleblower activity.

### COUNT I

### Violation of D.C. Whistleblower's Reinforcement Act

### (Payne v. D.C. Government, Canavan, Morgan, Argo and Majett)

Payne adopts by reference each of the allegations in the paragraphs 1 through 22 above.

23. At all pertinent times, DCRA was an employer subject to provisions of the D.C. Whistleblowers Reinforcement Act, 1-615.53 et seq., of the District of Columbia Code. Defendants Argo, Canavan, Morgan, and Majett are agents of DCRA and are personally liable for their actions under the D.C. Whistleblower's Protection Act.

24. At all pertinent times, Plaintiff Payne was an employee entitled to protection under the D.C. Whistleblower's Reinforcement Act.

25. The D.C. Whistleblower's Reinforcement Act prohibits personnel action being taken against an employee because he refuses to comply with an illegal order or because he has made a protected disclosure. The D.C. Whistleblower's Protection Act guarantees that a D.C. employee is free to disclose information that is illegal or unethical or that threatens public funds and public health and safety without fear of retaliation. Mr. Payne reasonably believed that his statements to Councilmember Graham and the press evidenced "gross mismanagement;" gross misuse or waste of public resources or funds;"

"abuse of authority in connection with the administration of a public program or the execution of a public contract;" and/or "A violation of a federal, state, or local law, rule, or regulation." Mr. Payne made protected disclosures when he protested lax enforcement of elevator inspection regulations to the Defendants, and when he met with Councilmember Graham in January 2005, and testified before the City Council in February 2005 and March 2006, and gave interviews to the news media about illegal activity at DCRA, including but not limited to lack of regulatory oversight of elevator inspections and related safety issues.

26.     Defendants took and/or threatened to take "prohibited personnel actions," as defined by the Whistleblower Protection Act Sec. 1-615.52(a)(5), and otherwise retaliated against Mr. Payne because of his protected activity. These actions included recommended, threatened and actual termination, suspension and reprimand, involuntary transfers, reassignments, or detail, and the retaliation in the manner described above. Mr. Payne's exercise of his whistleblower rights was a substantial or motivating factor in the adverse actions taken against him by DCRA and individual Defendants. The Defendants would not have taken these adverse actions if Mr. Payne had not engaged in activity protected under the D.C. Whistleblower's Reinforcement Act.

27.     As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

<u>Count II</u>

<u>Violation of the First Amendment of the U.S. Constitution</u>

**(Payne v. District of Columbia, Canavan, Morgan, Argo and Majett)**

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 27 above.

28. When Mr. Payne reported to Councilmember Graham and the City Council, and spoke to the media about the lack of oversight for elevator inspections and related safety issues, Mr. Payne was speaking out on matters of public concern. Mr. Payne's interest as a citizen in speaking out on such matters of public concern outweighed the interest, if any, of stifling public speech under the pretense that doing so allegedly promotes the efficiency of the public service. Mr. Payne spoke out on violations of the D.C. Code by Defendants and companies responsible for inspection of elevators. Specifically, Mr. Payne met with Councilmember Graham in January 2005, and testified before the City Council in February 2005 and March 2006, and gave interviews to the news media about illegal activity at DCRA, including but not limited to lack of regulatory oversight of elevator inspections and related safety issues. Mr. Payne's exercise of his First Amendment rights was a substantial or motivating factor in the adverse actions taken against him by D.C. DCRA and individual Defendants. Defendants would not have taken these adverse actions if Mr. Payne had not engaged in activity protected under the First Amendment of the Constitution.

29. As a direct and proximate cause of Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

30. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's Constitutional rights.

## COUNT III

## Violation of Due Process Clause of the Fifth Amendment

### (Payne v. District of Columbia, Canavan, Morgan, Argo and Majett)

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 30 above.

31. At the time of his termination, Payne was a career civil service employee with a constitutionally protected property and liberty interest in his employment. Even though there was not lawful cause to dismiss Payne, his job termination was summary and without procedural and substantive process due him. The manner in which Mr. Payne was terminated and defamed stigmatized him and damaged his reputation and foreclosed him from taking advantage of future employment opportunities. Defendants used their government power to oppress Payne for seeking to comply with the D.C. Code and abused their government power in a manner that shocks the conscience. Defendants' action are legally irrational because they are not keyed to any legitimate state or government interest; to the contrary, Defendants acted in a manner contrary to the legitimate government interest of the District of Columbia and its citizens and patrons who use elevators in the District of Columbia. There is no rational connection between defendants' actions and the interests of the District of Columbia.

32. As a direct and proximate cause of the defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

33. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's Constitutional rights.

## COUNT IV

### Deprivation of a Liberty Interest Without a Name Clearing Hearing

**(Payne v. District of Columbia, Canavan, Morgan, Argo and Majett)**

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 33 above.

34. The individual Defendants, acting on behalf of DCRA, made false, stigmatizing public statements about Payne that call into question Payne's good name, reputation, honor, and integrity. Defendants made statements that denigrated Payne's competence as a professional and impugned Payne's professional reputation in such a fashion as to effectively put a significant roadblock in Payne's continued ability to practice his profession as an elevator inspector. Defendants defamed Payne in the course of the termination of his employment in a manner that foreclosed him from taking advantage of other employment opportunities. Defendants deprived Payne of due process and a name-clearing hearing to which he was entitled under the Due Process Clause.

35. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

36. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's Constitutional rights.

### COUNT V

### Hostile Work Environment and Retaliation and Violation of Civil Rights Under 42 U.S.C. Sec. 1983

**(Payne v. District of Columbia, Canavan, Morgan, Argo and Majett)**

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 36 above.

37.     As a result of Defendants' actions, Defendants violated Mr. Payne's civil rights, including his First Amendment right to free speech, and created a hostile work environment and retaliated against him, entitling Mr. Payne to equitable and legal relief including compensatory and punitive damages. Defendants Canavan, Morgan, Argo and Majett were delegated with authority to establish policies governing elevator inspection and safety procedures, and were final policymakers for the District of Columiba in this area.

38.     As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

39.     Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT VI

### Breach of Contract

### (Payne v. District of Columbia Government)

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 39 above.

40.     Plaintiff Payne was employed with DCRA pursuant to an express or implied contract. Defendants breached Mr. Payne's express or implied contract with DCRA and interfered with Mr. Payne's employment contract by forcing him off the DCRA payroll, terminating his employment, refusing to pay Mr. Payne wages due from November 2006

through termination in July 2007, as ordered by the hearing officer, and for annual leave and compensatory time, and refusing to provide Mr. Payne with the required statutory notice of his right to obtain other health insurance following the termination of his employment with DCRA.

41. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

42. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT VII

### Civil Conspiracy to Interfere with Mr. Payne's Employment Relations

**(Payne v. District of Columbia, Canavan, Morgan, Argo and Majett)**

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 42 above.

43. Defendants, by their actions, entered into an agreement or understanding to attempt to force Mr. Payne to quit employment with DCRA or to fire him and/or to damage his professional and personal reputation, including by attempting to manufacture false information against Mr. Payne or to spread false or malicious information regarding Mr. Payne.

44. The actions were done by unlawful or tortious means, namely by defaming Mr. Payne and/or by interfering with his prospective employment opportunities and/or any of the previous civil counts above.

45. These actions have resulted in actual loss to Mr. Payne, including his loss of employment with DCRA, lost wages, and the loss of prospective employment.

46. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

47. Individual Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT VIII

### Defamation and Tortious Interference with Prospective Advantage

(Payne v. District of Columbia, Canavan, Morgan, Argo and Majett)

Plaintiff Payne repeats and incorporates by reference the allegations contained in paragraphs 1 though 47 above.

48. Defendants repeatedly, and with actual malice, made false statements to Mr. Payne's co-workers, acquaintances, customers of DCRA, businesses and potential employers that Mr. Payne was incompetent. Acting with malice, Defendants intended and sought to ruin Mr. Payne's reputation among his co-workers, businesses and potential employers, to prevent him from gaining employment, and to use him as a scapegoat for Defendants' deliberate and reckless mismanagement within DCRA.

49. In addition, Defendants solicited members of the public to provide false information about Mr. Payne to cause his termination.

50. As a direct result of Defendants' actions, Mr. Payne has been unable to find comparable employment and remains underemployed.

51. As a direct and proximate cause of the Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

52. Individual defendants acted maliciously, willfully, wantonly, and with reckless disregard of Mr. Payne's statutory rights.

## COUNT IX

### Wrongful Discharge

**(Payne v. District of Columbia Government)**

Payne adopts by reference each of the allegations in the paragraphs 1 through 52 above.

53. At all pertinent times, DCRA was an employer subject to labor statutes, including the Workers Compensation Act, and D.C. elevator regulations. Defendants Argo, Canavan, Morgan, and Majett are agents of DCRA and are personally liable for their actions.

54. At all pertinent times, Plaintiff Payne was an employee entitled to protection from wrongful termination based on reporting violations of the D.C. Code and elevator regulations.

55. D.C. common law prohibits personnel action being taken against an employee because he protests a violation of the law, refuses to comply with an illegal order or because he reports illegal conduct or because he provides information to the City Council. Mr. Payne engaged in protected activity when he protested lax enforcement of elevator inspection regulations and when he met with Councilmember Graham and testified before the City Council and gave interviews to the news media about illegal

activity at DCRA, including but not limited to lack of regulatory oversight of elevator inspections and related safety issues. Mr. Payne's exercise of his rights was a substantial or motivating factor in the adverse actions taken against him by DCRA and individual Defendants. Defendants would not have taken these adverse actions if Mr. Payne had not engaged in activity protected.

56   As a direct and proximate cause of Defendants' actions, Mr. Payne lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

## RELIEF REQUESTED

A.   Declare that the Defendants' policies and practices and actions, as described above, violate the First Amendment of the Constitution of the United States, the Due Process Clause of the Fifth Amendment of the Constitution of the United States, and the D.C. Whistleblower's Reinforcement Act.

B.   Enjoin DCRA from engaging in employment practices and procedures that operate to violate Mr. Payne's rights under the First Amendment of the Constitution of the United States, the Due Process Clause of the Fifth Amendment of the Constitution of the United States, and the D.C. Whistleblower's Reinforcement Act.

C.   Order DCRA to reinstate Mr. Payne to the position of elevator inspector at DCRA.

D.   Award Mr. Payne compensatory damages in the amount of $5 million for emotional distress, embarrassment, humiliation, anxiety, mental anguish, and loss of reputation within his work community; for hostile work environment and violation of his

civil rights under 42 U.S.C. Section 1983; and for interference with prospective advantage and for civil conspiracy;

F.   Award Mr. Payne punitive damages in the amount of $1 million against the individual Defendants for violations of the First Amendment of the Constitution of the United States, the D.C. Whistleblower's Reinforcement Act, and for defamation of his character and reputation and tortious interference with his prospective advantage and for civil conspiracy;

G.   Award Mr. Payne back pay, lost wages, work related benefits, medical expenses, health insurance, and front pay;

H.   Award Mr. Payne his costs, expenses, and reasonable attorney's fees; and

I.   Grant Mr. Payne such other and further relief as the Court may consider just and proper.

Respectfully submitted,

/s/ David A. Branch

David A. Branch #437864
Law Office of David A. Branch
1825 Connecticut Avenue, NW
Suite 690
Washington, D.C. 20009
(202) 785-2805

### Jury Trial Demand

Plaintiff demands a jury trial on all counts.

### Certificate of Service

I hereby certify this 9th day of May 2008 that the foregoing copy of Plaintiff's First Amended Complaint was served by electronic mail to counsel listed below:

Kerslyn D. Featherstone kerslyn.featherstone@dc.gov
Assistant Attorney General
District of Columbia Government
441 4th Street, NW
Washington, DC 20001

                                                              /s/ David A. Branch
                                                          David A. Branch