## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AUDRICK PAYNE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case Number: 2008-cv- 00163 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

### DEFENDANTS LISA MORGAN, LINDA ARGO AND PATRICK CANAVAN'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Lisa Morgan, Linda Argo, and Patrick Canavan (hereinafter "Defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. Rs. 12(b)(6) and 56 hereby move this court to dismiss Counts VII, VIII, and IX of the Amended Complaint filed against the Defendants or, in the alternative, to grant summary judgment in favor of the Defendants.  As grounds for this motion the defendant state the following:

1. Plaintiff has failed to exhaust his administrative remedies under the Comprehensive Merit Personnel Act ("CMPA") and the Collective Bargaining Agreement ("CBA") between DCRA and the American Federation of Government Employees ("AFGE").

2. Plaintiff fails to state a proper claim for civil conspiracy.

A Memorandum of Points and Authorities and Statement of Undisputed Facts in support of this Motion to Dismiss and Proposed Orders are attached hereto.  Because this is a dispositive motion, the defendant is not required to seek the plaintiff's consent pursuant to LCvR 7.1(m).

Date: June 24, 2008

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


___/s/ Toni Michelle Jackson_____
Toni Michelle Jackson [453765]
Interim Chief, General Litigation Section III
Civil Litigation Division


___/s/ Kerslyn D. Featherstone_____
KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6600
F(202) 727-3625

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AUDRICK PAYNE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case Number: 2008-cv- 00163 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DEFENDANTS' LISA MORGAN, LINDA ARGO, AND PATRICK CANAVAN PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### INTRODUCTION

The Defendants move this court to dismiss Counts VII, VIII and IX of the Amended Complaint, because plaintiff's claims are substantively defective. Plaintiff failed to exhaust his remedies through the CMPA and the CBA. Moreover, plaintiff failed to state a valid claim for civil conspiracy that would warrant any relief from this Court.

Plaintiff was an elevator operator with DCRA for approximately six years. During that time, plaintiff started his own private elevator inspection consulting company. While working as an elevator inspector for DCRA, plaintiff solicited work from business owners for his private business, in violation of D.C law and personnel regulations, and failed to notify his supervisor prior to suspending elevator service. Based on plaintiff's conduct and violations of D.C. Law, he was terminated from his position.

### STATEMENT OF FACTS

Plaintiff was employed as an elevator inspector with DCRA from 2001 until his termination on September 17, 2007. *See* Amended Complaint at 3, ¶5. Plaintiff's employment with DCRA is

governed by the CMPA, the District's personnel regulations, 6 DCMR § 1612, and the CBA between DCRA and the AFGE.  *See* Notification of Personnel Action, attached as Exh. 1, Notice of Personnel Action.

On July 12, 2007, plaintiff was issued a Fifteen Day Advance Notice of Proposed Removal. *See* attached Exh. 2.  This notice was based on, but not limited to, plaintiff's violation of D.C. Code § 1-618.02, District Personnel Manual ("DPM") § 1803.1(a)(1) and (6) [1], and a prior suspension for failing to comply with the work instructions given by his supervisor regarding the operational rules applicable to elevator inspections.  *Id.*

Plaintiff filed a written response and the matter was assigned to a hearing officer, Christine Davis.  On September 5, 2007, Ms. Davis issued a report, which upheld management's decision of the proposed removal.  After reviewing Ms. Davis' report and recommendation, on September 17, 2007, Acting Director Argo issued a final decision regarding the Fifteen Day Advance Notice of Proposed Removal and terminated plaintiff's employment with DCRA.  *See* attached Exh. 3.

Plaintiff submitted a written response on October 19, 2007, and November 27, 2007, he sent a letter to Acting Director Argo of his intent to arbitrate the removal action.  *See* attached Exh. 4. The matter is now pending in arbitration.

## STANDARD OF REVIEW

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999).

---

[1]   D.C. Code § 1-618.02 provides that D.C. government employees may not "engage in outside employment or private business activity or have any direct or indirect financial interest that conflicts or would appear to conflict with the fair, impartial, and objective performance of officially assigned duties and responsibilities'."   DPM § 1803-1(a)(1) prohibits employees from using their official positions for private gain and (6) prohibits employees from engaging in activities which adversely affect the public's confidence in the integrity of the District government.

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept the legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). *See also Western Assoc. L.P. v. Market Square Assoc.*, 235 F.3d 629, 633 (D.C. Cir. 2001) ("The court assumes that the factual allegations in the complaint are true, but it is not bound by the complaint's legal conclusions.").

The Supreme Court, has clarified the standard by which a complaint challenged by a Rule 12(b)(6) motion must be judged. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Court held that, while a complaint so attacked "does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Slip op.* at 8 (citing, *inter alia*, *Papasan*).

The *Twombly* Court specifically disavowed *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which innumerable courts have cited over the decades for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*'s "no set of facts language has been questioned, criticized, and explained away long enough. [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic*, *supra*, at 1959-60.

More specifically, the Court noted that, for a complaint to survive a Rule 12(b)(6) motion to dismiss, there must be a "'reasonably founded hope that the [discovery] process will reveal relevant

evidence' to support the claim." *Id.* at n.8 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Similar to the Courts' analysis on a motion to dismiss, summary judgment may be granted for a moving party when it shows that there are no material facts in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hussain v. Prinicipi*, 344 F. Supp. 2d 86, 94 (D.D.C. 2004). "In considering a motion for summary judgment, the 'evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  *Hussain*, 344 F. Supp. 2d at 94 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986)).

A party may rely on evidence outside of the pleadings to support his motion for summary judgment.  Fed. R. Civ. P. 56(a) (allowing claimant to rely on supporting affidavits).  Should the Court consider the evidence outside of the pleadings, this Motion to Dismiss will convert to a motion for summary judgment.  Fed. R. Civ. P. 12(b); *Herron v. Veneman*, 305 F. Supp. 2d 64, 70 (D.D.C. 2004) ("Often the introduction of factual materials by the parties—including depositions, answers to interrogatories, admissions on file and affidavits—will convert a Rule 12(b)(6) motion to dismiss to a Rule 56(b) motion for summary judgment.").

## ARGUMENT

### I.    PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO COUNTS VII, VIII AND IX.

Plaintiff alleges in Count VII that DCRA employees entered into an agreement to fire him and damage his reputation by spreading false and malicious information about his professional reputation.  *See* Amended Complaint at 15, ¶ 43.  In Counts VIII and IX, plaintiff alleges that defendants "repeatedly, and with malice, made false statements to [plaintiff's] co-workers, acquaintances, customers of DCRA, businesses and potential employers that [plaintiff] was

incompetent." *See* Amended Complaint at 16, ¶ 48.     Plaintiff further alleges that "defendants intended and sought to ruin [plaintiff's] reputation … and prevent him from gaining employment." *Id.*  Additionally, in Count IX, plaintiff alleges that he was wrongfully discharged for engaging in the activities as alleged in the Amended Complaint and had he not been engaged in protected activities, he would not have been terminated. *See* Amended Complaint at 17, ¶ 55.   Each of these allegations fall within the purview of the CMPA and the CBA, and must be exhausted.

The CPMA provides that a District employee may challenge his or her termination in either of two ways: (1) by appeal to the Office of Employee Appeals ("OEA"), and from there to the D.C. Superior Court; or (2) by any alternative procedure delineated in a collective bargaining agreement between the District and the employee's union.  D.C. Code § 1-616.52 (2001).  Plaintiff chose to arbitrate under the CBA.

Under plaintiff's CBA, plaintiff may appeal his termination through the grievance procedure, which includes the right to arbitration.  *See* CBA at 12, Article 10, attached hereto as Exh. 6.   Moreover, Plaintiff may appeal an arbitration award obtained through the CBA procedure to the Public Employee Relations Board ("PERB").  D.C. Code § 1-605.01.  *See Johnson v. District of Columbia , et al.,* Case No. 04-00250 (RCL) (Decided July 18, 2007) (Lamberth, J.) (Dismissing plaintiff's due process violation and common law claims for failing to exhaust administrative remedies under the CMPA and CBA)(opinion attached as Exh. 5).

The D.C. Court of Appeals has held that the CMPA is the "exclusive remedy for a District employee who has a work related complaint of any kind."  *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000), and, therefore, this court must "apply the CMPA's exhaustion remedy requirement strictly."  *Johnson v. District of Columbia,* 368 F. Supp. 2d 30,43.  In *Johnson,* the court explained that

> even if …. the District refuses to abide by a valid term of the collective bargaining agreement, it is likely that the plaintiff could seek [to] petition the PERB for relief.  As we mentioned above, the PERB has jurisdiction to resolve allegations of unfair labor practices, and breach of a collective bargaining agreement is likely to come within its jurisdiction to resolve, such that remand to the agency is required regardless of the Court's views about the proper way to categorize such a complaint

*Id.* at 50 n.8.

In *Jackson v. District of Columbia Dept. of Health*, Slip Copy, 2007 WL 1307891 (D.D.C. 2007), the Court held that

> "[t]he CMPA was enacted to provide employees of the District of Columbia an impartial and comprehensive administrative scheme for resolving employee grievances."  *Id.* at 2 (*quoting Holman v. Williams,* 436 F.Supp.2d 68, 74 (D.D.C.2006)).  The CMPA defines a "grievance," in relevant part, as "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees...."  *See Holman, supra*, 436 F.Supp.2d at 74 (quoting D.C. Code § 1-603.01(10)).

In the instant case, the Defendants contend that plaintiff must exhaust his administrative remedies under the CMPA and the CBA.  *See* Exh.6, CBA.  Moreover, plaintiff is bound by the CBA.  The CBA has its own provisions for enforcement which include procedures, up to and including, arbitration.  *Id.* at 12, Article 10.  Plaintiff does not allege, nor can he allege, that defendant breached any portion of the CBA.  In fact, plaintiff cannot allege that any portion of the CBA has been breached because plaintiff is currently exercising his right to arbitrate under the CBA.  *See* Exh. 4, Plaintiff's letter requesting arbitration.  *See Nelson v. General Electric Co.,* 145 A.2d 576, 578 (1958) (court held that "in an employee's action for damages for breach of employment contract, evidence did not sustain the employee's contention that the employer breached its contract by not giving the employee a warning notice as provided in the grievance procedure in the collective bargaining agreement.")

Moreover, plaintiff's allegations that DCRA employees entered into an agreement to terminate him and to damage his personal and professional reputation fail to rise to the level of a civil conspiracy. *See infra,* pt. II (argument dismissing civil conspiracy as a claim). However, even if the Court considered that plaintiff properly pled a claim of civil conspiracy, those acts fall directly inline with those work-related claims contemplated by the CMPA, as they constitute "adverse personnel actions" and would therefore require plaintiff to exhaust his administrative remedies. *See Winder v. Erste*, 2005 WL 736639, at 11 (D.D.C. 2005) (court found that "the CMPA preempted plaintiff's claims civil conspiracy claim because the claims were based on defendants' negative comments about the performance of plaintiff's duties, which were matters that fall squarely within the provisions for 'grievances' and 'adverse actions' covered by the CMPA.")

Lastly, plaintiff's allegations of defamation, tortious interference, and wrongful discharge each fall within the broad definition of grievance as defined. In each of these allegations, plaintiff alleges that the actions of defendant affected his ability to maintain employment with DCRA or seek future employment. Inasmuch as they pertain to plaintiff's termination, these are work-related matters under the CMPA and plaintiff's exclusive remedy is the CMPA or the CBA. *See Jackson, supra,* 2007 WL 1307891. In fact, plaintiff's allegations of wrongful discharge are being arbitrated through his CBA.

Plaintiff is exercising his rights under the CBA for his termination from DCRA. The law is clear in this jurisdiction, that plaintiff must exhaust his administrative remedies. Therefore, Counts VII – IX must be dismissed.

## II.    PLAINTIFF'S CLAIM OF CIVIL CONSPIRACY (COUNT VII) LACKS MERIT AND MUST BE DISMISSED.

In addition to defendants' request for dismissal on the ground that plaintiff has failed to exhaust his administrative remedies as to the claim for civil conspiracy. Plaintiff's claim also

cannot survive because he has failed to plead any facts with specificity regarding the alleged conspiracy. Moreover, the conclusory statements advanced by plaintiff alleging that the District and its employees conspired to defame and fire him do not meet the minimum pleading requirement, therefore, Count VII must be dismissed on these grounds.

### A. Allegations of Conspiracy Must Be Pled With Specificity

In his amended complaint, plaintiff alleges that defendants entered into an agreement or an understanding to attempt to force [plaintiff] to quit his employment with DCRA and/or fire him and/or to damage is professional and personal reputation, including attempting to manufacture false information." *See* Amended Complaint at 15, ¶ 43. These allegations are conclusory, at best, and do not state a claim for civil conspiracy.

The Court has held that "[a] generalized allegation of conspiracy fails to state a claim upon which relief may be granted." *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987), *citing Hobson v. Wilson*, 737 F. 2d 1, 30 (D.C. Cir. 1984). In *Hobson* the Court said:

> [C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed . . . . [U]nsupported allegations, *which fail to specify in detail the factual basis necessary to enable appellees intelligently to prepare their defense*, will not suffice to sustain a claim of governmental conspiracy to deprive appellants of their constitutional rights." 737 F.2d at 30 (emphasis added), *quoting Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (citations omitted).

*Id.* at 30.

Here, the allegations of civil conspiracy in plaintiff's amended complaint fail to specify in detail the factual basis for each alleged act. Rather, plaintiff merely advances conclusory, factually unsupported statements alleging general acts by the defendants. This fails to meet the minimum pleading requirements set forth in *Hobson, supra* 737 F.2d at 30, and therefore Count VII of the Amended Complaint should be dismissed.

**B.  District Employees And Its Representatives Cannot Conspire Among Themselves.**

Plaintiff alleges that the defendants entered into an agreement or understanding to attempt to force him from his employment with DCRA. *See* Amended Complaint at 13, ¶34.   As a matter of law, it is impossible for the defendants to have entered into a conspiracy, because they all comprise one legal entity—the District of Columbia.

At its core, a civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.  *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997), *recon. denied*, 967 F. Supp. 572 (D.D.C. 1997).    The D.C. Court of Appeals held in *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 334 (D.C. 2007), that "[t]o establish a *prima facie* case of civil conspiracy, a plaintiff needs to prove: (1) an agreement between two or more persons; (2) to participate in an unlawful act; and (3) injury caused by an unlawful overt act performed by one of parties to the agreement, and in furtherance of the common scheme."

It is well-established that governmental entities, including the District of Columbia, its agencies, and its officers, cannot form a conspiracy because the government, the agency, and/or the employees constitute a *single* entity and no one may conspire with him/herself.[2]  *Michelin v. Jenkins*, 704 F. Supp. 1, 4 (D.D.C. 1989); *Gladden v. Barry*, 558 F. Supp. 676, 679 (D.D.C. 1983); *see also Wright v. Illinois Dept. Children & Family Services*, 40 F.3d 1492, 1507-1509 (7th Cir. 1994); *Hull v. Cuyohoga Valley Board of Education*, 926 F.2d 505, 509-10 (6th Cir. 1990), *cert.*

---

[2]  This rule was derived from the rule of intra-corporate immunity for conspiracy claims.  According to the Fifth Circuit, "a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Fergusan*, 30 F.3d 649, 653 (5th Cir. 1994) (citation omitted); *see Okusami v. Psychiatric Institute of Washington*, 959 F.2d 1062, 1066-67 (D.C. Cir. 1992).  This is so because a corporation and its officers form a single entity and a single entity cannot conspire with itself.  *E.g.*, *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986), *cert. denied*, 482 U.S. 929 (1987); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984); *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1953).

*denied sub nom Hull v. Schuck*, 501 U.S. 1261 (1991); *Hankins v. Dallas Independent School District*, 698 F. Supp. 1323, 1330 (N.D. Tex. 1988).

In *Michelin*, the D.C. District Court dismissed a similar conspiracy claim, holding that "there can be no conspiracy between the District of Columbia Board of Education and its officials to violate plaintiff's civil rights, since these defendants comprise a single entity, not capable of entering into a conspiracy." 704 F. Supp. at 4. Similarly, in *Gladden*, this Court noted that "the weight of authority holds that there can be no conspiracy if the conduct complained of is essentially a single act by a single entity." 558 F. Supp. at 679.

Here, the plaintiff identifies the parties to the alleged conspiracy as the "Defendants." *See* Amended Complaint at 15, ¶ 43. The defendants in this lawsuit are the District of Columbia and four individuals who were District of Columbia officials at the time of the relevant conduct.[3] Because it is black-letter law that the District of Columbia—including its agencies and employees— cannot conspire with itself, the plaintiff's civil conspiracy claim (Count VII) must be dismissed as a matter of law.

## CONCLUSION

**WHEREFORE,** based on the foregoing arguments, Counts VII, VIII and IX of the Amended Complaint should be dismissed, or, in the alternative, summary judgment should be granted in favor of the District.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

---

[3] Nicholas Majett has not been served as of the filing of this motion.

_____/s/ Toni Michelle Jackson_____
Toni Michelle Jackson [453765]
Interim Chief, General Litigation Section III
Civil Litigation Division

____/s/  Kerslyn D. Featherstone___
KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6600
F(202) 727-3625

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AUDRICK PAYNE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case Number: 2008-cv- 00163 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## STATEMENT OF MATERIAL FACTS  TO WHICH THERE IS NO GENUINE DISPUTE

Defendants Lisa Morgan, Linda Argo, and Patrick Canavan, by and through undersigned counsel, submits the following statement of material facts as to which there is no genuine dispute:

1. Plaintiff was employed as an elevator inspector with DCRA from 2001 until his termination on September 17, 2007.  *See* Amended Complaint at 3, ¶5.

2. Plaintiff's employment with DCRA is governed by the Comprehensive Merit Personnel Act ("CMPA"), the District's personnel regulations, 6 DCMR § 1612, and the Collective Bargaining Agreement ('CBA') between DCRA and the American Federation of Government Employees.  *See* Exh. 1, Notice of Personnel Action.

3. In addition to his employment with DCRA, plaintiff organized an elevator inspection consulting company and offered his services in Maryland and Virginia.  *See* Amended Complaint at 3, ¶ 6.

4. On July 12, 2007, plaintiff was issued a Fifteen Day Advance Notice of Proposed Removal.  *See* Exh. 2.

5. On September 17, 2007, Acting Director Argo issued a final decision regarding the Fifteen

Day Advance Notice of Proposed Removal and terminated plaintiff's employment with DCRA. *See* Exh. 3.

6. Plaintiff's September 17, 2007, removal action is currently pending in arbitration. *See* Exh. 4

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

    /s/ Toni Michelle Jackson
Toni Michelle Jackson [453765]
Interim Chief, General Litigation Section III
Civil Litigation Division

    /s/  Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6600
F(202) 727-3625

# EXHIBIT 1

Standard Form 50
Rev 3/06
District of Columbia Government

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Payne, Audrick F | 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 | 05-02-1961 | 11-09-2006 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action | NTE: | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|---|
| 330 | Removal | | | |

| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
|---|---|---|---|
| 065 | DPM  Chapter 31B<br>Def Termination & Non Pay | | |

| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
|---|---|---|---|
| | | | |

**7. FROM: Position Title and Number**

Code Compl Spec (Elevator)
PD: 551240       Position:    00027505

**15. TO: Position Title and Number**

| 8.Pay Plan | 9.Occ. CD | 10.Grd/Lvl | 11.Step/Rate | 12.Tot. Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. CD | 18.Grd/Lvl | 19.Step/Rate | 20.Tot. Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DS | 1801 | 12 | 2 | $62,413.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $62,413.00 | $0 | $62,413.00 | $0 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| Consumer and Regulatory Affairs, Department of<br>Office of the Director<br>Building & Land Regulation Adm<br>Building Inspection Division<br>Elevator Branch<br>Washington DC USA | |

### EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 | 1-None<br>2-5 Point | 3-10 Point/Disability<br>4-10 Point/Compensable | 5-10 Point/Other<br>6-10 Point/Compensable/30% | 0 | 0-None    2-Conditional<br>1-Permanent  3-Indefinite | | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0      Basic + Option C (4x) | 9      Not Applicable | 0      Regular Rate |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| A   Defined<br>Contribution 5% | 09-04-2001 | F      Full Time | |

### POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Union Code / Barg Unit |
|---|---|---|---|---|
| 1 | 1-Competitive Service 3-SES General<br>2-Excepted Service  4-SES Career Reserved | N | E-Exempt<br>N-Nonexempt | | BIC / 1&2 |

| 38. Employee Class | 39. Other Benefits |
|---|---|
| Continuing - CA SOAR | DCB : CIGDCH,DENDCD,VISDCV |

| 40. EMPLID/RCD | 41.DRBCD | 42.DEPT ID | 43.Location ID | 44. Date Processed |
|---|---|---|---|---|
| 00027683  /  0 | 09-04-2001 | CR14420000 | LOCDC00006 | 12-04-2006 |

Address:     PO BOX 30944
             WASHINGTON DC 200300944

**45. Remarks**

- THIS ACTION TAKEN PER MANAGEMENT - EMPLOYEE TERMINATED EFFECTIVE: 11-09-06. (SEE ATTACHMENT)

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| District Of Columbia Govt<br>Consumer and Regulatory Affairs, Department of | **DEBORAH J. BONSACK**<br>**ASSISTANT DIRECTOR FOR ADMINISTRATION** |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DCGCR | | 12-01-2006 |

1 -      Employee Copy

# EXHIBIT 2

**GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS**



**Inspections and Compliance Administration**

July 12, 2007

Audrick Payne
P.O. Box 30944
Washington, DC  20030-0944

Re: Fifteen (15) Day Advance Notice of Proposed Removal

Dear Mr. Payne:

In accordance with the District of Columbia Personnel Manual (DPM) Section 1608, this is a fifteen (15) day advance notice of a proposal to terminate you from your position as Code Compliance Specialist (Elevator Inspector) in the Department of Consumer and Regulatory Affairs (DCRA), Inspections and Compliance Administration, to which you were appointed on September 4, 2001. This disciplinary action is being taken as a result of your violations of D.C. Code §1-618.02 (2001) and DPM Sections 1800, 1803,1804, 1805 and 1813, including, but not limited to (1) your failure to maintain a high level of ethical conduct in connection with the performance of official duties; (2) your failure to avoid action which might result in or create the appearance of using public office for private gain or adversely affecting the confidence of the public in the integrity of government; (3) your solicitation and/or acceptance of a gift, gratuity, favor or other like thing of value from a person who conducts operations or activities that are subject to regulation by the D.C. government or who has an interest that may be favorably affected by the performance or non-performance of your official responsibilities; (4) your engaging in an outside activity which was not compatible with the full and proper discharge of your duties and responsibilities as a government employee, including by using government time and resources for other than official business and engaging in a private business activity which permitted you to capitalize on your official title or position; and (5) your engaging in private business activity that conflicts with or would appear to conflict with the fair, impartial, and objective performance of officially assigned duties and responsibilities

Specifically, your removal is proposed because of (1) your solicitation of elevator inspection and consulting work for your private commercial business while you were conducting business for DCRA as an elevator inspector; (2) your acceptance of favors from persons regulated by DCRA who had a specific interest in your decision whether or not to shut down elevators; (3) your use of government time for other than official

Audrick Payne
Page 2

business, including the promotion of your private business and the training of employees of that business during working hours; and (4) your suspension, pursuant to a Final Decision, dated June 27, 2007, for failing to comply with the work instructions given by your supervisor and with operational rules applicable to elevator inspectors. Your conduct reflects a cavalier disregard for standards of ethical responsibility and work instructions of your supervisors, and knowing or intentional violation of District of Columbia statutes and regulations.

In accordance with DPM § 1608, this proposed discipline shall be imposed in fifteen (15) days of your receipt of this letter. You have a right to respond in writing within six (6) days of your receipt of this proposed action. Effective immediately, you are placed on administrative leave with pay and you should turn in your identification badge, security card, office key and any other District property that you may have in your possession.

<u>Investigation by the Office of the Inspector General (OIG)</u>.

The D.C. Office of the Inspector General (OIG) completed an investigation into alleged misconduct by you and issued a Report dated November 3, 2006 (*Report of Investigation Into Alleged Misconduct on the Part of an Employee at the D.C. Department of Consumer and Regulatory Affairs*, OIG No. 2005-0383(S)) (the "OIG Report"). The investigation was undertaken following complaints by various members of the Apartment and Office Building Association (AOBA) that you had solicited work for your private commercial business, Payne and Associates, Inc. (PAI), while on official duty.[1]

Following its investigation, the OIG found that, on at least three occasions, you had solicited consultants and contractors for private business as an elevator consultant while you were conducting business as an elevator inspector for DCRA. The OIG found "the issue of whether the employee solicited work for his/her personal business as a third-party inspector while on duty in violation of D.C. Code §1-618.02 and the District's Standards of Conduct is SUBSTANTIATED." The OIG received statements from two individuals with first hand knowledge: Eric Holst, Project Officer, Archstone-Smith and Tim Pagano, Superintendent of Archstone-Smith. Holst stated that on February 9, 2006, you conducted an elevator inspection at 2000 N Street, NW, and distributed your business card for PAI, your private business, during a re-inspection. Mr. Pagano confirmed Mr. Holst's statement. Mr. Pagano also stated that you made a

---

[1] Your responsibility as a DCRA Code Compliance Specialist (Elevator Inspector) entailed performing elevator inspections, preparing reports, and testing a variety of high, moderate, and low speed elevator systems, dumbwaiters, and escalators. As an inspector, you were to determine whether the physical and/or operating characteristics were within acceptable standards of the specifications, contractual requirements, and regulatory codes. You were also responsible for issuing civil infraction notices for certain construction code violations, investigating complaints, conducting special inspection requests, and investigating elevator-related accidents.

Audrick Payne
Page 3

reference to your private business during a re-inspection, and that you suggested that the property manager use PAI to conduct the re-inspection in lieu of a third-party inspector.

In addition, you admitted to the OIG that you had established PAI in 1998, but did not begin conducting any business until October 2005 when you received a tax identification number from the Internal Revenue Service. You further confirmed to the OIG that you taught your wife to evaluate code and compliance violations and the fundamentals of elevator inspections.

The OIG investigation report concluded that you violated D.C. Code §1-618.02 by soliciting inspection work for your private business during your inspections for DCRA. D.C. Code § 1-618.02 (2001) provides that D.C. government employees may not "engage in outside employment or private business activity or have any direct or indirect financial interest that conflicts or would appear to conflict with the fair, impartial, and objective performance of officially assigned duties and responsibilities." The OIG also concluded that your solicitation of inspection work for your private business during your inspections for DCRA violated D.C. Code § 1-618.02 because there was the appearance that your interest in obtaining business for your private business conflicted with DCRA's interest in conducting proper and valid elevator inspections. Additionally, the OIG concluded that your conduct violated (1) DPM § 1803.1. (a) (1) in that you used your official position for private gain; and (2) DPM §1903.1(a)(6) because your solicitations for your private business while on official duty adversely affected the public's confidence in the integrity of the District government.

DCRA Investigation

Following the OIG Investigation, DCRA received additional complaints regarding your conduct from members of the business community.

On June 22, 2007, DCRA conducted interviews with Deborah Marten, Building Manager for 1800 G Street, N.W., and William C. Clark, Director of Operations, Blake Real Estate. Ms. Marten stated that you provided her with your private business card during a meeting at 1800 G Street, N.W. on or about August 15, 2005 to conduct elevator inspections. During the meeting, Ms. Marten offered to contact the condominium site manager for her condominium in Virginia and to refer you to the building manager for elevator consulting work. Ms. Marten subsequently made the referral and you were hired by the building manager to provide elevator consulting work.

Mr. Clark stated that, during a re-inspection of elevators at 1150 Connecticut Avenue, N.W., on November 1, 2005, you stated that the re-inspection should be rescheduled for a Sunday or that otherwise you would need to recall the elevators, sound the fire alarm for the entire building and activate the strobe lights during business hours. According to

Audrick Payne
Page 4

Mr. Clark, you told him that, if the inspection was rescheduled for a Sunday, you would get a minimum of four hours of overtime. Mr. Clark stated, and DCRA records confirm, that the re-inspection occurred on Sunday, November 6, 2005.[2] Mr. Clark indicated that you brought two other people with you to the re-inspection on November 6, 2005, one of whom was your wife. You indicated to Mr. Clark that these individuals were in training to be elevator inspectors in your business. At the re-inspection, you ordered one elevator shut down.[3]

Mr. Clark also stated that you subsequently attended a luncheon meeting with him at The Daily Grill, where your inspection approach was discussed. Mr. Clark stated that you handed out your private business card at that luncheon. You did not pay for your own lunch.

Based on DCRA's investigation, it was determined that you distributed your business card while on official duty, and that you also conducted private business while on official duty by training your employees at the same time that you were on official business and receiving overtime pay from the District in violation of DPM §1804.1(b). In addition, you used your public office for private gain in violation of DPM §1801.3 by accepting business referrals from persons conducting activities subject to regulation by DCRA. Even though the referral pertained to private business outside of the District, the referral resulted from your contact within the District while you were on official duty; in the scenario described by Ms. Marten, you were receiving a monetary benefit, in the form of private business, as a result of a solicitation while you where on official government business. At a minimum, this conduct raised questions about the integrity of the inspection process, since the acceptance of a benefit from Ms. Marten raises an inference that you would be inclined to treat her more favorably in the inspection process. Similarly, your acceptance of a lunch from a person who conducts activities that are subject to regulation by DCRA and who has an interest that may be favorably affected by the performance or non-performance of your official responsibilities and your distribution of your business card during a luncheon where your elevator inspection approach was discussed further indicates your routine failure to maintain a high level of ethical conduct in connection with the performance of your official duties as well as your violation of relevant District statutes and regulations governing employee conduct.[4]

---

[2] When an elevator inspection is conducted outside of normal business hours, the building owner must reimburse the District for the overtime cost. Under existing overtime procedures, the employee receives a minimum of four hours of overtime.

[3] Although Mr. Clark's affidavit indicates that he believed the fire alarm testing was unnecessary, and was an indirect solicitation of overtime by you, this removal action does not give any weight to this particular allegation by Mr. Clark, since there may be a difference of professional opinion as to whether testing of a heat sensor could be accomplished without shutting off the elevators and activating the fire alarms.

[4] See DC Code §1-618.01 (a): "Each employee of the District government must at all times maintain a high level of ethical conduct in connection with the performance of official duties, and shall refrain from taking, ordering or participating in any official action which would adversely affect the confidence of the public in the integrity of the District government." See also DPM §1803.1: "An employee shall avoid action,

4

Audrick Payne
Page 5

In this regard, it bears emphasis that you received ethics training from DCRA, including quarterly, mandatory all-staff meetings in 2005 to discuss ethics issues, and a mandatory ethics seminar in June 2006. On July 11, 2005, you attended OAG/DCRA Training for DCRA Inspectors which included discussion of employee ethical responsibilities under Chapter 18 of the DPM (see agenda and sign-in sheet attached). These training sessions provided clear information about conduct that would be considered unethical, and included a discussion of the specific provisions of Sections 1800, 1803, and 1804. DCRA has no record that you submitted information about the extent of your outside business activities to DCRA, or sought an advisory opinion from the agency.[5]

Prior Disciplinary Actions

In taking this removal action, we are also taking into consideration your prior disciplinary history which includes a charge of insubordination which was upheld against you following arbitration on December 19, 2005 (FCMS Case No. 0553578 Audrick Payne) and a ten day suspension by Final Decision, dated June 27, 2007, for failing to comply with the work instructions given by your supervisor and with operational work rules applicable to elevator inspectors.[6]

Since your most recent discipline was for a suspension of ten days, the agency has used progressive discipline. Even if you did not have a prior history, however, we find that removal is warranted based on your actions described in this Advance Notice which are of a kind that cannot be tolerated by the agency.

---

whether or not specifically prohibited by this chapter, which might result in, or create the appearance of, the following: (a) Using public office for private gain;…(c) Losing complete independence or impartiality;…or (f) Affecting adversely the confidence of the public in the integrity of government." DPM §1803.2 provides that a District employee shall not solicit or accept, either directly or through the intercession of others, any gift, gratuity, favor, loan, entertainment, or other thing of value from a person who…(b) Conducts operations or activities that are subject to regulation by the D.C. government; or (c) Has an interest that may be favorably affected by the performance or non-performance of the employee's official responsibilities."

[5] During the relevant period of time, any requests by you would have been submitted by email to Polly Rich, the D.C. ethics counselor, and no such request was forwarded by DCRA to her attention during the relevant period of time in connection with your activities.

[6] The suspension was based on your failure to notify your supervisor prior to shutting down elevators at two buildings in September 2006, contrary to the written work rules for elevator inspectors. As noted in the June 27, 2007 Final Decision on your suspension, the written work rules were precipitated, in large part, by your shut-down of an elevator at 1330 7th Street, NW, on August 8, 2006, which resulted in the trapping of a person in the elevator, destruction of the elevator in order to remove the trapped individual, and the inability of disabled residents to leave their apartments while the elevator was non-operational. The written rules for elevator inspectors require notification of a supervisor before an elevator is placed out of service, or immediate notification to the supervisor after closure where a life-safety issue is involved, and were intended to make sure that elevator inspectors complied with the applicable procedures for elevator closures given significant public concerns that many of these closures were unjustified. In this regard, DCRA determined that during an eight month period in 2006 (from January to August), you shut down 41 elevators, of which only 23 involved potential life-safety issues justifying immediate closure.

Audrick Payne
Page 6

You have the right to review any material upon which this proposed action is based and to prepare a written response to the notice, including affidavits and other documentation, within six (6) days of receipt of this notice. You are entitled to an administrative review by a hearing officer.

Your response, should you prepare one, may raise every defense, fact or supporting matter in extenuation, exculpation or mitigation of which you have knowledge or reasonably should have knowledge, or which is relevant to the reasons in support of the proposed action, specification(s), or proposed penalty.

In accordance with Article 9, Section E, of the Collective Bargaining Agreement, you have the right to Union Representation.

Christine Davis, General Counsel of the Department of Public Works, has been appointed hearing officer to conduct the administrative review of the summary removal. Any response you prepare should be presented to Ms. Davis at 2000 14th Street, NW, 6th Floor, Washington, DC 20009. She may also be reached at (202) 671-2030.

In conducting the administrative review, the hearing officer will review this written notice, your response, if there is one, and may conduct an adversary hearing. After conducting the administrative review, the hearing officer will make a written report and recommendation to the deciding official, who will issue a notice of final decision.

The material upon which the proposed action is based may be reviewed in the DCRA Office of the Director, Human Resources Section, 941 North Capital Street, NE, Suite 9500, Washington, DC 20002. You may arrange to review the material by contacting Roslyn Hawkins, DCRA Labor Liaison, at 202-442-8928.

Sincerely,

*[signature]*

Nicholas Majett
Deputy Director

I acknowledge that this letter was served on me on the _____ day of July, 2007.

_____
Audrick Payne    *Personal service attempted on 7/12/07. Mr. Payne refused to accept or signed. Roslyn Hawkins 7/12/07*

6

# EXHIBIT 3

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Department of Consumer and Regulatory Affairs**



Office of the Director

September 17, 2007

VIA HAND-DELIVERY AND
U.S. CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Audrick Payne
2845 Denver Street, S.E.
Washington, DC 20020

RE:    Final Decision on Fifteen (15) Day Advance Notice of Proposed Removal

Dear Mr. Payne:

This letter is my Final Decision with respect to a fifteen (15) day advance notice of a proposal to terminate you from your position as Code Compliance Specialist (Elevator Inspector) in the Department of Consumer and Regulatory Affairs (DCRA), Inspections and Compliance Administration ("Notice") dated July 12, 2007.

You responded to the charges on July 27, 2007. On September 5, 2007, the Hearing Officer, Christine V. Davis, Esq. issued a written report and recommendation in which she recommended that the proposed removal action against you be upheld (see attached report). Ms. Davis concluded "Employee's conduct is the very conduct Chapter 18 of the DPM was enacted to prevent. Employee's actions violated the District's standards of employee conduct and warrant removal from his position."

Upon considering the notice, your response and the report and recommendation of the Hearing Officer, my final decision, as the deciding official, is to sustain the penalty proposed in the notice.

I have determined that all of the reasons in the notice have been sustained, specifically: (1) failure to maintain a high level of ethical conduct in connection with the performance of official duties (DPM 1800.1); (2) failure to avoid action which might result in or create the appearance of using public office for private gain or adversely affecting the confidence of the public in the integrity of government (DPM 1803.1(a)(1) and 1803 (a)(6)); (3) solicitation and/or acceptance of a gift, gratuity, favor or other like thing of value from a person who conducts operations or activities that are subject to regulation by the D.C. government or who has an interest that may be favorably affected by the performance or non-performance of employee's official responsibilities (DPM 1803.2(a), 1803.2(b)(2) and (b)(3)); (4) engaging in an outside activity which was not compatible with the full and

proper discharge of your duties and responsibilities as a government employee, including by using government time and resources for other than official business and engaging in a private business activity which permitted you to capitalize on your official title or position (DPM 1804.1(b) and (e)); and (5) engaging in private business activity that conflicts with or would appear to conflict with the fair, impartial, and objective performance of officially assigned duties and responsibilities (D.C. Official Code §1-618.02, DPM 1800.3 and 1813.1).

The Hearing Officer questioned whether the agency met its burden of proof with respect to one of the five charges, that is, accepting favors from persons regulated by DCRA (#3 above). With respect to this charge, the Hearing Officer considered only the evidence regarding a business lunch and did not consider your acceptance of a favor from Ms. Deborah Marten who provided a corroborated statement that she offered to contact a condominium site manager and to refer you to the manager for elevator consulting work, and that she subsequently made the referral. This referral constituted a "favor or other like thing of value" within the meaning of DPM 1803.2(a), 1803.2(b)(2) and (b)(3), and therefore provided additional, substantiated evidence with respect to the charge of accepting favors from persons regulated by DCRA that was overlooked by the Hearing Officer. However, even without consideration of this fifth charge, I find that your removal is warranted.

You have the right to contest this action through either the Office of Employee Appeals as provided in §1618 or the negotiated grievance procedure according to Article 9, Section A and B of the Collective Bargaining Agreement, dated September 30, 1990.

Your termination is effective at close of business September 21, 2007. If you have questions regarding benefits to which you may be entitled, please contact the DCHR Benefits Division at 202/442-9655.

Sincerely,

Linda K. Argo
Acting Director

cc:    DCHR Personnel File

I acknowledge that this notice of final decision was received by me on the ___ ___ day of September, 2007.

_____

Audrick Payne

# EXHIBIT 4



# AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2725

**P. O. BOX 75960, WASHINGTON, DC 20013-5960**

**(202) 842-4540 Phone    (202) 289-4190 Fax**

*President – Eric Bunn    1st Vice President,– Miranda Gillis    2nd Vice President – Michael Byrd*
*Secretary – Vacant    Sergeant at Arms – Charles Pugh    Treasurer – Henry Jackson*
*CHIEF STEWARDS*
*David Curtis, DCHA    Marion Brooks, DHCD    Helen Scott, DCRA    Nicholas Kauffman, DDOE*
*Doreen Broomfield, DOH*

---

November 27, 2007

Ms. Linda Argo
Director
D. C. Department of Consumer and
 Regulatory Affairs
941 North Capitol Street, NE
Washington, DC 20002

RE:    Notice of Intent to Arbitrate
       (date of Step 4 appeal October 19, 2007)
       Grievant: **Audrick Payne**, Elevator Inspector
       Issue: Removal

Dear Ms. Argo:

In accordance with the Collective Bargaining Agreement (CBA) at Article 10, Section D. e, this letter is sent to notify you of the Union's intent to arbitrate the above-cited removal action.

In accordance with Article 10, Section E.1, the Union will solicit a panel of seven (7) impartial arbitrators from the Federal Mediation and Conciliation Service.

This action is prompted by your failure to respond to the Union's Step 4 grievance dated October 19, 2007.

Sincerely,

Eric Bunn
President
AFGE Local 2725

# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALLIE L. JOHNSON,                ) | |
| )  | |
|     Plaintiff,                    ) | |
| )  | |
|     v.                            )  | Civil Action No. 04-0250 (RCL) |
| )  | |
| DISTRICT OF COLUMBIA et al.,      ) | |
| )  | |
|     Defendant.                    ) | |
| )  | |

### MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's Motion to Amend her Complaint [24] and her Motion to Compel Arbitration [22]. The Court has considered plaintiff's motions and accompanying memorandum, defendant's opposition thereto [36], plaintiff's reply [39], the applicable law, and the entire record herein. For the reasons set forth below, plaintiff's Motion to Amend her Complaint is hereby GRANTED in part and DENIED in part; her Amended Complaint is DISMISSED for failure to state a claim on which relief can be granted; and her Motion to Compel Arbitration is DENIED.

### BACKGROUND

When she was fired on March 8, 2002, plaintiff Sallie Johnson had worked as a correctional officer with the District of Columbia Department of Human Services Youth Services Administration for thirteen years. (Pl.'s Compl. 2.) At the time, Johnson was represented by the Fraternal Order of Police/Department of Human Services Labor Committee ("the union"), which had succeeded the American Federation of Government Employees ("AFGE") as exclusive union representative for Johnson's bargaining unit. (Id.) Recitation of the precise circumstances

1

surrounding Johnson's termination is unnecessary to resolution of the present motions, which

turn on her subsequent efforts to challenge that termination through the union and in this Court.

Johnson initiated formal grievance procedures through the union on March 27, 2002 and

sought arbitration as provided for in AFGE's collective bargaining agreement ("CBA") with the

District. *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 33 (D.D.C. 2005) (Lamberth, J.).

Over the next several months, Johnson fruitlessly sought information regarding her grievance's

progress from the union, but in January 2003, its general counsel advised her that arbitration had

resolved the matter in her favor. *Id.* Johnson's counsel later learned this assurance was

inaccurate and that Johnson's grievance had not been arbitrated at all. *Id.* In August 2003, she

discovered why the grievance's processing had stalled: because the CBA had been signed with

the union's predecessor, the District disputed that it remained bound by the agreement's

arbitration procedure . *Id.* at 34.

On February 17, 2004, Johnson filed a complaint [1] in this Court against the District

of Columbia[1] ("the District") and three individuals in her supervisory chain[2] ("the individual

defendants"). *Id.* On March 21, 2005, on the District's motion [5], this Court dismissed [12]

five of the complaint's six counts because it found Johnson had failed to exhaust her

administrative remedies under the District of Columbia Comprehensive Merit Personnel Act

---

[1] Johnson's complaint names former District of Columbia Mayor Anthony A. Williams, in his official capacity. (Pl.'s Compl. 1.) On April 8, 2004, the Court granted Williams' motion to substitute the District of Columbia as a defendant. Plaintiff's complaint also names Carolyn W. Colvin, Gayle L. Turner, and George Perkins, each in his or her official capacity. (Pl.'s Compl. 1-2.) The Court will refer to the District and the official capacity defendants collectively as "the District."

[2] Plaintiff's complaint also names Colvin, Turner, and Perkins in their individual capacities. (Pl.'s Compl. 1-2.)

("CMPA"). *Id.* at 32, 42-43. The Court determined that these five claims either were unripe or alleged conduct for which Johnson could seek relief through arbitration. *Id.* at 44-48. Johnson's suit could not proceed until the union and the District resolved their dispute over the CBA's validity. *Id.* at 50. Then, if the CBA were upheld, Johnson could arbitrate her grievance and pursue administrative appeals. *Id.* If the District nonetheless still refused to arbitrate, Johnson could petition the Public Employee Relations Board ("PERB"), whose jurisdiction under the CMPA "to resolve allegations of unfair labor practices" likely extended to "breach of a collective bargaining agreement." *Id.* at 50 n.8. Because she had not pursued this administrative avenue to its end, the Court could not hear her claims. *Id.* at 52.

Thereafter, only the second count of Johnson's complaint remained pending. It alleged the individual defendants had conspired to deprive Johnson of her interest in continued employment without due process of law, in violation of 42 U.S.C. section 1985 ("the section 1985 claim"). (Pl.'s Compl. 9.) On August 3, 2005, the individual defendants moved to dismiss [19] this sole remaining claim because Johnson had never properly served them. (Defs.' Mot. to Dismiss 1.) On August 18, Johnson sought additional time to file her opposition [20]. The following day, the Court granted her a ninety (90) day extension [21], until November 17, 2005. On November 22, Johnson filed motions with the Court seeking to compel the District to arbitrate [22], to stay proceedings in federal court pending the latter motion's resolution [23], and to amend her complaint [24]. She did not, however, oppose the individual defendants' motion to dismiss, and on February 28, 2006, the Court granted [32] this motion because it found she had not established proper service on them.

3

In that same order, the Court denied Johnson's motion for a stay[3] and ordered the District to respond to her motions to compel arbitration and to amend her complaint. These two motions are now before the Court.

## DISCUSSION

### I. Plaintiff's Motion to Amend her Complaint is Granted in Part and Denied in Part

#### A. Applicable Law

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend her complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. Pro. 15(a). "[A] motion to dismiss is not ordinarily considered a 'responsive pleading.'" *Confederate Mem'l Assoc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). Once such a pleading has been served, however, the plaintiff's right of amendment is conditioned on "leave of court or [] written consent of the adverse party." *Id.* Rule 15(a) thus ensures that "pleading is [not] a game of skill in which one misstep by counsel may be decisive to the outcome." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Until a responsive pleading is served, "[t]he Federal Rules of Civil Procedure guarantee a plaintiff *an absolute right* to amend [her] complaint once." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000) (emphasis added). The plaintiff need only file the amended pleading, and no accompanying motion for leave of court is required.[4] *E.g.*, *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 45 n.2 (D.D.C. 2005) (Walton, J.). *See also* 6

---

[3] The Court also denied Johnson's December 2005 motion for reconsideration [28] of the Court's order dismissing her five claims against the District.

[4] *Cf. Pure Country v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("seeking leave to amend does not, by itself, invoke the court's discretionary authority to deny leave if the amendment would otherwise fall within the purview of the first sentence of Rule 15(a)").

Wright, Miller, & Kane, *Federal Practice & Procedure Civil 2d* § 1482 (1990).

  Ordinarily, the plaintiff's absolute right to amend once "would be terminated by a [prior] judgment of dismissal . . . [and] [t]hereafter, efforts to amend the complaint must first be directed to reopening the judgment." *Cassell v. Michaux*, 240 F.2d 406, 408 (D.C. Cir. 1956). Indeed, after a district court has dismissed his suit, a plaintiff who wishes to amend must file "a 59(e) motion to alter or amend [the] judgment combined with a Rule 15(a) motion requesting leave of court to amend [his] complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). *See* Fed. R. Civ. Pro. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."). If the plaintiff persuades the court to vacate its judgment of dismissal, only then can the court entertain the plaintiff's proposed amendment. *Id.* In doing so, the Court has discretion to deny amendment based on "'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment." *Firestone*, 76 F.3d at 1208 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Cassell*, 240 F.2d at 408.

  The Court of Appeals' decision in *Cassell* illustrates these principles and will guide this Court's analysis. There, the district court dismissed Count 3 of the plaintiff's complaint with prejudice on statute of limitations grounds. 240 F.2d at 407. The plaintiff moved to amend as to Count 3, while the defendants sought entry of final judgment on that count. *Id.* at 407, 408. Without considering the plaintiff's motion, the district court granted the defendants' motion and finalized its prior order. *Id.* at 408. The D.C. Circuit reversed, holding that because the plaintiff sought leave to amend before final judgment was entered, "it was incumbent upon the court to give adequate consideration" to the merits of his motion. *Id.* The plaintiff filed his motion only

after the court had dismissed the count he sought to amend, so on remand, the district court could exercise discretion in granting or denying the amendment. *Id.* But a Rule 59(e) motion was unnecessary because when the plaintiff filed his motion, the court had not yet entered *final* judgment on Count 3. *See id.*

### B. Analysis

In resolving Johnson's present motion to amend, the Court must therefore ascertain: 1) whether it can even consider this motion absent an accompanying Rule 59(e) motion; and 2) if so, whether it has discretion to deny the motion.

### 1. Rule 59(e) Motion Not Required

Here, as in *Cassell*, this Court had not entered final judgment on any of Johnson's claims when she moved to amend her complaint, so she had no need to simultaneously file a Rule 59(e) motion.[5] Indeed, at no point did the Court ever direct entry of final judgment or order this case dismissed. *See Johnson*, 368 F. Supp. 2d at 52. Yet the District contends Johnson's motion to amend must now be denied as defective because no Rule 59(e) motion accompanies it. (Def.'s Opp. Pl.'s Mot. to Am. Compl. 3-4.) By implication, the District believes the Court's February 28, 2006 order constituted a final judgment. This belief is erroneous for two reasons.

First, as the Court concludes below, plaintiff's amendment as to the individual defendants was one of right, and as no motion was required, it was effectively filed on November 22, 2005 and was thus pending when this Court dismissed the original complaint's final claim three months

---

[5] *But cf. Fantasia v. Office of the Receiver of the Comm'n on Mental Health Svcs.*, No. 01-1079, 2002 U.S. Dist. LEXIS 27609, at *8-*9 (D.D.C. Mar. 11, 2002) (Oberdorfer, J.) ("after a district court dismisses certain defendants . . . *with prejudice*, those defendant[s] . . . can be reinstated through the vehicle of an amended complaint only if the plaintiff is also entitled to relief from the *judgment*" pursuant to a Rule 59(e) motion) (emphasis added).

later.[6]  *See, e.g., Calloway*, 366 F. Supp. 2d at 45 n.2 (no motion required when plaintiff is entitled

to amend as a matter of course).

Second, though the Supreme Court has observed that no comprehensive definition of

"final judgment" exists, finality "in most cases is plain enough." *Eisen v. Carlisle & Jacquelin*,

417 U.S. 156, 170 (1974).  Generally, "[a] 'final decision' [] is one which ends the litigation on

the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United

States*, 324 U.S. 229, 233 (1945) (citing *St. Louis I.M. & S.R. Co. v. Southern Express Co.*, 108

U.S. 24, 248 (1883)).  In this context, the D.C. Circuit distinguishes between an order dismissing

a *complaint* and one dismissing an *action*.  *See Ciralsky v. C.I.A.*, 355 F.3d 661, 666-68 (D.C. Cir.

2004).  While an order dismissing an action is necessarily final, finality of an order dismissing a

complaint depends on the trial judge's expressed intent.  *See id.* at 668.

This Court dismissed the last of the counts alleged in plaintiff's original complaint on

February 28, 2006 for failure to state a claim.  Under Federal Rule of Civil Procedure 41(b),

dismissal under Rule 12(b)(6) "operates as an adjudication on the merits."  Fed. R. Civ. Pro.

41(b).  Yet plaintiff's two motions remained pending, and the Court ordered the District to

respond to them.  Moreover, the Court conspicuously did not dismiss the suit or expressly enter

judgment against Johnson.  Hence, under *Ciralsky*, the Court's February 28 order did not impose

final judgment,[7] and Johnson was not required to supplement her motion to amend with a Rule

---

[6] Though the District argues otherwise, (Def.'s Opp. Pl.'s Mot. to Am. Compl. 4-5),
because Johnson's amended complaint has been pending since November 2005, this case still
presents a "controversy" over which the Court has subject matter jurisdiction.

[7] *See Hill v. City of Indianapolis*, 17 F.3d 1016, 1018 (7th Cir. 1994) (where defendants
had responded to plaintiffs' complaint with only a motion to dismiss, plaintiffs' motion effected
amendment as a matter of course, and district court's subsequent dismissal of the original

59(e) motion.

### 2. Amendment Within Court's Discretion Only as to the District

Like the plaintiff in *Cassell*, Johnson sought to file a first amended complaint before any defendant had filed a responsive pleading and before this Court had fully disposed of all her claims. As such, Rule 15(a) would ordinarily afford her a right to amend "as a matter of course." Fed. R. Civ. Pro. 15(a). In *Cassell*, because the plaintiff sought to amend only a count that had been dismissed with prejudice, this right had terminated, and the court could exercise discretion in granting or denying him leave to amend. 240 F.2d at 408. Here, however, Johnson sought to amend her single pending count as well as several counts this court had dismissed *without* prejudice, so *Cassell* provides an imperfect analog .[8]  (*See generally* Pl.'s Compl.; Pl.'s Am. Compl.)

Under Rule 15(a), while her section 1985 claim against the individual defendants remained before the Court, as against them, Johnson could amend her complaint as a matter of course. Hence, Johnson's motion to amend as to the individual defendants must be and is GRANTED. Because leave of court was unnecessary, the Amended Complaint that accompanied it is deemed filed as of November 22, 2005.[9]

---

complaint "could not possibly constitute a final judgment" absent a ruling on the amended complaint).

[8] In *Cassell*, the Court of Appeals read the trial court's dismissal with prejudice as indicating "it tentatively agreed . . . that the claims of Count 3 were *barred* by the statute of limitations." 240 F.2d at 408 (emphasis added).  This Court dismissed five of Johnson's claims not because they could *never* be brought but because she had brought them prematurely, without having exhausted her administrative remedies. *See Johnson*, 368 F. Supp. 2d at 44-48.

[9] This Court's Local Rules provide that an "amended pleading shall be deemed to have been filed and served by mail on the date on which the order granting the motion is entered."

Yet when Johnson filed her amended complaint, her claims against the District had been

dismissed. Indeed, the District claims it was not then a party to the case.[10]  When a plaintiff's first

amended complaint asserts claims against defendants who have been dismissed from the suit,

some courts have exercised discretion in denying amendment as to those defendants. *See, e.g.,*

*Bancoult v. McNamara*, 214 F.R.D. 5, 8-9 (D.D.C. 2003) (Urbina, J.) (granting plaintiff's motion

to amend complaint "as a matter of course" as to defendants against whom claims remained

pending, but denying the motion as futile as to dismissed defendant).

With some reservations, the Court agrees with this approach.  It is well accepted that a

plaintiff may add new defendants in amending her complaint "as a matter of course."  *See* Fed. R.

Civ. Pro. 15(a), (c); 6 Wright, Miller & Kane, *Federal Practice & Procedure Civil 2d* § 1474

(1990).  Yet the distinction between naming wholly new defendants and reinstating dismissed

defendants, if any exists, is minimal.  "The purpose of the amendment as a matter of right

provision is to avoid judicial involvement in the pleading process [at a stage] when . . . .it is

unlikely that applications for leave to amend would be denied by a judge" for reasons such as

undue delay, undue prejudice, or futility. *Id.* § 1480; *Foman*, 371 U.S. at 182.  Compared to

reinstatement of dismissed defendants, who have been substantially involved with the litigation in

the past, naming wholly new defendants seems far more likely to cause delay or prejudice.  As

such, it is somewhat illogical that leave of court should be requisite to the former but not to the

---

Local Rule 15.1.  Amendment "as a matter of course" does not require a motion and thus does
not depend on an order from the court.  *See, e.g., Calloway*, 366 F. Supp. 2d at 45 n.2.  Hence,
Johnson's amended complaint falls outside the ambit of this rule.

[10] The Court's Minute Order of July 21, 2005 directed the Clerk of the Court to correct a
docket entry listing the District as a filing party because the District "was dismissed as a
defendant in this case by the Court's Order issued 3/21/2005." (Minute Order of Mar. 21, 2005.)

latter.

Still, the Court of Appeals in *Cassell* found that the district court's interlocutory order dismissing Count 3 abrogated the plaintiff's right to amend that count "as a matter of course." 240 F.2d at 408. Thus, once this Court entered its interlocutory order dismissing Johnson's claims against the District, Johnson could no longer amend these claims as a matter of right. The Court has discretion to grant or deny her motion to amend as to the District.

### 3. Amendment as to the District Denied as Futile

When amendment falls to the court's discretion, Rule 15(a) provides that "leave shall be freely given when justice so requires." Fed. R. Civ. Pro. 15(a). As the Supreme Court has sternly directed, "this mandate is to be heeded." *Foman*, 371 U.S. at 182. Thus, "[i]f the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* But "if the proposed claim[s] would not survive a motion to dismiss," the district court "may deny a motion to amend [the] complaint as futile." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

Here, the claims against the District in Johnson's amended complaint suffer from the same flaw that fatally afflicted her original complaint. In its March 21, 2005 order, this Court dismissed five of the six claims in plaintiff's complaint because she had failed to exhaust her administrative remedies under the CMPA. *Johnson*, 368 F. Supp. 2d at 32, 42-43. The CMPA provides that a District of Columbia government employee may challenge her termination in either of two ways: 1) by appeal to the Office of Employee Appeals ("OEA"), and from there to D.C. Superior Court; or 2) by any alternative procedure delineated in a collective bargaining agreement between the District and the employee's union. *See id.* at 37 (citing D.C. Code §§ 1-601.1 *et seq.* (1981)).

10

The employee may appeal an arbitration award obtained through the CBA procedure to the PERB, and from there to D.C. Superior Court. *Id.* at 37-38. Relying on the D.C. Court of Appeals' determination that the CMPA is "the exclusive remedy for a District of Columbia public employee who has a work related complaint of any kind," *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000), this Court held itself bound to "apply the CMPA's exhaustion requirement strictly," *Johnson*, 368 F. Supp. 2d at 43. In examining the five challenged claims, the Court concluded each could be redressed through the grievance arbitration process Johnson initially elected.[11] *Id.* at 44-48.

Johnson's amended complaint restates two of these five claims - for defamation and intentional infliction of emotional distress - and repackages two others.[12] The original complaint's first cause of action alleged the District had violated her procedural due process rights under the CMPA and CBA "by giving Ms. Johnson an untimely and defective fifteen (15) day advance notice of proposal to remove her from her position." (Pl.'s Compl. 8-9.) Its fifth cause of action

---

[11] Johnson now argues that the CMPA does not provide an exclusive remedy for her common law claims and that administrative exhaustion should not be required as to them. (Pl.'s Reply 7-8.) To support this proposition, she offers a D.C. Court of Appeals case holding that an employee covered by the CMPA who suffers injury or death and receives disability or death benefits may bring common law claims against the District. *See Newman v. Dist. of Columbia*, 518 A.2d 698 (1986). Yet that decision in no way indicates the employee need not have first exhausted his administrative remedies. *See id.* More to the point, in a subsequent case, the D.C. Court of Appeals held that an employee must exhaust his remedies under the CMPA before bringing claims against the District for, *inter alia*, defamation and intentional infliction of emotional distress. *See Robinson v. Dist. of Columbia*, 748 A.2d 609 (2000). *See also Thompson v. Dist. of Columbia*, 428 F.3d 283, 288 (D.C. Cir. 2005) (applying *Robinson*).

[12] The Court also dismissed the original complaint's wrongful termination claim, which contended that official security lapses and neglect outside Johnson's control had "facilitated" the incident for which she was fired. *Johnson*, 368 F. Supp. 2d at 45-46. (*See* Pl.'s Compl. at 11-12.) Johnson's amended complaint does not resurrect this claim. (*See generally* Pl.'s Am. Compl.)

11

alleged the District had "intentionally, deliberately, and with malice" denied her the "opportunity

to clear her name and to protect her property interest in her continued employment" by refusing to

arbitrate her grievance. (*Id.* at 12-13.)

Similarly, the amended complaint's third cause of action alleges the District violated

Johnson's procedural due process rights "by terminating her pursuant to an untimely notice and

refusing to participate in arbitration in violation of the [CBA]." (Pl.'s Am. Compl. 15.) Its first

and second causes of action allege breach of contract through termination without adequate notice

and refusal to arbitrate. (*Id.* at 9-11.)

Regardless of which legal theory she espouses, Johnson's claims against the District rest

on the same underlying conduct as those in the original complaint[13] - conduct for which this Court

determined she could pursue an administrative remedy under the CMPA. *Johnson,* 368 F. Supp.

2d at 44-45.

In her original complaint, Johnson contended she was unable to complete the arbitration

process because the District disputed the CBA arbitration provision's validity. *Johnson,* 368 F.

Supp. 2d at 45. This Court assumed the dispute was in good faith and that if it were resolved in

the union's favor, the District would arbitrate Johnson's grievance per the CBA procedure. *Id.* at

50. Until then, Johnson could not seek relief in federal court because she could demonstrate

---

[13] To remedy this conduct, Johnson originally asked the Court to: 1) dismiss the "advance notice of proposed removal as untimely and in violation of her due process rights"; 2) declare the final removal notice "null and void"; 3) order the District to remove "any derogatory comments concerning her employment performance" and any reference to the incident for which she was fired from her personnel file; 4) order the District to return "all money deducted from her payroll for union dues, with interest; and 5) award compensatory and punitive damages. (Pl.'s Compl. at 9, 13-14.) Johnson now seeks this same relief along with "any grade and step increase she would have receive[d] but for her employer's illegal actions," costs, and attorney fees. (Pl.'s Am. Compl. at 10, 16.)

neither administrative exhaustion through completion of the grievance process nor that resort to

administrative remedies would be futile. *See id.* at 45, 49-50.

Johnson's amended complaint attempts to plead futility by alleging that the dispute has

been resolved and that the District still refuses to engage in arbitration. (*See* Pl.'s Am. Compl. at

39-40.) Specifically, she describes two arbitration proceedings brought by other employees in

which the District "voluntarily submitted . . . the issue of whether [it] had an obligation to

arbitrate every grievance" to the arbitrators. (*Id.* at 14.) Both arbitrators found that the CBA was

valid and enforceable and obligated the District to arbitrate employee grievances.[14] (*Id.* at 8, 14.)

The District appealed both decisions to the PERB, claiming the arbitrators "were without

authority and exceeded their jurisdiction in finding that" that it was bound by the CBA and thus

obligated to arbitrate. (*Id.* at 8-9, 14.) After reviewing the decisions, the PERB determined:

"neither Arbitrator exceeded his or her authority or jurisdiction, and their findings were based on a

thorough analysis and cannot be said to be clearly erroneous." (*Id.* at 14.) In a footnote, Johnson

notes that the District appealed the PERB's decision to the D.C. Superior Court, which granted

the union's motion to dismiss on October 3, 2003. (*Id.* at 14 n.2.) She contends the District "still

refuses to participate in arbitration of [her] grievance." (*Id.* at 15.)

Johnson thus seeks to dispel the assumption - on which this Court's March 21, 2005 order

relied - that if the contract dispute were resolved in the union's favor, the District would arbitrate

---

[14] Paragraph 39 explicitly states: "Neither Arbitrator Hocchauser nor Shapiro find [sic]
that the Agency had a duty to arbitrate under AFGE Local 383 (Pl. *Ex. "C" & Ex. "D"*).
Reading this sentence in context, and comparing it to the argument in plaintiff's reply
memorandum, the Court concludes plaintiff intends it to mean that *both* Arbitrators Hochauser
*and* Shapiro *found* the Agency had a duty to arbitrate under *the collective bargaining agreement
signed by AFGE* and will treat it accordingly.

Johnson's grievance per the CBA procedure. *Id.* at 50. She attempts to plead that the District has rendered administrative exhaustion impossible and that as a result, she must seek a remedy in federal court. Unfortunately, Johnson has not fully answered the concerns expressed in this Court's March 21, 2005 opinion. In particular, the Court explained that

> even if . . . the District refuses to abide by a valid term of the collective bargaining agreement, it is likely that the plaintiff could seek [to] petition the PERB for relief. As was mentioned above, the PERB has jurisdiction to resolve allegations of unfair labor practices, and breach of a collective bargaining agreement is likely to come within that jurisdiction. In any event, the PERB has primary jurisdiction to determine what claims are within its jurisdiction to resolve, such that remand to the agency is required regardless of the Court's views about the proper way to categorize such a complaint.

*Id.* at 50 n.8. Thus, the Court characterized appeal to the PERB as "Johnson's appropriate remedy" in the present situation. *Id.* at 45 n.5.

In her reply to the District's opposition to her motion, Johnson cites two D.C. Code sections for the proposition that the "PERB has no authority or jurisdiction to [redress] the Plaintiff's claims." (Pl.'s Reply 6.) The quoted statutory language is inapposite: under the doctrine of primary jurisdiction, the PERB, alone, can determine whether it has such authority. *See Johnson*, 368 F. Supp. 2d at 45 n.5 (citing *United States v. W. Pac. Ry. Co.*, 352 U.S. 59, 63-64 (1956) for its explanation of primary jurisdiction). Only if the PERB concludes that the District's refusal to comply with the CBA's arbitration provision falls outside its jurisdiction can Johnson seek relief in federal court.

Because this Court may not grant relief on the claims against the District in Johnson's amended complaint, her motion to amend her complaint as to the District is DENIED as futile.

**II. The Court Dismisses Plaintiff's Amended Complaint for Failure to State a Claim**

The D.C. Circuit has held that "it is practical and fully consistent with plaintiffs' rights and

the efficient use of judicial resources" for a district court to *sua sponte* dismiss a plaintiff's

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) "'where the claimant cannot

possibly win relief.'" *Baker v. Director, United States Parole Com.*, 916 F.2d 725, 726 (D.C. Cir.

1990) (per curiam) (quoting *Omar v. Sea-Land Svc., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987)).

Because Johnson was entitled to amend her complaint as to the individual defendants as a

matter of right, this Court was without power to deny her amendment. Yet as the Court found

when it first dismissed her claim against them over a year ago - two full years after Johnson filed

her complaint - nothing indicates these defendants were ever properly served, and Johnson makes

no attempt to rebut this conclusion in her reply memorandum. (Order of Feb. 28, 2006; *see*

*generally* Pl.'s Reply.) Hence, plaintiff's amended complaint is hereby DISMISSED as to the

individual defendants.

**III. The Court Denies Plaintiff's Motion to Compel Arbitration**

The same doctrines of administrative exhaustion and primary jurisdiction that compelled

the Court to deny amendment as to the District also render her motion to compel arbitration unripe

for judicial disposition. The CMPA empowers the PERB to, *inter alia*, "[d]ecide whether unfair

labor practices have been committed and issue an appropriate remedial order." D.C. Code § 1-

605.02(3) (2007). As the Court stated in its March 21, 2005 opinion, "appeal to the PERB on the

grounds that the District's refusal to abide by a valid collective bargaining agreement constitutes

an unfair labor practice" is Johnson's "appropriate remedy" at this stage. *Johnson*, 368 F. Supp.

2d at 45 n.5. Should the PERB rule in Johnson's favor, the CMPA authorizes it to issue "an

appropriate remedial order" - that is, an order compelling the District to arbitrate plaintiff's

15

grievance.[15]  *See* D.C. Code § 1-605.02(3) (2007).  Should the PERB determine instead that the

District's refusal to arbitrate is *not* an unfair labor practice, then no administrative relief will be

available to Johnson, and she may file a motion to compel arbitration in the appropriate court.[16]

Hence, plaintiff's motion to compel arbitration is DENIED.

### CONCLUSION

For the forgoing reasons, this Court concludes that plaintiff is entitled to her amend her

complaint as a matter of right as to defendants Colvin, Turner, and Perkins.  Amendment as to the

District is within the Court's discretion, and the Court has determined it would be futile, and it is

therefore DENIED.  Hence, plaintiff's motion to amend her complaint [24] is GRANTED in part

and DENIED in part.  To the extent permitted, plaintiff's amended complaint is deemed filed, as

to the claims against defendants Colvin, Turner, and Perkins, as of November 22, 2005.

Because plaintiff has never established proper service on defendants Colvin, Turner, and

Perkins, however, her amended complaint [24] is DISMISSED.

Finally, for the reasons stated, plaintiff's motion to compel arbitration [22] is DENIED.

Having resolved all pending motions and dismissed plaintiff's amended complaint, the

Court orders this case DISMISSED.  This is a final, appealable order.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, July 18, 2007

---

[15] Under the CMPA, the PERB may "[s]eek appropriate judicial process to enforce its orders and otherwise carry out its authority."  D.C. Code § 1-605.02(16) (2007).

[16] Johnson's motion to compel arbitration cites the District of Columbia Arbitration Act.  *See* D.C. Code §§ 16-4301 *et seq.* (2007).  Having dismissed her amended complaint, this Court would likely lack subject matter jurisdiction to order arbitration between Johnson, a District of Columbia resident, and the District pursuant to a District of Columbia statute.

# EXHIBIT 6

DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS


AND


THE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES


AFGE LOCAL 2725


Effective Through September 30, 1990

## TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| | Preamble .................................................. | 1 |
| 1 | Recognition .............................................. | 1 |
| 2 | Employee Rights .......................................... | 2 |
| 3 | Management Rights ........................................ | 3 |
| 4 | Governing Laws and Regulations .......................... | 4 |
| 5 | Union Representation ..................................... | 4 |
| 6 | Distribution of Agreement and Orientation of Employee. | 7 |
| 7 | Union Security and Union Dues Deductions ............. | 7 |
| 8 | Non-Discrimination ...................................... | 9 |
| 9 | Discipline .............................................. | 11 |
| 10 | Grievance Procedure ..................................... | 12 |
| 11 | Labor-Management Cooperation ............................ | 16 |
| 12 | Employee Lists and Information .......................... | 17 |
| 13 | Facilities and Services ................................. | 18 |
| 14 | Bulletin Boards ......................................... | 19 |
| 15 | Safety and Health ....................................... | 20 |
| 16 | Environmental Differential .............................. | 23 |
| 17 | Reassignments ........................................... | 23 |
| 18 | Hours of Work/Overtime Administration ................. | 24 |
| 19 | Use of Private Vehicles ................................. | 24 |
| 20 | Consultation and Counseling ............................. | 25 |
| 21 | Training, Career Development, and Upward Mobility .... | 26 |
| 22 | Performance Evaluation .................................. | 28 |
| 23 | Personnel Files ......................................... | 28 |
| 24 | Merit Staffing .......................................... | 29 |
| 25 | Details and Temporary Promotions ....................... | 30 |
| 26 | Position Classification ................................. | 31 |
| 27 | Reduction-In-Force ...................................... | 32 |
| 28 | Contracting Out ......................................... | 32 |
| 29 | Leave Administration .................................... | 33 |
| 30 | General Provisions ...................................... | 35 |
| 31 | No Strike or Lockout .................................... | 35 |
| 32 | Saving Clause ........................................... | 36 |
| 33 | Duration and Finality of Agreement ..................... | 36 |

## PREAMBLE

This Agreement is entered into between the District of Columbia Department of Consumer and Regulatory Affairs (DCRA), the American Federation of Government Employees, Local 2725, (hereinafter referred to as the Union) and collectively known as the parties.

The purpose of this Agreement is:

    1.  to promote fair and reasonable working conditions;

    2.  to promote harmonious relations between the parties;

    3.  to establish an equitable and orderly procedure for the resolution of differences;

    4.  to protect the rights and interests of the employee, the Union and the Department; and

    5.  to promote the efficient operations of the Department.

Each party affirms without reservation the contents of this Agreement.  Now therefore, in consideration of mutual covenants and promises contained herein, the Department and the Union do hereby agree as follows:

## ARTICLE 1
## RECOGNITION

### Section A:

Local 2725 of the American Federation of Government Employees, AFL-CIO is hereby recognized as the sole and exclusive representative for all employees in the bargaining units as described in Section B of this Article.

The Union as the exclusive representative of all employees in the unit has the right, as provided in Title 1, Chapter 6, Subchapter XVIII of the D.C. Code (1987 Rpl.) to act for and negotiate agreements covering all employees in the Unit and is responsible for representing the interests of all such employees without discrimination and without regard to membership in the labor organization.

### Section B:

The bargaining units represented by the American Federation of Government Employees, Local 2725 are as follows:

1. All employees of the Service Facility Regulation Administration; Housing and Environmental Regulation Administration; Building and Land Regulation Administration; and Office of Consumer Education and Information excluding management officials, confidential employees, supervisors or any employees engaged in personnel work in other than a purely clerical capacity and employees engaged in administration of the provisions of Title 1, Chapter 6, Subchapter XVIII of the D.C. Code (1987 Rpl.) and of the District of Columbia Comprehensive Merit Personnel Act of 1978.

## Section C:

When a position(s) changes or a new position(s) is established and the parties differ as to whether the position(s) is inside or outside the bargaining unit, either party may file a unit clarification petition with the D.C. Public Employee Relations Board (PERB).

## ARTICLE 2
## EMPLOYEE RIGHTS

### Section A.- General:

1. All employees shall be treated fairly, equitably and with respect, in accordance with District of Columbia laws, rules and regulations.

2. Instructions and guidances shall be given in a reasonable and constructive manner.

3. The Department shall not retaliate against any employee for the exercise of his/her rights under this Agreement or any applicable laws, rules or regulations.      -

### Section B:

1. The Department and the Union agree that employees have the right to join, organize, or affiliate with, or to refrain from joining, organizing, or affiliating with the Union. This right extends to participating in the management of the Union, or acting as a representative of the Union, including representation of its view to the officials of the Executive Branch, City Council, or other appropriate authority.

-2-

2. Employees shall be free from interference, restraint, coercion and discrimination in the exercise of their right to organize and designate representatives of their own choosing for the purpose of collective bargaining and Labor-Management cooperation.

### ARTICLE 3
### MANAGEMENT RIGHTS

**Section A:**

The Department shall retain the sole right, in accordance with applicable laws, rules and regulations:

1. to direct employees of the Department;

2. to hire, promote, transfer, assign and retain employees in positions within the Department and to suspend, demote, discharge or take other disciplinary action against employees for cause;

3. to relieve employees of duties because of lack of work or other legitimate reasons;

4. to maintain the efficiency of the District Government operations entrusted to them;

5. to determine the mission of the Department, its budget, its organization, the number of employees and the number, types and grades of positions of employees assigned to an organizational unit, work project or tour of duty, and the technology of performing its work; or its internal security practices; and,

6. to take whatever actions may be necessary to carry out the mission of the Department in emergency situations.

**Section B:**

Notwithstanding Section A above, the Union may grieve, if in exercising Management's rights, the Department violates any provisions of this Agreement or any Government-wide laws, rules or regulations which are grievable under this Contract.

## ARTICLE 4
## GOVERNING LAWS AND REGULATIONS

**Section A:**

In the event any D.C. Government-wide or Department rules, regulations, issuances or policies are in conflict with the provisions of this Agreement, this Agreement shall prevail.

**Section B:**

It is understood that D.C. Government-wide laws, rules and regulations that are not in conflict with this Agreement and are not specifically incorporated herein are, nevertheless, applicable to bargaining unit employees.

**Section C:**

If during the life of this Agreement a law from a higher authority invalidates or requires an amendment to any part of this Agreement the parties shall meet promptly upon request of either party to negotiate the change.

**Section D:**

The Department shall communicate, consult with and negotiate with the Union on matters related to working conditions affecting bargaining unit members. However, in accordance with the provisions of Article 10, Grievance Procedure, the Department may communicate with a grievant and/or authorized non-union representative in order to resolve a grievance related to the working conditions of the grievant.

**Section E:**

Except in emergency situations, the Department shall consult with the Union prior to changing Department rules, regulations or policies which affect the working conditions of bargaining unit employees. When the change directly impacts on the conditions of employment of bargaining unit members, such impact shall be a proper subject of negotiation.

## ARTICLE 5
## UNION REPRESENTATION

**Section A:**

The Employer will recognize elected Union Officials, Stewards, and nonemployee Union Officials as duly authorized representatives of the Union and employees of the bargaining unit.

-4-

There shall be twenty-five (25) shop stewards assigned through-out the Department in the recognized bargaining unit. Employee representatives, excluding Union president, elected officials and designated chief-steward, shall only be authorized to engage in permissible Labor-Management business (as defined by this Article) within the shift and work area designated by the Union as agreed to by Management.

## Section B:

The Union will furnish the Department a written list of elected officials, stewards and authorized employee representatives and submit changes as they occur. Recognition will be given to those representatives whose names have been submitted to the Department.

## Section C:

Stewards are authorized to perform and discharge the duties and responsibilities of their position as it relates to representing the employees of the unit. Requests by Stewards to meet with employees or requests of employees to meet with Stewards shall not require prior explanation to the supervisor of the problems involved other than to identify the area to be visited, and the general nature of the Union business to be conducted.

## Section D:

The Department shall make every reasonable effort to notify the Union prior to placing Union representatives on special assignments, details and/or making shift changes. In the case of reassignments or transfers, the requirements of Article 17 shall not be used as a means of punishment or retaliation.

## Section E:

A Union representative, when leaving work to transact permissible labor-management business as defined by this Article, during work hours, first shall request permission from his/her immediate supervisor or designee. Steward requests shall not be denied for arbitrary or capricious reasons.

## Section F:

Upon entering a work area other than his/her own, the Union representative shall advise the appropriate supervisor of his/her presence and the name of the employee he/she desires to visit. The Union representative will notify the appropriate supervisor of his/her intent to confer with employees in his/her own work area. In the event the Union representative wishes to visit a work area but not to meet with a Union member, he/she must notify the appropriate supervisor upon arrival.

-5-

**Section G:**

Union representatives who are unit employees will be permitted official time in accordance with this Article to engage in the following labor-management activities.

1. Assist employees in the preparation of grievances, complaints, or appeals;

2. Furnish the employee advice on his/her rights and privileges under this Agreement and applicable laws, rules and regulations;

3. Arrange for witnesses and to obtain other information or assistance relevant to a grievance or appeal;

4. Consult with Management officials or other appropriate District Government officials as provided for mutual cooperation; and,

5. Conduct other legitimate labor-management business as provided for by this Agreement.

**Section H:**

The Union agrees that grievances should preferably be investigated, received, processed and presented during the first and last hour of the grievant's scheduled tour of duty unless otherwise authorized. The Employer recognizes that this is not always practicable and will not prevent Union representatives from representing employees at other times consistent with the provisions of this Article.

**Section I:**

The Department agrees that permission for a Union representative to participate in the grievance process will not be unreasonably delayed; however, the Union recognizes that workload and scheduling considerations will not always allow for release of employees from their assignments at the time requested.

**Section J:**

The Department reserves the right to grant permission for attendance (with no loss of leave) at Union meetings during work hours when such assemblage is in the interest of the Department, provided that release of employees would not unduly interrupt the work force in the judgment of Management.

## ARTICLE 6
### DISTRIBUTION OF AGREEMENT AND ORIENTATION OF EMPLOYEES

**Section A:**

The Department shall print and distribute a copy of this Agreement to each individual in the bargaining unit. The costs associated with the reproduction of this Agreement shall be borne by the Department.

**Section B:**

When the Department conducts orientation sessions for new employees, thirty (30) minutes shall be allocated to the Union to make a presentation and distribute the Union's membership packet. The Department shall provide each new employee with a copy of this Agreement, the Department's Employee Handbook and other relevant information.

**Section C:**

The Department shall provide the Union with reasonable written advance notice of the date, time and place of each orientation session.

**Section D:**

The Department shall list the Union in each publication of its telephone directory.


## ARTICLE 7
### UNION SECURITY AND UNION DUES DEDUCTIONS

**Section A:**

The terms and conditions of this Agreement shall apply to all employees in the bargaining unit without regard to Union membership. Employees covered by this Agreement have the right to join or refrain from joining the Union.

**Section B:**

The Department agrees to deduct Union dues from each employee's biweekly pay upon authorization on D.C. Form 277. Union dues withholding authorization may be cancelled upon written notification to the Union and the Department thirty (30) days prior to each annual anniversary date (effective date) of this Agreement, regardless of the provisions on the D.C. 277 Form. When Union dues are cancelled, the Department shall withhold a service fee in accordance with Section C of this Article.

-7-

## Section C:

Because the Union is responsible for representing the interests of all unit employees without discrimination and without regard to Union membership, (except as provided in Section E below), the Department agrees to deduct a service fee from each non-union member's biweekly pay without written authorization. The service fee and/or Union dues withheld shall be transmitted to the Union, minus a collection fee of five cents ($.05) per deduction per pay period. Upon a showing by the Local Union of sixty percent (60%) of the eligible employees in the bargaining unit for which it has certification are Union members, the Department shall begin withholding, not later than the second pay period after this Agreement becomes effective and the showing of sixty percent (60%) is made, a service fee applicable to all employees in the bargaining unit(s) who are not Union members. The service fee withholding shall continue for the duration of this Agreement. Payment of dues or service fees through wage deductions shall be implemented in accordance with procedures established by the Department and this Article. Employees who enter the bargaining unit where a service fee is in effect shall have the service fee or Union dues withheld by the Department within two (2) pay periods of his/her date of entry on duty or D.C. 277 Form authorization.

## Section D:

The service fee applicable to non-union members shall be equal to the biweekly Union membership dues that are attributable to representation.

## Section E:

Where a service fee is not in effect, the Union may require that any employee who does not pay dues or a service fee shall pay all reasonable costs incurred by the Union in representing such employee(s) in grievance or adverse action proceedings in accordance with provisions of Title 1, Chapter 6 of the D.C. Code and the Comprehensive Merit Personnel Act (CMPA).

## Section F:

Within two (2) pay periods following the submission of an employee's application for membership and dues check-off the Department shall start deducting Union dues from the employee.

## Section G:

Within two (2) pay periods following the effective date of an employee's separation from the bargaining unit, the Department shall stop deducting Union dues or service fees from the affected employee.

## Section H:

Payment of dues or service fees shall not be a condition of employment.

## Section I:

The Department shall be indemnified or otherwise held harmless for any good faith errors or ommissions in carrying out the provisions of this Article.

### ARTICLE 8
### NON-DISCRIMINATION

## Section A:

The Department and the Union agree not to discriminate for or against employees covered by this Agreement on account of membership or non-membership in the Union, or on account of race, color, religion, sex (including sexual harassment), national origin, age, physical handicap, marital status, political affiliation or other criteria prohibited by law. The Department recognizes its responsibility to promote and ensure equal employment for all persons on the basis of merit without discrimination based on race, religion, color, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, matriculation, physical handicap or political affiliation and to promote the full realization of EEO through positive programs of affirmative action at every management level within the Department.

## Section B:

The Department agrees to provide the Union with copies of the Affirmative Action Plan and furnish each employee with a copy. The EEO complaint regulations and procedures will be published, posted and distributed to each employee as well as be included in the Affirmative Action Plan. The parties agree that EEO complaints shall be processed in accordance with District law, rules and regulations. This does not preclude the non-EEO aspects of mixed grievances (where clear distinction can be made and where such complaints are within the scope of the grievance procedure as defined within this Agreement) from going through the negotiated procedure.

## Section C:

The Union recognizes its responsibility as bargaining agent and agrees to represent all employees in the unit without discrimination.

## Section D:

Appointment of EEO Counselors is a managment responsibility; how-

-9-

ever; the Department agrees that the Union may submit names of employees to the Department for consideration for appointment to EEO Counselor, using the same criteria as are used for any other nominee. The Union shall be promptly notified in writing of the names and telephone numbers of the EEO Counselors.

## Section E:

The names and telephone numbers of the EEO Counselors shall be posted on all bulletin boards in the Department.

## Section F:

The Union shall have one (1) member on the Employee's Women's Program Advisory Committee selected by the Union representing a cross section of unit employees. The Union may designate an alternate to serve in the absence of its regular representative.

## Section G:

The Department and the Union recognize that sexual harassment is a form of misconduct that undermines the intergrity of the employment relationship and adversely affects employee opportunities. All employees must be allowed to work in a environmental free from unsolicited and unwelcomed sexual overtures. Sexual harassment is defined in Equal Opportunity rules governing complaints of discrimination in the District of Columbia Government (31 DCR 56):

> "Sexual harassment" means unwelcome sexual advance, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (1) submission to such conduct is made either explicity or implicitly a term or condition of employment; (2) submission to or rejection of such conduct by an employee is used as the basis for employment decisions affecting such employee; or (3) such conduct has the purpose of or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile or offensive working environment. Sexual harassment may include, but is not limited to, (a) verbal harassment or abuse, (b) subtle pressure for sexual activity, (c) patting or pinching, (d) brushing against another employee's body, and (e) demands for sexual favors.

## Section H:

Through the procedures established for Labor-Management cooperation, each party shall advise the other of equal employment opportunity programs of which they are aware. The Department shall ensure that problems brought to its attention under this Article shall be promptly remedied.

Section I:

In the development and implementation of its affirmative action plan, and in accordance with District laws and regulations, the Department agrees to consider the following:

1. Procedures to allow for the redesigning of jobs to reflect the needs of the Department and the skills of employees;

2. Reasonable accommodations to the religious needs of employees; and

3. Ensuring that discriminatory personnel management policies, procedures, or practices shall be handled in accordance with EEO procedures and statutes.

ARTICLE 9
DISCIPLINE

Section A:

Disciplinary action(s), including adverse action(s), corrective action(s) and admonishment(s) shall be imposed against a bargaining unit employee only for cause as defined in D.C. Code, §1-617.1(d) (1987 ed.).

Section B:

Employees have the right to contest corrective or adverse actions taken for cause through either Office of Employee Appeals (OEA) or the negotiated grievance procedure. An employee shall elect either of these procedures in writing and the selection once made cannot be changed.

1. Should the employee elect to appeal the action to OEA, such appeal shall be filed in accordance with OEA regulations.

2. Should the employee elect to grieve the action under the negotiated grievance procedure, the grievance must be filed at the appropriate step within twenty (20) work days from the effective date of the action. However, should the employee elect to utilize the negotiated grievance procedure, only the Union may take the appeal of a corrective or adverse action to arbitration.

Section C:

The parties agree to the concept of progressive discipline and in imposing disciplinary actions, the Department shall consider the principles of progressive discipline and shall consider the mitigating factors in accordance with Chapter 16 of the DPM.

-11-

## Section D:

If the Department has reason to counsel an employee, it shall be done in private so as not to unnecessarily embarrass the employee before other employees or the public.

## Section E:

Employees against whom disciplinary action(s) is proposed shall be informed in writing of the right to Union representation. If a supervisor believes that any meeting with an employee could result in disciplinary action, the employee may request to have a Union representative present at said meeting. Such requests shall not be denied.

## ARTICLE 10
## GRIEVANCE PROCEDURE

## Section A:

The purpose of this Article is to provide a mutually acceptable method for the prompt and equitable settlement of grievances.

## Section B:

A grievance is a complaint by a party or parties that:

1.  There has been a violation, misapplication or misinterpretation of this Agreement;

2.  That there has been a violation or misapplication of appropriate term(s) and condition(s) of the Compensation Agreement for Units 1 and 2; and,

3.  There has been a violation or misapplication of any law, rule or regulation which effects a term(s) or condition(s) of employment.

## Section C - Presentation of Grievance:

1.  This procedure is designed to enable the parties to settle grievances at the lowest possible administrative level.

2.  Catagories of Grievance:

a.  Personal: A grievance of a personal nature requires signature of the aggrieved employee at Step 2 even if the grievant is represented by the Union. In the case of an individual grievant proceeding without Union representation, the Union shall be given the opportunity pursuant to advance notification to be present and offer its view at any meeting held to adjust the grievance.

    b.  <u>Class</u>:  A grievance involving all the employees in the bargaining unit must be filed and signed by the Union President directly at Step 4 of the grievance procedure.  Grievances so filed will be processed only if the issue raised is common to all unit employees.  A class grievance must contain all information specified in Step 2 of the grievance procedure and the Department Head, or his designee shall respond in writing within twenty (20) working days of its receipt.

    c.  <u>Group</u>:  If a grievance involves a group of bargaining unit employees within the Department, the grievance may be filed by the group of employees at the appropriate step of the grievance procedure where resolution is possible.

    In the event the group is not represented by the Union, the Union must be given opportunity pursuant to advance notification to be present and offer its view at any meeting held to adjust the grievance.

## Section D - Procedure:

    a.  <u>Step 1</u>:  The aggrieved employee, with or without a Union representative, shall orally present and discuss the grievance with the employee's immediate or acting supervisor within twenty (20) work days of the occurence of the event giving rise to the grievance, or within twenty (20) work days of the employee's or Union's knowledge of such event.  The supervisor shall make a decision on the grievance and reply to the employee and his/her representative within ten (10) work days after oral presentation of the grievance.

    b.  <u>Step 2</u>:  If the grievance is not settled, the employee with or without his/her Union representative, shall submit a signed, written grievance to the appropriate management official within ten (10) work days following the supervisor's oral response.  The grievance at this and subsequent steps shall contain:

    1.  Description of the nature of the grievance and the specific provision(s) of the agreement alleged to be violated or the Department rule or regulations;

    2.  The date(s) on which the alleged violation occurred;

    3.  A statement of the remedy or adjustment sought;

    4.  The manner in which the alleged violation occurred;

    5.  Authorization by the employee if Union representation is desired; and,

6. The signature of the aggrieved employee and the Union reperesentative, if applicable, according to the category of the grievance.

Should the grievance not contain the required information, the grievant shall be so notified in writing and given five (5) work days from receipt of notification to resubmit the grievance. Failure to resubmit the grievance as required within the five (5) days shall void the grievance.

The appropriate Management official shall submit a signed, written response to the grievance, to the employee and his/her Union representative within ten (10) work days of its receipt.

c. <u>Step 3</u>: If the grievance remains unsettled, the grievance shall be submitted to the Administrator/Office Chief within ten (10) days following the appropriate Management Official's response at Step 2. The Administrator/Office Chief shall respond in a signed statement within ten (10) days of receipt of the grievance.

d. <u>Step 4</u>: If the grievance remains unsettled, the employee shall submit the grievance to the Director or his/her designee within ten (10) days following the response of the Administrator/ Office Chief in Step 3. The Director or his/her designee shall respond in a signed statement within fifteen (15) days of the receipt of the grievance. The Director or his/her designee and those he/she may further name will meet with the aggrieved person and his/her Union representative in an attempt to settle the grievance.

e. <u>Step 5</u>: If the grievance remains unsettled, the Union, within twenty (20) working days from the receipt of the Director's response shall advise the Director in a signed statement whether the Union intends to request arbitration of the matter on behalf of the employee(s). Only the Union can refer a grievance to arbitration.

<u>Section E - Arbitration</u>:

1. <u>Selection of an Arbitrator</u>: Within seven (7) work days from the Department's receipt of the arbitration request, the moving party shall solicit a panel of seven (7) impartial arbitrators from the Federal Mediation and Conciliation Service (FMCS) or the American Arbitration Association (AAA). Upon receipt of the FMCS or AAA panel, the parties shall select a mutually agreeable arbitrator. If the list does not contain a mutually agreeable arbitrator, then each party shall alternately strike names from the panel until one (1) remains.

If, before the selection process begins, either party maintains that the panel of arbitrators is unacceptable, a request for a new panel from FMCS or AAA shall be made. Subsequent requests can be made until the parties receive an acceptable panel.

-14-

If either party refuses to participates in the selection of an arbitrator, FMCS or AAA may be requested to appoint one.

2.    The Department shall provide the hearing site, which must be agreeable to both parties.  If any additional costs are involved, they shall be borne equally by the parties.

3.    The arbitrator shall hear and decide only one (1) grievance in each case unless the parties mutually agree to consolidate grievances.

4.    The arbitration hearing shall be informal and the rules of evidence shall not strictly apply.

5.    The hearing shall not be open to the public or persons not immediately involved.

6.    Witnesses shall be sequestered upon request of either party.

7.    Either party has the right to record the hearing or to have a verbatim stenographic record made at its own expense.  The expense may be shared upon mutual agreement.

8.    If the parties fail to agree to a joint submission of the issue for arbitration, each shall submit a separate submission and the arbitrator shall determine the issue or issues to be heard consistent with this Agreement.

9.    An individual employee may present a grievance at any time without the intervention of the Union, provided, however, that the Union is afforded an opportunity to be present and to offer its views at any meetings held to adjust the complaint.

10.    The arbitrator's award shall be in writing and shall set forth the arbitrator's findings, reasonings and conclusions within thirty (30) days after the conclusion of the hearing or within thirty (30) days after the arbitrator receives the briefs, if filed, whichever is later.

11.    The arbitrator shall not have the power to add to, subtract from, or modify the provisions of this Agreement through the award. The arbitrator shall confine his/her award to the issue(s) presented.

12.    The arbitrator shall have full authority to award a remedy.

13.    The arbitrator's award shall be binding upon both parties during the life of this Agreement.

14.    A statement of the arbitrator's fee and expenses shall accompany the award.  The fees and expenses of the abritrator shall be borne equally by the parties.  Either party may appeal the arbitrator's award in accordance with applicable law and regulations.

-15-

**Section F – General:**

1.  All time limits shall be strictly observed unless the parties mutually agree to extend said time limits.

2.  The presentation and discussion of grievances shall be conducted at a time and place which will afford a fair and reasonable opportunity for both parties and their witnesses to attend. Such witness(es) shall be present only for the time necessary for them to present evidence. When discussions and hearings required under this procedure are held during the work hours of the participants, all unit employees entitled to be present shall be excused with pay for that purpose. An employee whose tour of duty is other than the administrative work week shall have his/her tour adjusted to be placed in a duty status for any hearing at which they are called as witness.

3.  If either party considers a grievance to be either substantively or procedurally non-grievable or non-arbitrable, that party shall so notify the other party prior to the date of the hearing.

4.  Disputes of procedural grievability or arbitrability shall be referred to arbitration as a threshold issue.

5.  No complaint shall be entertained as a grievance unless it is raised within fifteen (15) working days of the occurrence of the event giving rise to the grievance, or within fifteen (15) days of the employee's knowledge of the occurrence of the event giving rise to the grievance.

6.  Any grievance not advanced to the next step by the employee or the Union representative within the time limit specified in that step shall be deemed abandoned. If the Department does not respond within the time limit specified in each step, the employee may invoke the next step, treating the lack of response as a denial of the grievance.


### ARTICLE 11
### LABOR-MANAGEMENT COOPERATION

**Section A:**

The Department and the Union shall establish a joint labor-management committee that will meet on a monthly basis. The agenda for the scheduled meeting shall be exchanged at least five (5) work days prior to the meeting. If unusual circumstances or timeliness of events do not allow particular discussion items to be included on the agenda submitted in advance of the meeting, the Department or the Union may nevertheless present those discussion items at the scheduled meeting, and the issues thus presented may either be discussed by both parties or tabled for later discussion by either

party.  Labor-Management meetings shall be held with the Director of the Department or his/her designee.

## Section B:

The Labor-Management Committee shall consist of five (5) members representing the Union and five (5) members representing Management. It shall be the function of this Labor-Management Committee to discuss different points of view and exchange views on working conditions, terms of employment, matters of common interest or other matters which either party believes will contribute to improvement of the relations between them within the framework of this Agreement. It is understood that appeals, grievances or problems of individual employees shall not be subject of discussion at these meetings, nor shall the meeting be for any other purpose which will modify, add to or detract from the provisions of this Agreement.  Other meetings of the committee may be scheduled as the need arises upon the request of either party at times mutually agreed upon.

## Section C:

The standing members of the Labor-Management Committee appointed by the Union shall be granted official time to attend the above conferences when the conferences occur during the regular working hours of the employees.  Except in the case of emergency, the Union shall notify the Department at least three (3) days in advance of any scheduled meeting if an alternate(s) will attend in the absence of the appointed member(s).

## Section D:

Each party may have other officials who are not employees of the Department attend the meeting.  However, such representatives shall not exceed two (2), unless otherwise mutually agreed upon.

## Section E:

A brief summary of the matters discussed and any understandings reached at all meetings as well as the position taken by the parties in a disagreement will be prepared and initialed by both parties.

### ARTICLE 12
### EMPLOYEE LISTS AND INFORMATION

## Section A:

The Department will provide the Union with a list of bargaining unit employees covered by this Agreement quarterly.  The employee list shall include:

    1.  Name

    2.  Job Title

3. Grade

4. Date of employment with the Department

5. Names of employees transferred or separated from the Department

6. Not to exceed dates for term employees

## Section B:

The Department telephone directory will be provided to the Union President or Chief Shop Steward when published and updated.

## Section C:

The Union shall also be provided the following information:

1. EEO Reports, as they are printed; and,

2. Merit staffing vacancy announcements as they are posted.

## Section D:

Management agrees to provide the Union with a copy of updates and changes to the Comprehensive Merit Personnel Act (CMPA), the District Personnel Manual (DPM), and all written Department administrative issues which affect working conditions of bargaining unit employees as they are issued.

## Section E:

The Department will notify the Union of reorganization/realignment plans within the Department prior to implementation.

## Section F:

Within thirty (30) days after the effective date of this Agreement, the Department shall provide the Union with an approved, standardized copy of the position description for each job category in the bargaining unit.

### ARTILCE 13
### FACILITIES AND SERVICES

## Section A:

The Department agrees to the use of facilities for meeting purposes for the Union subject to the following conditions:

1. Meetings will be held before the start of business, during lunch periods and after the close of business.

2.  The use of facilities will not involve any additional expense to the District Government other than the normal expenses which are incurred for items such as heating and lighting.

3.  The Union will request in writing the use of D.C. Government facilities for the purpose of Union meetings no later than two (2) working days in advance of requested meeting date. The Department will reply within two (2) days of initial request.

4.  The Union recognizes its responsibility in using District facilities to observe all applicable security and public safety regulations and to conduct its meetings in a orderly manner so as not to interfere with normal work operations, and assumes responsibility for all damages to District property occasioned by its use.  The Union agrees to leave the facility in a clean and neat condition.


# ARTICLE 14
## BULLETIN BOARDS

Section A:

The Employer agrees to provide space on designated bulletin boards in appropriate work areas.

Section B:

Union representatives will be responsible for the posting of materials.  Posted materials will not contain statements which reflect on or attack the integrity or motives of individuals, the Department of Consumer and Regulatory Affairs, or other agencies of the District Government.  Posted material will clearly identify the Union official responsible for its content.

Section C:

1.  The Employer agrees to notify the President of the Union or his/her designee upon determination that posted materials violate Section B above.

2.  The Union agrees to remove any such material in violation of Section B.

Section D:

The Employer reserves the right to remove materials from Bulletin Boards deemed in violation of Section B above, if the Union does not comply with the Employer's request.

# ARTICLE 15
## SAFETY AND HEALTH

**Section A:**

The Employer shall provide safe and healthy working conditions in accordance with Title XX of the CMPA and all applicable laws and regulations. In the event an employee believes a working condition to be unsafe, he/she shall report the condition to his/her immediate supervisor who shall investigate the matter immediately and take appropriate action.

**Section B:**

The Department shall make available training, at no expense to the employee, in cardiopulmonary resuscitation (CPR) and first aid. The Department shall provide first aid kits for each administration. The names, work telephone numbers and work locations of all employees trained in CPR techniques and first aid shall be provided to the Union and included in the Department's telephone book. In addition, the Department shall provide one (1) first aid kit for each outside property. The Department and the employees will cooperate in ensuring that all first aid kits are maintained. The Department agrees to contact emergency medical services when appropriate.

**Section C:**

The Department agrees to maintain the work place and its equipment in good condition. Deficiencies in this area shall be discussed and corrected. Shower rooms and related facilities shall be repaired and maintained in good condition.

The Union and the Department shall make every effort to prevent accidents of any kind. As promptly as the situation allows, accidents are to be reported to the supervisor by the injured employee and/or his/her co-workers. The supervisor must report injuries to the Safety Officer.

**Section D:**

In the event of excessive temperature or equipment failure, non-essential employees may be reassigned or released in accordance with the District Personnel Manual, Chapter 12.

**Section E:**

Employees shall promptly report to Management all deficiencies in maintenance of vehicles for corrective action. The Department agrees to present vehicles of D.C. Safety Inspection at the prescribed time(s).

Section F:

When the Department is aware of a workplace inspection or investigation that is conducted by a Department safety representative or by an outside agency, such as OSHA or NIOSH, in response to a complaint by the Union, the Union may be given the opportunity to participate.  During the course of any such inspection or investigation any employee may bring to the attention of the inspector any unsafe or unhealthy working condition.

Section G:

Employees shall be protected against penalty or reprisal for reporting any unsafe or unhealthy working condition or practice, assisting in the investigation of such conditions, or for participating in any occupational safety and health program and activities.

Section H:

The Department shall prepare and post instructions to evacuate the building at 614 H Street, N.W. or any other worksite of DCRA in case of emergency.

Section I:

The Department agrees to take necessary steps to ensure the safety of employees who are required to work alone.  The Department agrees to immediately implement all present security/safety measures affecting these employees and to ensure that these procedures are known and carried out by all employees.  Where necessary, the Department agrees to revise and/or implement security/safety measures for the protection of employees.  A continuous review of security/safety measures shall be the joint responsibility of Management and the Union.

Section J:

The Department shall acquire, maintain and require employees to use safety/protective equipment to protect them from hazardous conditions encountered during the performance of official duties.

The Union may recommend new protective clothing and equipment and modifications to existing equipment for consideration by the Department.  The Union shall be consulted prior to purchase of major new equipment and/or devices impacting upon working conditions and/or personnel.

The Union agrees to promote and encourage employees to follow safety procedures.

Section K:

The Department agrees to provide to potentially exposed employees and the Union, all information available to the Department con-

-21-

cerning hazardous substances. A listing of all chemicals used by the Agency along with their generic names shall be provided annually to the Union. Such listing shall indicate chemical use by work area. Within budgetary limitation, emergency shower facilities shall be provided at locations where employees are required to be exposed to hazardous substances.

## Section L - Safety Committee:

A safety committee of three (3) representatives from the Union and three (3) representatives from Management, one of whom shall be the Department's Safety Officer, will be established in the Department. One (1) Union and one (1) Management representative shall serve as co-chairpersons. The Committee shall:

1. Meet once a month, or at the call of either co-chairperson, to review special conditions which may develop.

2. Conduct safety surveys and inspections and make joint recommendations to the appropriate administrator, through the Safety Officer.

3. Seek resources and coordinate the development and conduct of appropriate health and safety training programs. All training must be coordinated with the Office of Administration and Management.

4. Consult with, and render assistance to the Department Safety Officer upon request.

## Section M:

The Department is responsible for providing injured employees with information regarding proper accident reporting forms.

## Section N:

The safety officer shall provide the Union a copy of the monthly report of on-the-job injuries, submitted to the Department of Employment Services, Office of Occupational Safety and Health. The Safety Officer shall promptly notify the Union in the event of an on-the-job death.

## Section O:

Within space limitations, the Department agrees to provide an employee lunchroom at the main offices of DCRA which may be used by employees during their lunch period. If this is not possible, and at other Department facilities, Management shall attempt to identify space in which employees may eat lunch.

Section P:

The Department and the Union mutually recognize the need for pro-
tection of employees from assault and intimidation at the workplace
and will work cooperatively to obtain appropriate protective measures.

Section Q:

An employee may be accompanied by a Union representative at any
meeting regarding a fitness-for-duty examination.

### ARTICLE 16
### ENVIRONMENTAL DIFFERENTIAL

The Union may submit to the Department a list of positions which
it has determined to be eligible for an environmental differential.
The Department shall submit this list, along with the necessary sup-
porting information, to the D.C. Office of Personnel for approval or
disapproval.  Personnel's decision will be made available to the
Union.

### ARTICLE 17
### REASSIGNMENTS

Section A:

If any employee is to be reassigned, he/she will be given advance
notice of the reassignment including an explanation related thereto.
If reassignment involves a relocation to a different facility or
building, five (5) working days notice will be given.  Any notifica-
tion of reassignment will be accompanied by a request for personnel
action.

Section B:

In no instance will reassignment or transfer from the bargaining
unit be used as a means of punishment or retaliation.

Section C:

In the event a reassignment of a Union Steward, Chief Steward or
President is planned, the Union President will be given fifteen (15)
working days written notice regarding such anticipated reassignment.

Section D:

Employees requesting reassignment or transfer within the same
organizational unit or to other organizational units shall submit a
request in writing inclusive of the supportive reasons to their

immediate supervisor.  If denied by the immediate supervisor, the request may be appealed through the appropriate levels of supervision up to the Director.  Response to the request shall be issued at each level within a reasonable period of time.

## ARTICLE 18
### HOURS OF WORK/OVERTIME ADMINISTRATION

Section A:

To the extent possible employees shall be notified five (5) work days in advance of any permanent change in their scheduled tour of duty.

Section B:

The use of compensatory time shall be governed by the provisions of the Compensation Units 1 and 2 Agreement.

Section C:

Overtime assignments shall be distributed equitably among volunteers from the work unit in which the overtime work is to be performed.  If there are not enough volunteers, Management shall distribute the remaining overtime assignments equitably among qualified employees.  An employee assigned to work overtime may be excused at the supervisor's discretion if he/she has a valid reason.  Each suc situation shall be considered on its merits.

Section D:

The Department shall make every effort to notify employees in advance when overtime work will be required.  When a supervisor requests or directs an employee to perform overtime work the supervisor shall make every reasonable effort to give the employee a written statement that the overtime work has been authorized by the Director.

Section E:

The Department shall properly record on time and attendance forms overtime hours worked, and shall process the forms so that the employee(s) may be paid no later than the first pay period following the one in which the work was performed.

## ARTICLE 19
### USE OF PRIVATE VEHICLES

Section A:

Employees using their personal vehicles in the performance of

their duties shall be reimbursed at the rate established between the Employer and the Union in accordance with Compensation Agreement for Units 1 and 2.

## Section B:

Employees required to travel without the use of private vehicles shall receive adequate public transportation allowance, consistent with District and Department rules and regulations.

## Section C:

An employee whose vehicle is rendered inoperable during the course of official duties will be granted reasonable time, upon notification to the supervisor as is practicable, to make a minor repair or get the vehicle to a garage and return to the Office.

## Section D:

It is understood by the parties that employees using private vehicles in the performance of their official duties may receive parking violations. The Employer will make available to employees information concerning the proper procedures for, and the Department's role in, the adjudication of parking violations received during the performance of their official duties.

## ARTICLE 20
## CONSULTATION AND COUNSELING

## Section A:

The parties recognize that alcoholism, drug abuse and emotional disorders are illnesses that can interfere with job performance. As such the Department shall make substantial efforts in accordance with the District EAP Program to assist bargaining unit employees, suffering from these illnesses, to recover.

## Section B:

When a bargaining unit employee's excessive absenteeism or performance deficiencies are suspected to be due to alcoholism, drug abuse or an emotional disorder, the Department shall refer the employee, in writing, to a counseling or treatment program. If the employee accepts the Department's referral and participates in the counseling or treatment program, the Department must give the employee a reasonable period of time after completion of the treatment program to recover and to improve his/her performance and/or attendance.

## Section C:

If the employee refuses to seek counseling and/or there is not an adequate improvement in work performance and/or attendance, as determined by the supervisor, disciplinary action or appropriate administrative action shall be initiated as warranted. Employees accepting direct referral will be provided reasonable time prior to adverse action being taken to improve work performance and/or attendance record provided however, that employees adhere to the requirements of the employee consultation and counseling service and the employee's work performance satisfactorily improves.

## Section D:

The Employer will post a notice on bulletin boards describing the consultation and counseling service.

## Section E:

The Department shall grant excused leave in accordance with the DPM (i.e. Annual Leave, Sick Leave or Leave Without Pay) to an employee suffering from alcoholism, drug abuse or an emotional disorder for the time he/she participates in a counseling or treatment program. Such leave must be requested in advance and scheduled so as not to unduly interfere with the work of the Department.

## Section F:

The Department shall give written referrals to the D.C. Employee Consultation and Counseling Service to an employee who is experiencing other personal problems which are causing an adverse affect on his/her job performance and/or attendance.

If the employee accepts the Department's referral and participates in the Service, the Department shall give the employee a reasonable opportunity to improve his/her performance and/or attendance. If the employee's performance and/or attendance does not improve, the Department may initiate disciplinary action against the employee for cause in accordance with Article 9 of this Agreement and applicable D.C. laws and regulations.

## Section G:

With respect to any programs or services attended by employees pursuant to this Article, the release of information and records to any supervisor or to the Department shall be done in accordance with District Personnel regulations.

ARTICLE 21
TRAINING, CAREER DEVELOPMENT, AND UPWARD MOBILITY

## Section A:

Consistent with employee development and affirmative action

-26-

program guides, it is the Department's intention to provide train-
ing and career development opportunities for bargaining unit
employees for the purpose of developing and maintaining their skills
so that they may perform at their highest possible levels in their
positions and advance in accordance with individual potential and
abilities.

Section B:

1.   The Department will offer to assist employees in implement-
ing individual career development plans by providing easy access to
information on training opportunities, publicizing current training
programs.  The Department will inform employees of the time or fin-
ancial assistance the Employer may be able to provide.

2.   The Department shall post a list of training programs offered
by or through the Department.

3.   Employees shall be given reasonable opportunities to discuss
training needs and/or opportunities with their supervisors and/or
other Department or Personnel Officials.

Section C:

A record of satisfactorily completed training courses may be
filed by each employee in their Official Personnel File.

Section D:

The parties recognize the importance of career development, train-
ing and upward mobility.  The Labor-Management Committee established
in this Agreement shall on a periodic basis perform the following
functions:

a.   review existing policies and practices, with respect
to training and career development and recommend changes in
existing programs;

b.   recommend the adoption of new programs, policies and
practices;

c.   review and offer comments on programs proposed by the
Department; and

The Labor-Management Committee may, if it deems necessary,
establish a subcommittee to deal with these issues.

Recommendations submitted to the Director by the Committee shall
be given careful consideration and the Committee shall be informed
within a reasonable period of time of the status of its recommenda-
tions.

-27-

## ARTICLE 22
## PERFORMANCE EVALUATION

The parties agree that a performance rating plan has not been established as provided in Section 1401 of the Comprehensive Merit Personnel Act. The present system used to evaluate performance will continue to be used until such time as the performance rating plan prescribed in Title 14 of the CMPA is established after negotiation with the Union.

## ARTICLE 23
## PERSONNEL FILES

Section A:

The Official Personnel File of all employees in the bargaining unit covered by this Agreement shall be maintained by the Office of Personnel.

Section B:

An employee shall have the right to review his/her Official Personnel File and upon request, inspect and make copies of any document appearing in his/her Official Personel File.

Section C:

Upon presentation of written authorization signed by an employee, the Union representative may examine the employee's Official Personnel File and request that copies be made of materials contained therein, in accordance with D.C. Personnel rules and regulations.

Section D:

The Department shall keep all arrests from the Metropolitan Police Department, fingerprint records and other confidential reports in a confidential file apart from the Official Personnel folder. No person shall have access to the confidential file without authorization from the Director of Personnel.

Section E:

Each employee shall have the right to present information immediately germane to any information contained in his/her Official Personnel File and have, in accordance with D.C. Personnel rules and regulations, irrelevant or untimely information removed from the record.

Section F:

The access card signed by all those who have requested and have been given access to the employee's file, as required by personnel

regulations and procedures, shall be made available for review by the employee.

## ARTICLE 24
## MERIT STAFFING

Section A:

1.  The Department shall ensure that merit promotion principles are applied in a consistent and equitable manner to all applicants in bargaining unit positions.

2.  All selections shall be based on objective, job-related selection criteria and shall be made without regard to race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, matriculation, physical handicap, political affiliation or Union activity.

Section B:

All positions within the bargaining unit shall be filled in accordance with the District's Merit Staffing Plan.

Section C:

The Department agrees that vacancy announcements shall be posted in accordance with Personnel regulations for a period of at least ten (10) work days prior to the expiration date throughtout the Department. Such announcements shall provide a synopsis of duties to be performed, qualifications required, any special knowledge, skills or ability that will be given consideration. The Union president or designee shall be furnished a copy of all vacancy announcements, cancellations, corrections or amendments.

Section D:

A review of an applicant's minimum qualifications shall be made by a representative of the D.C. Office of Personnel (DCOP). An applicant in the bargaining unit who is rated ineligible shall be notified by DCOP in writing. Redress, if any, shall be in accordance with the District's Merit Staffing Plan.

Section E:

If the selecting official interviews one (1) candidate, he/she shall interview all candidates in accordance with the District Personnel Manual. Interviews must be job-related, reasonably consistent, and fair to all candidates, consistent with D.C. laws and regulations.

## ARTICLE 25
## DETAILS AND TEMPORARY PROMOTIONS

### Section A. – Details:

1. A detail is the temporary official assignment of an employee to a different position for a specific time period with the employee returning to his/her regular duties at the end of the detail.  The employee on detail shall at all times be considered the incumbent of his/her regular position.

2. Details shall be made in accordance with personnel regulations and will be used for meeting temporary needs of the Employer's work program and for on-the-job training.  Details may be appropriately used to meet emergencies occasioned by abnormal work loads, changes in mission or organization, unanticipated absence, or to complete special projects.

3. When an employee is detailed to a higher graded position for more than ninety (90) days, he/she receive the higher rate of pay as acting pay, effective the pay period which begins on or after the ninety-first (91st) day.

4. For details in excess of thirty (30) days, the detail shall be documented, a copy given to the employee and a copy made a part of the employee's official personnel file.

5. For details in excess of ninety (90) days, the employee's performance in the position to which he/she has been detailed shall be evaluated (including a rating) by the detail supervisor; the detail evaluation shall be included in the employee's official personnel file.

### Section B. – Temporary Promotions:

1. A career employee may be given a temporary promotion to meet a temporary need.  At the end of the specified period of time, the employee shall be returned to the same or comparable position from which the employee was temporarily promoted.

2. A temporary promotion of 120 days or less may be made without regard to merit promotion requirements.

3. A temporary promotion exceeding 120 days shall be made in accordance with merit promotion procedures.

# ARTICLE 26
## POSITION CLASSIFICATION

**Section A:**

Each position covered in the bargaining unit that is in existence or is established or changed must be accurately described in writing, and classified to the proper occupational title, series, schedule and grade.

**Section B:**

Employees shall be furnished a current, accurate, approved copy of the description of the position to which assigned at the time of the assignment, or upon request. Employees detailed or reassigned to established positions shall be given position descriptions at the time of assignment. Employees detailed to a unestablished position shall be furnished with statements of duties at the time of assignment to the detail.

**Section C:**

The position description shall be kept current and accurate. Changes to a position shall be incorporated in the position description to assure that the position is correctly classified/graded to the proper title, series, schedule and grade.

**Section D:**

Where language such as "other duties as assigned" or "performs other duties as assigned" appears in an employee's official position description, the clause shall mean those duties which must be performed and must be directly related to those duties listed in the employee's position description.

**Section E:**

The parties agree that the principle of equal pay for substantially equal work shall be applied to all position classifications and personnel actions in accordance with the D.C. Code.

**Section F:**

An employee, upon request, shall have access to organizational and functional charts, and other pertinent information directly related to the classification of his/her position.

**Section G:**

Violations of classification issues/equal pay for equal work shall be appealed through the procedures outlined in the District Personnel Manual.

## ARTICLE 27
### REDUCTION-IN-FORCE

**Section A:**

The Department agrees to provide the Union with at least thirty (30) days notice prior to formal notification to employees of a proposed reduction-in-force due to reorganization or technological changes which may result in a reduction-in-force of employees in the bargaining unit. The Department further agrees to investigate alternatives for minimizing the effect on employees through reassignment, retraining, or job restructuring, restricting recruitment and other appropriate means to avoid separation of employees in full compliance with applicable laws and regulations.

Priority reemployment rights will be afforded to employees separated through reduction-in-force prior to filling vacant positions of the same or similar job classifications (except when the agency fills positions through in-service placement action) in accordance with District's reduction-in-force procedures.

**Section B:**

The Department shall implement all reduction-in-force in accordance with Title 1, Chapter 6, Subchapter XXV of the D.C. Code (1987 ed.) and Chapter 24 of the D.C. Personnel Regulations published in the D.C. Register.

**Section C:**

The Department shall implement the provisions of the Compensation Agreement for Compensation Units 1 and 2 concerning layoffs and furloughs.

## ARTICLE 28
### CONTRACTING OUT

It is recognized that contracting out of work that is normally performed by employees covered by this Agreement is a mutual concern to the Department and the Union. The Department agrees to consult with the Union regarding the impact of such contracting out on employees covered by this Agreement. The Department agrees to abide by appropriate District rules and regulations regarding contracting out.

When there will be adverse impact to bargaining unit employees, the Employer shall consult with the Union ninety (90) days prior to final action, except in emergencies. The Union shall have full opportunity to make its recommendations known to the Employer who will duly consider the Union's positions and give reasons in writing to the Union for any contracting out action.

-32-

## ARTICLE 29
## LEAVE ADMINISTRATION

### Section A. – Maternity:

Absence for maternity reasons is a period of approved absence for incapacitation related to pregnancy and confinement.

The granting of leave for this purpose is a combination of leave without pay, accumulated sick leave and annual leave. A pregnant employee is entitled to use her accumulated sick leave for the period she is unable to work for medical reasons certified by a physician.

The employee is required to make known to her supervisor in advance her intent to request leave for maternity reasons, including the type of leave, approximate dates, and anticipated duration to allow the Department to arrange for any staffing adjustments which might be necessary.

### Section B. – Paternity Leave:

A male employee may be granted accumulated annual leave, leave without pay or a combination of both, for purposes of assisting or caring for his minor children or the mother of his newborn child while she is incapacitated for maternity reasons.

### Section C. – Leave for Adoptive Parents:

Request for leave by an employee, male or female, adopting a child may be granted his/her accumulated annual leave, leave without pay or a combination of both.

### Section D:

Leave for maternity or paternity purposes may be granted for a period of up to three (3) months and may be extended to a maximum of six (6) months. The total amount of leave that can be granted for parenting reasons, consistent with this paragraph cannot exceed one (1) year.

### Section E:

An employee will remain in the position or be placed in a position of like seniority, status and pay, upon return to work unless termination is otherwise required by expiration of appointment, by reduction-in-force, for cause, or for similar reasons unrelated to the maternity absence.

-33-

**Section F:**

Approval of leave shall be in accordance with District policies and regulations.

**Section G. – Union Business Leave:**

Employees elected to any Union office or selected to perform work which takes them from their employer shall submit a written request for a Leave of Absence Without Pay. A request for a leave of absence shall be submitted two (2) weeks in advance. Such requests shall contain justification and dates of commencement and termination of such leave. The Employer agrees that the initial request for a leave of absence shall not exceed one (1) year.

The Employer shall have the right to grant or deny such requests. If granted, the initial leave of absence shall not exceed one (1) year and the employee benefit costs during that period will not be borne by the District government.

**Section H. – Education and Training Leave:**

An employee may be granted a leave of absence without pay for up to one (1) year for educational or professional purposes. Such request must be submitted at least six (6) weeks in advance. The continuation of benefits shall be consistent with District's regulations and policies.

**Section I. – Military and Reserve Component:**

The parties agree that this section is placed in the Agreement for information purposes only and does not constitute as having negotiated this term. If there is a conflict between District policy and regulations regarding military and reserve components as stated herein, District policy and regulations shall prevail.

Members of the reserve components of the Armed Forces are entitled to leave with pay for a maximum of fifteen (15) calendar days in a calendar year upon submission of proper orders.

Members of the D.C. National Guard are entitled to unlimited military leave without loss of pay for all days of service for any parade or encampment which the D.C. National Guard, or any portion thereof, may be ordered to perform by the Commanding General, but does not include time spent on weekly drills and meetings of the D.C. National Guard. Notwithstanding the above, additional military leave with pay will be granted to members of the reserve component of the armed forces of the National Guard for the purpose of providing military aid to enforce law for a period not to exceed twenty-two (22) work days in a calendar year.

## Section J. - Call-In-Time:

Request for leave for illness or emergencies are required at least one (1) hour prior to or within the first hour of the scheduled tour of duty. All requests shall be called in to the employee's immediate supervisor. If the immediate supervisor is not on duty, or cannot be reached, the employee should call the next designated supervisor or manager's office. The supervisor receiving the call shall convey the request to the proper supervisor.

## Section K. - Leave for Death in the Family:

In the event of a death in an employee's immediate family (grandparents, parents, spouse, children, brother or sister, mother or father-in-law, brother or sister-in-law, son or daughter-in-law) every effort will be made to grant the employee's request for annual leave or leave without pay.

## ARTICLE 30
## GENERAL PROVISIONS

## Section A. - Distribution of Health Benefit Plan Brochures:

The Department through the Servicing Personnel Office #2 agrees to distribute the AFGE Health Benefit Plan Brochure to all eligible unit employees upon their entrance on duty and during open health enrollment periods, provided such brochures are made available to the Department by the Union.

## Section B. - Receipt of Biweekly Pay Checks:

All employees shall receive biweekly paychecks as soon as they are sorted and distributed to the various work locations. The Department shall distribute checks once they are processed.

## ARTICLE 31
## NO STRIKE OR LOCKOUT

## Section A:

Under the provisions of Section 1705 of D.C. Law 2-139, it is unlawful to participate in, authorize or ratify a strike.

## Section B:

The term strike as used herein means a concerted refusal to perform duties or any unauthorized concerted work stoppage or slowdown.

<u>Section C:</u>

No lockout of employees shall be instituted by the Employer during the term of this Agreement, except that the Department in a strike situation retains the right to close down any facilities and provide for the safety of employees, equipment or the public.

ARTICLE 32
<u>SAVING CLAUSE</u>

In the event any Article, Section or portion of the Agreement should be held invalid and unenforceable by any Court or higher authority of competent jurisdiction, such decision shall apply only to the specified Article, Section or portion thereof specified in the decision; and upon issuance of such a decision, either party may demand immediate negotiation for a substitute for the invalidated Article, Section, or portion thereof.

ARTICLE 33
<u>DURATION AND FINALITY OF AGREEMENT</u>

<u>Section A:</u>

This Agreement shall remain in full force and effect until September 30, 1990.  The Agreement will become effective upon the Mayor's approval subject to the provisions of D.C. Code §1-618.15 (1981 ed.) and ratification by the Union.  If disapproved because certain provisions are asserted to be contrary to applicable law or if not ratified by the Union the parties shall meet within thirty (30) days to negotiate a legally constituted replacement provision or the offensive provision shall be deleted.

<u>Section B:</u>

The parties acknowledge that this contract represents the complete Agreement arrived at as a result of negotiations during which both had the unlimited right and opportunity to make demands and proposals with respect to any negotiable subject or matter.  The Employer and the Union agree to waive the right to negotiate with respect to any subject or matter referred to or covered or not specifically referred to or covered in this Agreement for the duration of this contract, unless by mutual consent or as provided in this Agreement.

<u>Section C:</u>

In the event that a state of civil emergency is declared by the Mayor (civil disorders, nature disasters, etc.) the provisions of this Agreement may be suspended by the Mayor during the time of emergency.

Section D:

This Agreement shall remain in effect until September 30, 1990 in accordance with Section A of this Article, and will be automatically renewed for three (3) year periods thereafter unless either party gives to the the other party written notice of intention to terminate or modify the Agreement no later than May 4, 1990.

Section E:

All terms and conditions of employment not covered by the terms of this Agreement shall continue to be subject to the Employer's direction and control provided, however, that if the Employer desires to institute a major change that has a significant impact upon the term(s) or condition(s) of employment of the entire bargaining unit or any group of bargaining unit employees the Employer shall provide the Union with advance notice and upon written request of the Union the parties shall promptly negotiate the impact of such change.

IN WITNESS THEREOF, the parties hereto have entered into this Agreement on this __24th__ day of __February__, 1989.

FOR THE DISTRICT OF
COLUMBIA GOVERNMENT

FOR THE AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, LOCAL 2725

Russell U. Carpenter, Chief
Negotiator, D.C. Office of
Labor Relations and Collective
Bargaining

Louise Smothers, Chief Negotiator,
President, American Federation of
Employees, Local 2725

Donald G. Murray, Director
Department of Consumer and
Regulatory Affairs

John E. Payne, Chief Steward HERA
AFGE Local 2725

Valerie A. Lemmie, Deputy
Director, Department of
Consumer and Regulatory
Affairs

Kofi Boakye , Steward BLRA,
AFGE Local 2725

-37-

_____
Michael Fonseca, Esq., Program
Manager, Department of Consumer
and Regulatory Affairs

_____
James Butler, Steward, Sergeant
At Arms, AFGE Local 2725

_____
Dorothy M. Martin, Steward, AFGE
Local 2725

_____
Ironia Broyles, Member of Contract
Committee, AFGE Local 2725

_____
Terrie Bjorklund, Attorney to AFGE
Local 2725

-38-

## APPROVAL

    This Collective Bargaining Agreement between the District of Columbia Government and the American Federation of Government Employees, Local 2725 dated <u>February 24, 1989</u> has been reviewed in accordance with Section 1715(a) of the District of Columbia Comprehensive Merit Personnel Act of 1978 (D.C. Code, Section 1-618.15(a), (1987 Repl.)), and is hereby approved this <u>10th</u> day of <u>April</u>, 1989.

Marion Barry, Jr.
Mayor

## APPROVAL

    This Collective Bargaining Agreement between the District of Columbia Government and the American Federation of Government Employees, Local 2725 dated <u>February 24, 1989</u> has been reviewed in accordance with Section 1715(a) of the District of Columbia Comprehensive Merit Personnel Act of 1978 (D.C. Code, Section 1-618.15(a), (1987 Repl.)), and is hereby approved this <u>10th</u> day of <u>April</u>, 1989.

Marion Barry, Jr.
Mayor

-39-

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AUDRICK PAYNE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case Number: 2008-cv- 00163 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

### ORDER

Upon consideration of Defendants Lisa Morgan, Linda Argo and Patrick Canavan's Partial Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative for Summary Judgment, any opposition filed by plaintiff, and the entire record herein, it is by this _____ day of _____ 2008,

**ORDERED** that Defendants' Motion is **GRANTED**; and it is

**FURTHER ORDERED** that Summary Judgment is granted in favor of Defendants Lisa Morgan, Linda Argo and Patrick Canavan on Counts VI, VII, VIII and IX of the Amended Complaint.

**SO ORDERED.**

_____
The Honorable Colleen Kollar-Kotelly
Judge, U.S. District Court for the District of Columbia

Copies to:

Kerslyn D. Featherstone, Esq.
441 4th Street, NW, Suite 600-S
Washington, DC  20001

David A. Branch, Esq.
1825 Connecticut Avenue, NW
Suite 690
Washington, DC  20009

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AUDRICK PAYNE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case Number: 2008-cv- 00163 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| ————————————————— | : | |

**ORDER**

Upon consideration of Defendants Lisa Morgan, Linda Argo and Patrick Canavan's Partial

Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative for Summary Judgment,

any opposition filed by plaintiff, and the entire record herein, it is by this _____ day of

_____ 2008,

     **ORDERED** that Defendants' Motion is **GRANTED**; and it is

     **FURTHER ORDERED** that Counts VI, VII, VIII and IX of the Amended Complaint are

**DISMISSED** with prejudice.

**SO ORDERED.**

 

_____
The Honorable **Colleen Kollar-Kotelly**
Judge, U.S. District Court for the District of
Columbia

Copies to:
Kerslyn D. Featherstone, Esq.
441 4th Street, NW, Suite 600-S
Washington, DC  20001

David A. Branch, Esq.
1825 Connecticut Avenue, NW
Suite 690
Washington, DC  20009