UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDRICK PAYNE,

     Plaintiff,

     v.

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

Civil Action No. 08-163 (CKK)

MEMORANDUM OPINION
(December 30, 2008)

Plaintiff Audrick Payne, a former elevator inspector with the District of Columbia

Department of Consumer and Regulatory Affairs ("DCRA"), brings this suit against the District

of Columbia, three former directors of DCRA (Linda Argo, Lisa Morgan, and Patrick Canavan),

and the supervisor of DCRA (Nicholas Majett) (collectively, "Defendants").  Payne's nine-count

Amended Complaint alleges, *inter alia*, that Defendants systematically violated Payne's

constitutional, statutory, and common law rights by retaliating against him in response to the

exercise of his First Amendment rights and for his whistle-blowing activities.

Defendants have responded to Payne's Amended Complaint with three Partial Motions to

Dismiss, or in the alternative, Motions for Summary Judgment.[1]  Defendants' Motions seek

dismissal of four claims in the Amended Complaint based on Payne's failure to exhaust his

---

[1] Because Payne effected service of process on a rolling basis, Defendants, who are
represented by the same counsel, filed three separate but largely identical motions.  For ease of
reference, the Court shall cite only to the District of Columbia's Motion ("Def.'s Mot."), Payne's
Opposition thereto ("Pl.'s Opp'n"), and the District of Columbia's Reply ("Def.'s Reply"), unless
otherwise noted.

administrative remedies: (1) Breach of Contract (Count VI), (2) Civil Conspiracy to Interfere

with Payne's Employment Relations (Count VII), (3) Defamation and Tortious Interference with

Prospective Advantage (Count VIII), and (4) Wrongful Discharge (Count IX).[2]  Payne opposed

dismissal of these claims by arguing that he was not required to exhaust his administrative

remedies, and Defendants filed Replies.  After reviewing all of the parties' submissions, relevant

case law and applicable statutory authority, the Court shall GRANT Defendants' Motions to

Dismiss, Docket Nos. [11, 21, 29], and deny as moot Defendants' alternative Motions for

Summary Judgment, Docket Nos. [12, 23, 31], for the reasons that follow.[3]

## I. BACKGROUND

### A.    Factual Background

Payne was employed as a DS-12 certified elevator inspector with DCRA beginning in

2001.[4]  Am. Compl. ¶ 5.  While in that position, Payne also owned his own outside business that

performed elevator consulting work.  Id. ¶ 6.  Payne alleges that he disclosed his outside business

to Defendant Canavan in 2005 but neither Canavan nor DCRA objected to his business.  Id.

Between 2001 and 2005, Payne observed various practices and policies associated with

_____

[2] As to Payne's conspiracy claim (Count VII), Defendants argue in the alternative that Payne failed to plead a conspiracy with sufficient particularity and that the District of Columbia's officials cannot, as a legal matter, conspire with themselves as alleged in the Amended Complaint.  The Court need not (and does not) reach these alternative arguments because Payne's failure to exhaust his administrative remedies is dispositive of Defendants' Motions.

[3] Defendants attached various exhibits to their Motions that contain material outside the scope of the Amended Complaint.  The Court has not relied on these exhibits to resolve Defendants' Motions to Dismiss.

[4] In discussing these facts, the Court accepts as true all well-pleaded factual allegations in Plaintiffs' Complaint, as it must on a Motion to Dismiss.  *Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).

improper elevator inspections and enforcement.  *Id.*  ¶ 10.  Among other examples, building

owners were establishing companies to perform inspections of their elevator systems that they

controlled.  *Id.* ¶ 9.  Payne raised concerns about this practice but was told it was permissible.  *Id.*

These companies were also required to have their employees obtain at least 180 days of training

from the District of Columbia.  *Id.* ¶ 8.  Defendants Canavan, Morgan, and Argo refused to

enforce this law.  *Id.*  Payne also observed that Defendants Canavan, Majett, Morgan, and Argo

would frequently sign off on work performed and completed without appropriate permits and that

they accepted inspections performed by contractors whose reports were several months old.  *Id.* ¶

11.  These and other practices and policies allegedly resulted in numerous elevator accidents in

the District of Columbia.  *Id.* ¶ 10.

These elevator-related accidents generated interest from the public and the District of

Columbia City Council.  *Id.* ¶ 7.  Payne was requested to meet with various members of the City

Council and to provide testimony concerning elevator inspections and safety at DCRA.  *Id.* ¶ 12.

For example, Payne met with City Council Member Jim Graham in January 2005, testified before

a subcommittee of the City Council in February 2005, and testified before the City Council and a

subcommittee in March 2006.  *Id.* ¶¶ 12-15.  Following his testimony, Payne gave interviews to

print media as well as various television and radio stations.  *Id.* ¶ 15.

While these activities were occurring, Payne continued to work as an elevator inspector.

He issued citations and shut down elevators in the District of Columbia on multiple occasions,

only to have his supervisors reverse his decisions and/or discipline him.  *Id.*  ¶ 10.  In one such

instance, Payne was disciplined for violating the express directions of Defendant Majett when he

refused to conduct a particular inspection while the building owners lacked necessary permits.

3

*Id.* ¶ 16.  In another instance, Payne shut the elevators down in a building where he observed over 50 code violations, resulting in a subsequent reprimand and suspension for ten days. *Id.* ¶ 18.  Payne alleges that certain building owners "organized an effort to cause [his] termination and began to make complaints about [him] to officials at DCRA" because he issued citations and shut down building elevators when necessary.  *Id.* ¶ 10.

In November 2006, Defendant Canavan issued Payne a notice of removal on the grounds that he used his public office for private gain.  *Id.* ¶ 19.  An independent hearing examiner reversed that decision in February 2007, ordering that Payne be reinstated with back pay. *Id.* ¶ 19.  Defendant Argo reinstated Payne in July 2007 but, Payne has not received any back pay or other lost benefits to date.  *Id.*

After Payne returned to work, Defendants Argo and Majett solicited individuals from businesses to which Payne had issued citations "to provide false information about [] Payne" *Id.* ¶ 20.  In June 2007, Defendant Argo issued Payne a ten-day suspension for failing to follow instructions, and in July 2007, Payne received a second notice of removal.  *Id.*  This notice charged Payne with (1) soliciting elevator inspection and consulting work for his private commercial business while conducting business for DCRA, (2) accepting something of value from persons regulated by DCRA who had an interest in his decision as to whether to shut down elevators, and (3) using government time for activities other than official business, including the promotion of his private business and the training of employees of that business during working hours.  *Id.*  Payne alleges that Defendant Argo knew these charges were false.  *Id.*

A different independent hearing examiner considered the evidence underlying this second notice of removal and upheld the termination.  *Id.* ¶ 21.  On September 18, 2007, Payne was

summarily removed from his position with DCRA. *Id.* Payne alleges that all of the charges against him were false and were "manufactured to bring about his termination from employment because of his prior Whistle[-]blowing activity." *Id.* ¶ 22.

> B.   *Procedural Background*

Payne filed this suit on January 28, 2008, and filed an Amended Complaint on May 9, 2008. The District of Columbia filed its Motion to Dismiss, or in the alternative, Motion for Summary Judgment, on May 22, 2008. Payne filed an Opposition on June 19, 2008, and the District of Columbia filed a Reply on June 27, 2008. Defendants Argo, Morgan, and Canavan filed their Motion to Dismiss, or in the alternative, Motion for Summary Judgment on June 24, 2008. Payne filed an Opposition on July 7, 2008, and Defendants filed a Reply on July 14, 2008. Finally, Defendant Majett filed his Motion to Dismiss, or in the alternative, Motion for Summary Judgment, on July 25, 2008. Payne filed an Opposition on August 12, 2008, and Defendant Majett filed a Reply on August 15, 2008.

Defendants' Motions are substantively identical except for two differences. First, only the District of Columbia's Motion seeks dismissal of Count VI (breach of contract), as it was asserted against the District of Columbia and not the other Defendants. Second, Defendant Majett's Motion argues that he should be dismissed from this action because claims against a District of Columbia employee in an official capacity are equivalent to, and duplicative of, claims against the District of Columbia. *See* Def. Majett's Mot. at 10-11. Defendants also filed a "supplemental memorandum" without leave of Court to raise this argument as to the other individual Defendants. Although Defendants are correct that Payne's claims are redundant to the extent that he raises them against the individual Defendants in their official capacities, Payne

clarifies in his Opposition that he is bringing suit against the individual Defendants in their *individual* capacities. *See* Pl.'s Opp'n to Def. Majett's Mot. at 6 ("Payne has sued Defendant Majette [sic] in his individual capacity"). Accordingly, the Court shall not dismiss the individual Defendants from this lawsuit, but to the extent Payne intended to raise any claims against the individual Defendants in their official capacities, the Court shall dismiss such claims because they are duplicative of his claims against the District of Columbia. *See Price v. District of Columbia*, 545 F. Supp. 2d 89, 94 (D.D.C. 2008) (collecting cases and explaining that the "overwhelming approach that has been taken by members of this Court" is to dismiss claims against government employees in their official capacities where the plaintiff has asserted the same claims against the District of Columbia).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover,

the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v.*

*FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in

the complaint, any documents attached to or incorporated in the complaint, matters of which the

court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier*

*Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v.*

*Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

### III.  DISCUSSION

Defendants' Motions raise the dispositive issue of whether Payne was required to exhaust

his administrative remedies prior to advancing Counts VI through IX in this Court.  Because the

Court is persuaded by Defendants' arguments that each claim should have been administratively

exhausted, the Court shall grant Defendants' Partial Motions to Dismiss on that basis.

As a former employee with the District of Columbia, Am. Compl. ¶ 3, Payne was subject

to the provisions of the District of Columbia Comprehensive Merit Personnel Act ("CMPA"),

D.C. Code §§ 1-601.1 *et seq.*  The CMPA provides "a modern flexible system of public

personnel administration, which . . . [e]stablish[es] impartial and comprehensive administrative

or negotiated procedures for resolving employee grievances."  *Id.* § 1-601.02(a)(5).

Under the CMPA, an aggrieved employee may seek recourse by pursuing one of two

avenues.  First, the CMPA provides that "[a]n appeal from a removal . . . may be made to the

Office of Employee Appeals [OEA]."  D.C. Code § 1-616.52(b).  Employees may appeal a

decision of the OEA in D.C. Superior Court.  *Id.* § 1-606.03(d).  Second, an employee may

pursue recourse for any grievance under the collective bargaining agreement executed between

their union and the District.  *Id.* § 1-616.52(e).  The CMPA broadly defines a "grievance" as "any

matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees . . . ."  D.C. Code § 1-603.01(10).  If an employee seeks arbitration under a collective bargaining agreement, he may appeal the decision to the Public Employee Relations Board ("PERB"), *id.* § 1-605.02(6), and then to the D.C. Superior Court, *id.* § 1-617.13(c).

Subject to few exceptions, courts have interpreted the CMPA as the "exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind." *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000).  The CMPA makes courts the "last" forum for reviewing employment-related disputes in the District of Columbia, *not* an "alternative forum."  *District of Columbia v. Thompson*, 593 A.2d 621, 634 (D.C. 1991). Exhaustion under the CMPA is treated as a jurisdictional requirement by D.C. courts.  *See King v. Kidd*, 640 A.2d 656, 663 (D.C. 1993).  Although the D.C. Circuit has reserved judgment as to whether federal courts must treat the CMPA as jurisdictional, *see Johnson v. District of Columbia*, 2008 U.S. App. LEXIS 25855 at *11 n. 2 (D.C. Cir. Dec. 23, 2008), "federalism and comity considerations" favor the application of exhaustion requirements regardless of how they are characterized.  *See Washington v. District of Columbia*, 538 F. Supp. 2d 269, 275 (D.D.C. 2008) (citing *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 540 (1977)).  In this regard, the D.C. Circuit has emphasized that exhaustion doctrines are generally followed to "promote[] effective and efficient judicial review by ensuring that such review is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise."  *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986).

Based on the CMPA's administrative scheme, courts in this district have repeatedly dismissed claims that have not been initially pursued under the CMPA's procedures.  *See, e.g.*, *Washington v. District of Columbia*, 538 F. Supp. 2d 269, 280 (D.D.C. 2008) (dismissing infliction of emotional distress tort claim based on the plaintiff's failure to exhaust administrative remedies under the CMPA); *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 46 (D.D.C. 2005) (dismissing defamation, intentional infliction of mental and emotional distress, and wrongful termination claims based on the plaintiff's failure to exhaust administrative remedies under the CMPA), *aff'd Johnson v. District of Columbia*, 2008 U.S. App. LEXIS 25855 (Dec. 23, 2008); *Winder v. Erste*, No. 03-2623, 2005 U.S. Dist. LEXIS 5190 at \*33-\*34 (D.D.C. Mar. 31, 2005) (dismissing breach of contract, tortious interference with contract, and civil conspiracy claims based on the plaintiff's failure to exhaust administrative remedies under the CMPA).

In this case, Payne does not allege that he has exhausted his administrative remedies under the CMPA, *see generally* Am. Compl., nor does Payne dispute that dismissal is almost always appropriate in such circumstances, *see generally* Pl.'s Opp'n.  Instead, Payne argues that his failure to raise these claims under the CMPA should be excused, which the Court shall now consider as to each of the four claims.

A.    *Count VI (Breach of Contract)*

The Amended Complaint alleges that Payne was employed with DCRA pursuant to an express or implied contract, and that the District breached the express or implied contract by "forcing him off the DCRA payroll, terminating his employment, refusing to pay [him] wages due from November 2006 through termination in July 2007 . . . and refusing to provide [him] with the required statutory notice of his right to obtain other health insurance following the

termination." Am. Compl. ¶ 40.   As stated above, the District of Columbia has moved for dismissal of this claim on the grounds that Payne failed to pursue his administratively remedies under the CMPA.  *See* Def.'s Mot. at 6-9.

The sole justification offered by Payne as to why this claim should not be dismissed is that he cannot obtain relief for his breach of contract claim under the CMPA.  *See* Pl.'s Opp'n at 4-5.  As support, Payne cites *Winder v. Erste,* 511 F. Supp. 2d 160 (D.D.C. 2007), a case that not only provides no support for his argument, but directly undermines it.  In *Winder*, the court dismissed a breach of contract claim (among others) because the plaintiff had not exhausted his administrative remedies under the CMPA.  2005 U.S. Dist. LEXIS 5190 at *37 - *39.  The court held that the plaintiff's breach of contract claim fell "squarely within the provisions for 'grievances' and 'adverse actions' covered by the CMPA."  *Id.* at *33 - *34 (quoting D.C. Code §§ 1-603.01(1), 1-616.51-.54)).  Subsequent to that decision, the court generously allowed the plaintiff to add the dismissed breach of contract claim back into the case after the OEA issued a decision concluding that it lacked jurisdiction because, unlike in this case, the plaintiff was a probationary employee who was not covered by the CMPA.  *See Winder v. Erste*, Order at 1-6 (Jan. 23, 2007).

*Winder* therefore underscores that a plaintiff must first pursue a breach of contract claim administratively prior to asserting it in this Court – not, as Payne suggests, that plaintiffs are excused from pursuing breach of contract claims administratively.  *Winder* is therefore consistent with D.C. cases where the CMPA was found to apply to nearly every possible claim brought by a District of Columbia employee.  *See Lattisaw v. District of Columbia*, 905 A.2d 790, 793 (D.C. 2006) ("In reviewing the purpose and text of the CMPA, this court has concluded that its drafters

'plainly intended' to create a mechanism for addressing virtually every conceivable personnel

issue [between] the District [and] its employees . . . ." (quoting *Thompson*, 593 A.2d at 634)

(internal quotation marks omitted)).

Payne offers no other justification that would excuse his failure to exhaust his breach of

contract claim.  Accordingly, the Court shall grant the District of Columbia's Motion to Dismiss

Count VI of the Amended Complaint.[5]

> B.      Count VII (Civil Conspiracy to Interfere with Mr. Payne's Employment Relations)

The Amended Complaint alleges that Defendants "entered into an agreement or

understanding to attempt to force [] Payne to quit employment with DCRA or to fire him and/or

to damage his professional and personal reputation, including by attempting to manufacture false

information against [him] or to spread false or malicious information regarding [him]."  Am.

Compl. ¶ 43.  It further alleges that "the actions were done by unlawful or tortious means, namely

by defaming [] Payne and/or by interfering with his prospective employment opportunities and/or

any of the [other] civil counts . . . ."  *Id.* ¶ 44.  Defendants moved to dismiss this claim because

Payne failed to exhaust his administrative remedies.  *See* Def.'s Mot. at 9.

Payne's Opposition does not respond to Defendants' argument that his conspiracy claim

should be dismissed based on his failure to exhaust his administrative remedies under the

CMPA.  *See* Pl.'s Opp'n at 6-7 (arguing only that Payne properly plead the existence of a civil

---

[5] Payne alleges that his collective bargaining agreement does not cover breach of contract claims, *see* Pl.'s Opp'n at 5, but that argument is irrelevant.  The CMPA allows an aggrieved employee to pursue relief with the OEA.  D.C. Code § 1-616.52(b).  As the D.C. Court of Appeals has noted, "'the failure to pursue the initial step in the administrative process does not relieve a party of the exhaustion of administrative remedies requirement.'"  *Lattisaw*, 905 A.2d at 795 (quoting *Davis & Assoc. v. Williams*, 892 A.2d 1144, 1150 (D.C. 2006)).

conspiracy).  Where a plaintiff addresses some but not all arguments raised in a defendant's

motion to dismiss, courts in this district may treat such arguments as conceded.  *See, e.g.*, *Fox v.*

*Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004).

Accordingly, the Court shall grant Defendants' Motions to Dismiss Count VII of the Amended

Complaint.[6]

    C.    *Count VIII (Defamation and Tortious Interference with Prospective Advantage)*
          *and Count IX (Wrongful Discharge)*

    The Court shall simultaneously consider Counts VIII and IX because the parties briefed

them together.  The Amended Complaint alleges that Defendants "made false statements to []

Payne's co-workers, acquaintances, customers of DCRA, businesses and potential employers that

[] Payne was incompetent."  Am. Compl. ¶ 48.  It further alleges that Defendants, acting with

malice, "intended and sought to ruin [] Payne's reputation . . . and to use him as a scapegoat for

Defendants' deliberate and reckless mismanagement within DCRA."  *Id.*  Finally, it alleges that

Payne "engaged in protected activity when he protested lax enforcement of elevator inspection

regulations and when he met with [city council member] Graham and testified before the City

Counsel and gave interviews to the news media," and that this conduct was "a substantial or

motivating factor in the adverse actions taken against him by DCRA and [the] individual

Defendants."  *Id.* ¶ 55.  Defendants seek dismissal of these claims because Payne did not exhaust

---

[6] The Court notes that, even had Payne addressed Defendants' administrative exhaustion argument, there is no principled reason why his conspiracy claim should be allowed to proceed despite his failure to exhaust his administrative remedies where the CMPA was intended to address every conceivable grievance or removal dispute arising between the District of Columbia and its employees.  *See Lattisaw*, 905 A.2d at 793.  *See also Winder*, 2005 U.S. Dist. LEXIS 5190 at *33 -*34 (dismissing the plaintiff's conspiracy claim because it "fall[s] squarely within the provisions [of the CMPA]").

his administrative remedies under the CMPA.  *See* Def.'s Mot. at 9.  Defendants also argue that

consideration of Payne's wrongful discharge claim is premature because he is currently

arbitrating the claim under his collective bargaining agreement, *see* Def.'s Mot. at 8, which

Payne does not dispute (or even address), *see generally* Pl.'s Opp'n.  Payne cannot raise a claim

in this Court that he is currently arbitrating.  *See Johnson v. District of Columbia*, 2008 U.S.

App. LEXIS 25855 (D.C. Cir. Dec. 23, 2008) ("a District employee who pursues a grievance

pursuant to a CBA procedure must complete the prescribed procedure" prior to seeking judicial

review).[7]

  In any event, Payne argues that his failure to exhaust his administrative remedies should

be excused for two reasons, neither of which is meritorious.

  Payne's first argument, repeated in its entirety herein, is that

> [t]hese claims should not be dismissed because they do not pertain to his
> termination because they preceded [] Payne's termination and occurred over a
> three year period leading up to his first termination in 2006.

Pl.'s Opp'n at 6.  This argument appears to suggest that the CMPA only encompasses matters

pertaining to removal of an employee.  That is not so.  The CMPA also encompasses all

employment "grievances," defined broadly to include "any matter under the control of the

District government which impairs or adversely affects the interest, concern, or welfare of

employees . . . ."  D.C. Code § 1.603.1 (1981).  This language "'address[es] virtually every

conceivable personnel issue among the District, its employees, and their unions.'"  *Stockard v.*

*Moss*, 706 A.2d 561, 564 (D.C. 1997) (quoting *Thompson*, 593 A.2d at 635)).  Thus, Payne must

---

[7] The Court also notes that Payne would first have to file an appeal of any adverse
arbitration award with the PERB before seeking judicial review of this claim.  *See* D.C. Code §§
1-605.02(6), 1-617.13(c).

exhaust his administrative remedies even if these claims are not associated with his removal.

Payne's second argument is that he "seeks punitive damages for these claims" and his "administrative remedies are inadequate," apparently because he cannot obtain punitive damages through the administrative resolution of his claims.  Pl.'s Opp'n at 6.  The District of Columbia Court of Appeals has directly confronted the question of whether the mere demand for punitive damages eliminates the need for an employee to exhaust his or her remedies under the CMPA, and has found that it does not:

> The unavailability under the CMPA of relief that may be awarded in constitutional or tort litigation is . . . essentially irrelevant.  Noting that administrative proceedings instituted pursuant to the CMPA have advantages for the employee, as well as disadvantages, in comparison to common law tort actions, the Court in *Thompson* made it clear that the CMPA provided the sole remedy for District employees in actions of this kind.  An exclusive remedy does not lose its exclusivity upon a showing that an alternative remedy might be more generous.

*White v. District of Columbia*, 852 A.2d 922, 926 (D.C. 2004).

It is true that the D.C. Circuit recognized in *Bridges v. Kelly* that a plaintiff need not seek administrative relief where the remedies available cannot "grant appellant the full relief requested in connection with his federal claims," *i.e.*, punitive damages.  84 F.3d 470, 476-77 (D.C. Cir. 1996).  In this case, unlike in *Bridges*, none of the four claims subject to Defendants' Motion to Dismiss are federal claims.  *Cf. McManus v. District of Columbia*, 530 F. Supp. 2d 46, 69 (D.D.C. 2007) (Kollar-Kotelly, J.) (dismissing the plaintiffs' constitutional claim on grounds other than the failure to exhaust administrative remedies pursuant to the CMPA where the plaintiffs had demanded punitive damages).

Even if these four claims were federal causes of action (which they are not), the D.C.

Circuit has also held that available administrative relief need not be co-extensive with other judicial remedies; it need only be adequate to "right the wrong." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986).  Accordingly, numerous decisions in this district following the D.C. Court of Appeals' *White* decision have rejected the argument that the mere demand for punitive damages is sufficient to show that the CMPA's procedures are inadequate.  *See, e.g.*, *Hoey v. District of Columbia*, 540 F. Supp. 2d 218, 229 n. 5 (D.D.C. 2008); *Washington v. District of Columbia*, 538 F. Supp. 2d 269, 277 (D.D.C. 2008); *Johnson*, 368 F. Supp. 2d at 51 n.8.  As to this latter decision, the D.C. Circuit recently affirmed the dismissal of numerous claims on the basis that the plaintiff did not administratively exhaust them under the CMPA – without carving out an exception for instances where punitive damages were sought – despite Chief Judge Royce Lamberth's lengthy discussion of the issue in his underlying decision.[8]  *See Johnson v. District of Columbia*, 2008 U.S. App. LEXIS 25855 (Dec. 23, 2008).

In this case, Payne offers no reasoned basis to find that the administrative relief available to him is insufficient to "right the wrong."  Punitive damages are generally unavailable against municipalities such as the District of Columbia except where there exists "extraordinary circumstances."  *Butera v. District of Columbia*, 235 F.3d 637, 658 (D.C. Cir. 2001).  In this context, "extraordinary circumstances" is a term of art that includes instances "'where a

---

[8] Among other things, Chief Judge Lamberth's decision explained that the D.C. Circuit's *Bridges* decision addressed the applicability of the *Younger*-abstention doctrine (which includes an inquiry into "whether the state proceeding affords the claimant the potential for the same measure of recovery that he or she might obtain through a federal cause of action"), whereas *White* concerned the applicability of administrative exhaustion (which includes an inquiry into "whether the administrative proceeding affords the claimant a recovery commensurate with his or her injury, regardless of whether he or she might recover more by filing a federal-law claim in federal court").  *Johnson*, 368 F. Supp. 2d at 51 n.8.

jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused [a]

plaintiff's injuries' or 'where a municipality or its policymakers have intentionally adopted [an]

unconstitutional policy that caused the damages in question.'" *Id.* (quoting *Daskalea v. District

of Columbia*, 227 F.3d 433, 447 (D.C. Cir. 2000)).  Payne alleges neither of these two

extraordinary circumstances in the context of these claims.  Although Payne has also demanded

punitive damages from individual defendants in addition to the District of Columbia, Payne

offers nothing more in his Opposition that the conclusory assertion that he "seeks punitive

damages for these claims, [so] the administrative remedies are inadequate."  Pl.'s Opp'n at 6.

The Court is unpersuaded.  Allowing Payne to circumvent the exhaustion requirements of the

CMPA with this bare assertion would be entirely antithetical to the federalism and comity

considerations that motivate the application of the CMPA's exhaustion doctrines.  *Cf. Randolph-

Sheppard Vendors of Am.*, 795 F.2d at 105 (holding that administrative exhaustion requirements

are meant to prevent parties from the "'frequent and deliberate flouting of administrative

processes [which] could weaken the effectiveness of an agency'") (quoting *Athlone Indus. v.

Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1488 (D.C. Cir. 1983)).  By requiring

exhaustion under the CMPA,

> . . . the question [of] whether the remedies available through the administrative
> process are 'adequate' to compensate for a given injury will usually have been
> addressed in advance by institutions with greater expertise than the courts at
> making such determinations.  The careful balance reflected in the administrative
> recovery scheme ought not be disregarded out of hand, absent some quite
> compelling circumstances.

*Johnson*, 368 F. Supp. 2d at 51 n.8.  The Court finds no basis to excuse Payne's failure to

exhaust his administrative remedies under the CMPA.  Accordingly, the Court shall grant

Defendants' Motions to Dismiss Counts VIII and IX from this action.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendants' Motions to Dismiss, Docket Nos. [11, 21, 29], and deny as moot Defendants' Motions for Summary Judgment, Docket Nos. [12, 23, 31].  Counts VI, VII, VIII, and IX shall be dismissed from the Amended Complaint based on Payne's failure to exhaust his administrative remedies.  All claims that Payne intended to raise against the individual Defendants in their official capacities shall also be dismissed as redundant.  An appropriate Order accompanies this Memorandum Opinion.


Date: December 30, 2008.

                                         _/s/_____
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge