# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AUDRICK PAYNE,

      Plaintiff,

      v.

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

Civil Action No. 08-163 (CKK)

## MEMORANDUM OPINION
(September 6, 2011)

Plaintiff Audrick Payne ("Payne") filed this action against his former employer, the

District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"), three of its

former directors (Linda Argo, Lisa Morgan, and Patrick Canavan), and one of its supervisors

(Nicholas Majett) (collectively, "Defendants"), contending that he was unlawfully terminated

from his job because he spoke out publicly about elevator safety and vigorously enforced elevator

safety standards.  On December 30, 2008, the Court granted Defendants' motion to dismiss

Counts VI, VII, VIII, and IX of the Amended Complaint based on Payne's failure to exhaust his

administrative remedies.  *See Payne v. District of Columbia*, 592 F. Supp. 2d 29 (D.D.C. 2008).

On September 29, 2010, the Court granted Defendants' motion for judgment on the pleadings

and for summary judgment with respect to Counts I, II, III, IV, and V of the Amended Complaint.

*See Payne v. District of Columbia*, 741 F. Supp. 2d 196 (D.D.C. 2010).  Presently pending before

the Court is Payne's [58] Motion to Amend Judgment, in which Payne asks the Court to

reconsider its ruling awarding summary judgment to Defendants on his claims under the D.C.

Whistleblower Protection Act ("DCWPA"), D.C. Code §§ 1-615.51 *et seq.*, and, by way of 42

U.S.C. § 1983, under the First and Fifth Amendments to the U.S. Constitution.  As explained

below, the Court finds that there was no clear error in its prior judgment, and therefore the Court

shall DENY Payne's motion.

## I.  BACKGROUND

The facts relevant to Payne's present motion were thoroughly laid out by the Court in its

summary judgment opinion.  *See* 741 F. Supp. 2d at 202-07.  The Court assumes familiarity with

that opinion here.  For background purposes, the Court shall briefly recite the facts most relevant

to the pending motion.  The Court shall also describe its basis for the summary judgment ruling

which Payne asks the Court to reconsider.

*A.     Factual Background*

Plaintiff Audrick Payne was employed as an elevator inspector with DCRA beginning on

September 4, 2001.  Shortly after he started his job at DCRA, Payne became dismayed at the

state of elevator safety in the District of Columbia.  Payne was also critical of DCRA's practice

of allowing third-party inspectors to be responsible for maintaining elevator safety in the District

of Columbia.  In February 2005, Payne testified before the Council of the District of Columbia

("D.C. Council") at a DCRA oversight hearing.  Payne testified during his deposition that he

received a notice from DCRA management informing him that he was needed to testify before a

committee managed by D.C. Councilmember Jim Graham.  Payne's testimony focused on the

state of elevator safety in the District of Columbia and the need for additional staff, supplies, and

safety equipment.

Around August 2005, the District of Columbia Office of the Inspector General ("OIG")

began an investigation into Payne.  The investigation was started based on allegations from

members of the business community that Payne had solicited work as a third-party inspector for

his private consulting business while on official duty as a DCRA elevator inspector.  The OIG

investigator conducted a series of interviews during his investigation, which lasted over a year.

In March 2006, Payne testified again before the D.C. Council at a DCRA oversight

hearing.  Payne's testimony is not in the record, but the parties agree that Payne again testified

about the state of elevator safety in the District of Columbia.  Around this same time, Payne also

gave information to news media about the problems he perceived in D.C.'s elevator inspection

regime.  Based at least in part on Payne's disclosures to the media, Fox 5 television aired a story

involving violation citations issued by Payne.

On November 3, 2006, the OIG issued its final report on its investigation of Payne.  The

report concluded that Payne had solicited work for his personal business as a third-party

inspector while on duty in violation of D.C. Code § 1-618.02.  The Inspector General's

recommendation was that appropriate action be taken against Payne.  On November 9, 2006,

DCRA terminated Payne from his position and moved him to non-pay status.  The termination

letter indicated that Payne was being summarily removed based on the outcome of the OIG

investigation.  The letter informed Payne that he had a right to administrative review of the

decision by a hearing officer.  Through his union, Payne submitted a response to the information

in the OIG report, which was reviewed by Hearing Officer Theresa Cusick.  Ms. Cusick issued

her report on February 13, 2007.

Ms. Cusick's report found that some of the evidence in the OIG report was not credible

because it was based on statements by persons without personal knowledge and for which there

was no corroboration.  However, Ms. Cusick found that Payne had admitted that he had a private

elevator inspection business and that he had discussed that business with at least three individuals.  Based on her review of the OIG report and Payne's evidence in response, Ms. Cusick concluded that Payne distributed his private business card in the course of his official government business on more than one occasion and that he discussed his private elevator inspection business on at least one occasion while conducting official business.  Ms. Cusick noted that Payne's "defense appears to be that there was a conspiracy to 'get him' because of his frequent complaints to the Office of the Inspector General, the Council and other agencies regarding improper agency activities or alternatively, the apartment building industry was trying to disarm him because of his rigorous attention to safety."  However, Ms. Cusick did not make any findings with respect to this claim by Payne.  Ms. Cusick found by a preponderance of the evidence that Payne committed the alleged misconduct and that this conduct met the standard for summary action under D.C. personnel rules.  Ms. Cusick found, however, that the penalty of removal was not appropriate because there was no evidence that DCRA had considered mitigating factors or progressive penalties.  Accordingly, she recommended that Payne be reinstated immediately and the penalty of removal be reduced to a suspension.

On June 27, 2007, Payne was reinstated by DCRA Acting Director Linda Argo.  The action letter stated that the summary removal of November 6, 2006 was rescinded and that Payne would be reimbursed for back pay and other benefits from that date forward.  Also on June 27, 2007, Director Argo issued Payne a Final Decision on Proposed Suspension for Ten (10) Days Without Pay in response to an October 11, 2006 proposed notice of suspension.  The suspension related to an incident in which Payne allegedly shut down elevators without notifying his supervisor in advance, as required by DCRA policy.  The suspension was to be effective from

4

June 28, 2007 through July 12, 2007.

On July 12, 2007, DCRA issued a Fifteen (15) Day Advance Notice of Proposed Removal, signed by Deputy Director Nicholas Majett.  The notice indicated that Payne was being removed because he (1) solicited elevator inspection and consulting work for his private commercial business while he was conducting business for DCRA as an elevator inspector; (2) accepted favors from persons regulated by DCRA who had a specific interest in his decision whether or not to shut down elevators; (3) used government time for other than official business, including promotion of his private business and training of employees for that business during working hours; and (4) had been suspended for failing to comply with work instructions given by his supervisor.  The notice relied on evidence collected during the OIG investigation as well as evidence collected in June 2007 by DCRA.  The notice indicated that DCRA officials had investigated allegations that Payne solicited business and accepted a free lunch while on official duty in 2005.  The notice concluded that based on these violations and Payne's past disciplinary actions, the penalty of removal was appropriate.  The notice indicated that Payne had the right to file a response and have an administrative hearing.

On September 17, 2007, Acting Director Argo issued a final decision regarding the removal and terminated Payne's employment with DCRA.  Payne notified DCRA that he intended to arbitrate the removal action.  He filed this action on January 28, 2008.  On October 5, 2009, arbitrator David Weinstein of the Federal Mediation and Conciliation Service issued an arbitration award in favor of Payne.  The issues before the arbitrator were "Did the Agency [DCRA] have cause to terminate the grievant Audrick Payne?" and "If not, what should the remedy be?"  Ultimately, the arbitrator found that DCRA was able to prove by a preponderance

of the evidence only that Payne had promoted his personal business by distributing a few of his

business cards and engaging in some discussions about his business.  The arbitrator concluded

that DCRA had failed to prove that Payne engaged in egregious conduct justifying immediate

removal without consideration of progressive discipline or mitigating circumstances, and

therefore DCRA lacked cause to summarily remove him.  However, the arbitrator declined to

determine a remedy, ordering the parties to further negotiate an appropriate remedy.  The

arbitrator also did not make any findings regarding Payne's claim that his dismissal was

motivated by retaliation for his whistleblowing.

      B.    *Procedural Background*

      In his Amended Complaint, Payne asserted nine claims against Defendants alleging that

they had improperly terminated him.  In Counts I and II, Payne claimed that Defendants

terminated him in retaliation for his testimony before the D.C. Council and his statements to the

media in violation of the DCWPA and the First Amendment.  In Counts III and IV, Payne

claimed that Defendants deprived him of due process in violation of the Fifth Amendment by

terminating him summarily without a hearing.  In Count V, Payne claimed that Defendants

violated his civil rights by creating a hostile work environment.  In Count VI, Payne claimed that

Defendants breached his employment contract by forcing him off the DCRA payroll, failing to

pay him wages due between November 2006 and July 2007, failing to credit him with annual

leave and compensatory time, and refusing to provide him with notice of health insurance

information following his termination.  In Count VII and VIII, Payne asserted claims for civil

conspiracy and defamation.  In Count IX, Payne asserted a claim for wrongful discharge.  On

December 30, 2008, the Court granted Defendants' motion to dismiss Counts VI through IX on

the ground that Payne had failed to exhaust his administrative remedies regarding those claims

pursuant to the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), D.C. Code

§§ 1-601.01 *et seq.*.

On September 29, 2010, the Court granted Defendants' motion for judgment on the

pleadings and for summary judgment with respect to Counts I, II, III, IV, and V of the Amended

Complaint.  The Court ruled that the DCWPA did not provide a cause of action against

individual supervisors, and therefore the DCWPA claims asserted against Defendants Argo,

Morgan, Canavan, and Majett must be dismissed.  The Court ruled that insofar as Payne sought

to recover for conduct that occurred before January 28, 2007, his claims were barred by the

DCWPA's one-year statute of limitations.  The Court also ruled that Payne had failed to provide

timely notice of claims based on injuries suffered before March 10, 2007 pursuant to D.C. Code

§ 12-309.

The Court also held that Payne had failed to establish a prima facie case of retaliation for

purposes of his DCWPA and First Amendment claims.  The Court held that there was too great a

period of time between Payne's protected speech in February 2005 and March 2006 and his

initial termination in November 2006 to support an inference of retaliation.  Although there was

some evidence in the record that Defendants failed to consider progressive discipline when

deciding to terminate him, the Court ruled that this fact would not permit a reasonable jury to

conclude that retaliation played a contributing role in his termination in light of the record as

whole.  Accordingly, the Court granted summary judgment on Counts I and II.

The Court also granted summary judgment on Payne's due process claims.  The Court

ruled that Payne had conceded any due process claim with respect to his termination in

September 2007.  The Court also ruled that Payne had received due process when he appealed his November 2006 termination, presented evidence to Hearing Officer Cusick, and had his termination rescinded with back pay in June 2007.

Finally, the Court granted summary judgment on Payne's hostile work environment claim.  The Court noted that this claim was not distinct from Payne's other claims, and to the extent that Payne sought to assert any distinct claim, his claim was conceded by his failure to address it in his opposition brief.

## II.  LEGAL STANDARD

Plaintiff's motion to alter or amend the judgment is governed by Federal Rule of Civil Procedure 59(e).  Rule 59(e) allows a district court to correct its own mistakes in the period immediately following the entry of a mistaken order.  *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982).  "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (internal quotation marks omitted).  A motion to reconsider under Rule 59(e) "is [neither] . . . an opportunity to reargue facts and theories upon which a court has already ruled nor a vehicle for presenting theories or arguments that could have been advanced earlier."  *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010) (internal quotation marks and citations omitted).  "Such motions are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."  *Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76, 84 (D.D.C. 2010) (internal quotation marks and citations omitted).

## III. DISCUSSION

Payne moves the Court to reconsider its summary judgment ruling in five respects.  First, Payne asks the Court to reverse its ruling that Payne cannot assert claims against individual supervisors under the DCWPA.  Second, Payne asks the Court to reverse its ruling that claims based on violations of the DCWPA that occurred before January 28, 2007 are time-barred. Third, Payne asks the Court to reverse its ruling he was required to provide notice of his claims under D.C. Code § 12-309.  Fourth, Payne asks the Court to reverse its ruling that he failed to raise a genuine issue as to whether he was suspended and terminated because he spoke out about elevator safety and inspection violations.  Fifth, Payne asks the Court to reconsider its ruling that Payne was afforded due process when he was summarily terminated.  For the most part, Payne's motion is supported by arguments that either were or should have been made in his opposition to Defendants' motion for summary judgment.  Courts are reluctant to reconsider rulings on the basis of new arguments that could have been made earlier, as this discourages litigants from fully presenting issues to the Court in the first instance.  Nevertheless, the Court shall briefly consider each of Payne's arguments.

A.     *Payne's Arguments Regarding the Retroactivity of the DCWPA Amendments*

Payne's first three arguments are based on his contention that the D.C. Council intended for its 2009 amendments to the DCWPA to be retroactive.  *See* Whistleblower Protection Amendment Act of 2009, § 2(c), D.C. Code § 1-615.54 (2010).  Under the amended DCWPA, claims may be asserted against individual supervisors; claims must be filed within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first; and compliance with D.C. Code § 12-309 is no longer required.  *See id.*

9

Based on the parties arguments at the summary judgment stage, the Court ruled that the amendments to the DCWPA were not retroactive.  Payne has now presented new arguments to bolster his claim that the amendments are retroactive; he now argues for the first time that the amendments to the DCWPA were procedural rather than substantive and therefore they should be applied retroactively.  Payne's arguments are also supported by the Metropolitan Washington Employment Lawyers Association, which filed an *amicus curiae* brief with the Court.

This Court recently had occasion to reconsider the argument that the DCWPA amendments creating individual liability were retroactive.  *See Baumann v. District of Columbia*, 775 F. Supp. 2d 191, 195-96 (D.D.C. 2011).  The Court concluded that the amendments were not retroactive because they affected the substantive rights of the individuals who could be named as defendants.  *Id.*  The Court declines to revisit this ruling at this time.

With respect to the statute of limitations, the amendments to the DCWPA do not help Payne in any event.  Although Payne describes the amendments as adopting a three-year statute of limitations, the amendments actually state that a plaintiff must bring a claim within one year after the employee first becomes aware of the violation.  There is no dispute that Payne was given notice of his termination in November 2006, and Payne has never argued that he did not discover that his termination was retaliatory until some later date.  Therefore, the Court declines to reconsider its ruling that claims for DCWPA violations occurring before January 28, 2007 are time-barred.

Finally, with respect to Payne's compliance with D.C. Code § 12-309, this Court has recently ruled that the amendments to the DCWPA eliminated the pre-suit notice requirement for all pending cases.  *See Williams v. Johnson*, Civil Action No. 06-2076, 2011 WL 2519663

(D.D.C. May 23, 2011).  To the extent that the Court's summary judgment ruling in the case held

to the contrary, it should be vacated as to those grounds.  However, Payne's November 2006

termination was the only adverse action for which he failed to give timely notice under § 12-309,

and that claim is time-barred.  Therefore, the Court's reconsideration of the pre-suit notice ruling

does not provide a basis for the Court to amend its judgment of dismissal.

> B.     *Payne's Failure to Establish Causation for His Retaliation Claims*

Payne next asks the Court to reconsider its award of summary judgment to Defendants on

Payne's retaliation claims based on a failure to establish a causal connection between his

protected speech and his termination and suspension.  Payne has not presented the Court with any

new evidence of causation; rather, he argues that the Court improperly weighed disputed

evidence in the record in making its judgment.  The Court shall briefly review Payne's claims.

Payne's motion to reconsider is based primarily on his assertion that "to defeat a motion

for summary judgment on a retaliation claim, [an] employee need only point to *some* evidence

discrediting the employer's proffered explanation for the adverse action."  Pl.'s Mot. to Amend J.

at 9 (emphasis added).  Stated categorically, Payne's assertion is incorrect; a "plaintiff cannot

always avoid summary judgment by showing the employer's explanation to be false."  *Aka v.*

*Wash. Hosp. Ctr.*, 156 F.3d 1284, 1292 (D.C. Cir. 1998) (en banc).  "[A]n employer [is] entitled

to judgment as a matter of law if the record conclusively reveal[s] some other, non[retaliatory]

reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to

whether the employer's reason was untrue and there was abundant and uncontroverted

independent evidence that no [retaliation] ha[s] occurred."  *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 148 (2000).  As the Court explained in its summary judgment ruling,

11

the record in this case shows, *at most*, that Defendants were eager to remove Payne because he had been a difficult employee throughout his career with DCRA. There is no evidence in the record that suggests that Payne's testimony before the D.C. Council played any role in his being investigated, suspended, or terminated. To the contrary, the record suggests that DCRA agreed to let Payne testify and never attempted to influence his testimony, and there is no evidence that anyone at DCRA was concerned about his testimony. Payne also points to evidence that DCRA gave another employee only a three-day suspension for a "far more egregious offense," but the record does not establish that this other employee, who worked in a different division of DCRA, was similarly situated to Payne. Contrary to Payne's characterizations, neither Hearing Officer Cusick nor arbitrator Weinstein concluded that Payne was treated differently than other employees. On the basis of this record, no reasonable jury could infer that Payne's testimony was a contributing factor in his initial termination eight months later.

Payne does point to one sentence in the Court's summary judgment opinion that he believes contains a misstatement of the applicable law. The Court wrote that "there is nothing in either Ms. Cusick's report or the arbitrator's ruling that suggests the agency would have not have terminated Payne but for his protected speech." 741 F. Supp. 2d at 215. This suggests that the Court applied a but-for causation standard to Payne's retaliation claims, whereas Payne is only required to show that his protected activity was a "contributing factor" in the retaliatory act for purposes of his DCWPA claim and a "substantial" or "motivating" factor for purposes of his First Amendment claim. *See Johnson v. District of Columbia*, 935 A.2d 1113, 1118-20 (D.C. 2007). However, the Court explicitly acknowledged those standards in its written opinion, *see* 741 F. Supp. 2d at 213, 219, and the Court hereby clarifies that it did not rely on a but-for

causation standard in determining that Payne had failed to provide sufficient evidence of causation to present his retaliation claims to a jury.

Because Payne has failed to produce new evidence or persuade the Court that it committed clear error in its prior ruling, the Court declines to reconsider its award of summary judgment to Defendants on Payne's retaliation claims.

C.     *Payne's Due Process Claim*

Payne argues that the Court erred in awarding judgment for Defendants on his Fifth Amendment due process claim because there is evidence in the record that he was not given the back pay that he was owed when he was reinstated after being terminated in November 2006. However, while Payne is correct that the Court indicated that his claim is moot based on Defendants' promise to award back pay, the Court's ruling was not based on any factual finding that Payne had received his back pay.  Rather, it was based on the fact that Payne had received due process in the form of a notice and a post-termination appeal process that ultimately led to the rescission of his termination.  *See* 741 F. Supp. 2d at 221 ("[T]he record clearly shows that Payne appealed his November 2006 removal and presented evidence to Hearing Officer Theresa Cusick.").

The Court's analysis of Payne's due process claims is admittedly cursory, but that is due to the fact that Payne failed to present the Court with any legal authority relating to these claims in his opposition brief.  Defendants moved for summary judgment on Payne's due process claims, arguing that Payne had received all the process he was due because he had pursued his rights to appeal under his collective bargaining agreement.  In his opposition brief, Payne's response to Defendants' argument was as follows:

> Mr. Payne alleges a due process violation because he was summarily removed from
> his position. In fact, Mr. Payne was terminated in November 2006 and September
> 2007. Mr. Payne was subjected to a summary removal in November 2006.
> Defendants argue that Mr. Payne received due process and may not maintain his Fifth
> Amendment claim against the Defendants because he pursued a claim under the
> collective bargaining agreement arising from his September 2007 removal.
> Defendants do not address the November 2006 summary removal. Summary
> judgment should be denied on that claim.

Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 28.  The Court disagrees with Payne's assertion in his

opposition brief that Defendants did not address the November 2006 summary removal in their

motion for summary judgment; it is clear from the context of Defendants' brief that they were

arguing that the process Payne received comported with constitutional requirements.  Therefore,

Payne should have explained why he believed that the appeal process that was available to him

was insufficient process.  By failing to present the Court with any legal argument regarding his

due process claim, Payne effectively conceded it.  *See Wash. Legal Clinic for the Homeless v.*

*Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997) (declining to consider argument that was raised in only

"a cursory fashion"); *Ry. Labor Execs.' Ass'n v. U.S. R.R. Ret. Bd.*, 749 F.2d 856, 859 n.6 (D.C.

Cir. 1984) ("We decline to resolve this issue on the basis of briefing which consisted of only

three sentences in the [party's] brief and no discussion of the relevant statutory text, legislative

history, or relevant case law.")

As the Court explained in its original opinion, a plaintiff asserting a violation of his Fifth

Amendment right to procedural due process must establish (1) that he was deprived of a

protected interest in life, liberty, or property and (2) that he did not receive the process that was

due.  *See Zinerman v. Burch*, 494 U.S. 113, 125 (1990); *UDC Chairs Chapter, Am. Ass'n of*

*Univ. Professors v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1471 (D.C.

Cir. 1995).  The fact that Payne apparently never received his back pay establishes that he was deprived of property, but it does not establish that he was denied the process he was due.  In determining whether the process afforded was constitutionally adequate, courts examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation and any remedies for erroneous deprivations provided by statute or tort law. *Zinermon*, 494 U.S. at 126.  Under D.C. law, Payne had the option of appealing his termination pursuant to the regulations promulgated under the CMPA or through the grievance procedure negotiated in the collective bargaining agreement.  *See* D.C. Code § 1-616.52(e).  The record shows that Payne pursued his right to contest his removal before a hearing officer, and DCRA made a final decision following the hearing officer's report.  This Court is not persuaded by Payne's (lack of) argument that these procedures were constitutionally deficient.

Payne complains that Defendants did not strictly comply with D.C. regulations requiring a final decision within 45 days.  However, courts have recognized that "a breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause." *Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981); *accord McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990) ("A breach of procedural requirements does not create a due process violation unless an individual was 'denied a fair forum for protecting his state rights.'") (citation omitted).  Moreover, it appears from the record that Payne had an opportunity to challenge this lack of compliance through the grievance he filed after his September 2007 termination.  Furthermore, the Court notes that Payne pursued a breach of contract claim for his back pay in this litigation, but the Court dismissed it based on Payne's failure to exhaust his administrative remedies.  Payne should not complain about a lack of due

process when he failed to avail himself of the procedural measures that could have provided him with meaningful relief.  Accordingly, the Court declines to reconsider its ruling awarding summary judgment to Defendants on Payne's due process claims.

### IV.  CONCLUSION

For the reasons explained above, the Court finds that there is no intervening change in controlling law, no newly available evidence, and no need to correct a clear error or prevent manifest injustice that warrants amending its summary judgment ruling.  Accordingly, the Court shall DENY Plaintiff's [58] Motion to Amend Judgment.  An appropriate Order accompanies this Memorandum Opinion.


Date: September 6, 2011.

                                                     _/s/_____
                                                     COLLEEN KOLLAR-KOTELLY
                                                     United States District Judge